**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

TECSPEC LLC, RICHARD ROSE, ROBERT
SENIA, and RALPH SCHLENKER,

                Plaintiffs,

      -against-

MICHAEL DONNOLO, JOSHUA DONNOLO,
JOHN MICHAEL LONG, BRAYA CONCEPTS
LLC, BRAYA MACHINE COMPANY LLC,
BRAYA SYSTEMS LLC, BRAYA VENTURES
LLC, and ABC CORPORATIONS 1-10,

                Defendants.

Case No.

-------------------------------------------------------------------

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COMPLAINT AND ORDER TO SHOW CAUSE REQUESTING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS

---

**COLE SCHOTZ P.C.**
*Attorneys for Plaintiffs*
Jason R. Melzer
JMelzer@coleschotz.com
1325 Avenue of the Americas
19th Floor
New York, New York 10019
(212) 752-8000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

LEGAL ARGUMENT ........................................................................................................... 3

I.      PLAINTIFFS ARE ENTITLED TO A TEPMORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ................... 3

    A.    Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted ............................................................ 4

    B.    Plaintiffs Have a Substantial Likelihood of Success on the Merits ........................................................................................... 6

        1.    Breach of Fiduciary Duty – Against M. Donnolo ....................... 6

        2.    Breach of Contract – Against M. Donnolo ................................ 7

        3.    Breach of the Implied Covenant of Good Faith and Fair Dealing – Against M. Donnolo ................................................. 10

        4.    Misappropriation of Trade Secrets Pursuant to 18. U.S.C. 1836 and New York Common Law– Against Defendants ................................................................................. 11

        5.    Corporate Waste and Mismanagement – Against M. Donnolo ........................................................................................ 14

        6.    Breach of the Faithless Servant Doctrine – Against M. Donnolo, J. Donnolo and Mr. Long ........................................... 14

        7.    Unjust Enrichment – Against Defendants ................................ 15

        8.    Conversion – Against M. Donnolo, J. Donnolo, and Mr. Long ............................................................................................. 16

        9.    Tortious Interference and Unlawful Competition– Against Defendants ................................................................. 17

        10.    Aiding and Abetting Breach of Fiduciary Duty – Against J. Donnolo and Mr. Long ............................................ 18

**C.**  **The Balance of Hardships Weighs Strongly in Plaintiffs' Favor and an Injunction Favors the Public Interest**.......................................... **19**

**CONCLUSION** ....................................................................................................... **20**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Speedry Chem. Prod., Inc. v. Carter's Ink Co.*,
    306 F.2d 328 (2d Cir. 1962)...................................................................................18

*Ackerman v. Pilipiak*,
    457 B.R. 191 (E.D.N.Y. 2011) ................................................................................6

*Ad Lighting Inc. v. Clean.io, Inc.*,
    2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) .........................................................12

*Al Saidi v. U.S. Embassy in Djibouti*,
    544 F. Supp. 3d 289 (E.D.N.Y. 2021) .....................................................................3

*Ashland Inc. v. Morgan Stanley & Co.*,
    652 F.3d 333 (2d Cir. 2011)...................................................................................15

*AUA Private Equity Partners, LLC v. Soto*,
    2018 WL 1684339 (S.D.N.Y. Apr. 5, 2018)..........................................................13

*Ayco Co., L.P. v. Frisch*,
    795 F. Supp. 2d 193 (N.D.N.Y. 2011).....................................................................5

*Cardwell v. Thermo Fischer Sci.*,
    2010 WL 3825711 (S.D.N.Y. Sept. 23, 2010)........................................................8

*Carvel Corp. v. Noonan*,
    350 F.3d 6 (2d Cir. 2003).......................................................................................17

*DAR & Assocs., Inc. v. Uniforce Servs., Inc.*,
    37 F. Supp. 2d 192 (E.D.N.Y. 1999) .......................................................................8

*Digital Camera Int'l, Ltd. v. Antebi*,
    2017 WL 2992719 (E.D.N.Y. July 14, 2017)..........................................................6

*Eichenblatt v. Kugel*,
    No., 2018 WL 3202079 (E.D.N.Y. May 15, 2018) ...............................................14

*Espire Ads LLC v. TAPP Influencers Corp.*,
    655 F. Supp. 3d 223 (S.D.N.Y. 2023)....................................................................12

*FMC Corp v. Taiwan Tainan Giant Indus. Co. Ltd.*,
    730 F.2d 61 (2d Cir. 1984).......................................................................................5

*Iacovacci v. Brevet Holdings, LLC*,
   437 F. Supp. 3d 367 (S.D.N.Y. 2020)........................................................................11

*IDG USA, LLC v. Schupp*,
   416 F. App'x 86 (2d Cir. 2011) .................................................................................4

*Imperial Chem. Ltd. v. Nat'l Distillers & Chem. Corp.*,
   342 F.2d 737 (2d Cir. 1965)......................................................................................11

*Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*,
   990 F. Supp. 119 (E.D.N.Y. 1997) ........................................................................5, 8

*Int'l Bus. Machines Corp. v. De Freitas Lima*,
   2020 WL 5261336 (S.D.N.Y. Sept. 3, 2020)..........................................................8, 9

*Islam v. Cuomo*,
   475 F. Supp. 3d 144 (E.D.N.Y. 2020) ...................................................................3, 4

*Lader v. Delgado*,
   941 F. Supp. 2d 267 (E.D.N.Y. 2013) ....................................................................17

*Magtoles v. United Staffing Registry, Inc.*,
   665 F. Supp. 3d 326 (E.D.N.Y. 2023) ......................................................................9

*Miller v. Levi & Korsinsky, LLP*,
   2021 WL 535599 (S.D.N.Y. Feb. 12, 2021)............................................................15

*Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*,
   282 Fed. Appx. 885 (2d Cir. 2008)........................................................................4, 8

*New York State Trawlers Ass'n v. Jorling*,
   764 F. Supp. 24 (E.D.N.Y. 1991) .............................................................................6

*Oliver Wyman, Inc. v. Eielson*,
   282 F. Supp. 3d 684 (S.D.N.Y. 2017)........................................................................9

*Patrick v. Allen*,
   355 F.Supp.2d 704 (S.D.N.Y. 2005)........................................................................14

*Pauwels v. Deloitte LLP*,
   83 F.4th 171 (2d Cir. 2023) .....................................................................................18

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
   344 F.3d 184 (2d Cir. 2003)...............................................................................14, 15

*Poller v. BioScrip, Inc.*,
   974 F. Supp. 2d 204 (S.D.N.Y. 2013).........................................................................8

*Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*,
    2017 WL 2240235 (S.D.N.Y. Mar. 29, 2017) ...................................................................6, 7

*Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.*,
    2008 WL 11447906 (E.D.N.Y. Mar. 24, 2008) .....................................................................10

*Shamrock Tech., Inc. v. Med. Sterilization, Inc.*,
    808 F. Supp. 932 (E.D.N.Y. 1992) .......................................................................................12

*In re Sharp Int'l Corp.*,
    403 F.3d 43 (2d Cir. 2005)....................................................................................................19

*St. John's Univ., New York v. Bolton*,
    757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................................................................16

*Thyroff v. Nationwide Mut. Ins. Co.*,
    460 F.3d 400 (2d Cir. 2006)..................................................................................................16

*Trionic Assocs., Inc. v. Harris Corp.*,
    27 F. Supp. 2d 175 (E.D.N.Y. 1998) .....................................................................................8

*Wechsler v. Bowman*,
    34 N.E.2d 322 (N.Y. 1941)...................................................................................................19

*Woods v. Bos. Sci. Corp.*,
    2006 WL 4495530 (S.D.N.Y. Nov. 1, 2006) .......................................................................10

**Statutes**

18 U.S.C. 1836(b)(1) ...................................................................................................................11

Plaintiffs, Tecspec LLC ("Tecspec"), Richard Rose ("Mr. Rose"), Robert Senia ("Mr. Senia"), and Ralph Schlenker ("Mr. Schlenker" and together with Mr. Rose and Mr. Senia, the "Members" and with Tecspec, the "Plaintiffs"), submit this memorandum of law in support of their motion, by Order to Show Cause, for a temporary restraining order ("TRO") and a preliminary injunction against Defendants Michael Donnolo, individually and in his capacity as a member of Tecspec ("M. Donnolo"), Joshua Donnolo ("J. Donnolo" and together with M. Donnolo, the "Donnolo Brothers"), John Michael Long ("Mr. Long" and together with the Donnolo Brothers, the "Individual Defendants"), Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC (the "Braya Entities" and together with the Individual Defendants, the "Defendants").

## PRELIMINARY STATEMENT

Plaintiffs bring this lawsuit to enjoin M. Donnolo from violating his fiduciary duties owed to Tecspec as an owner, and the Members, as well as his non-compete agreement, by operating the Braya Entities to Tecspec's detriment. Likewise, Plaintiffs seek to enjoin their (now former) employees, J. Donnolo and Mr. Long, from conspiring with M. Donnolo to undermine Tecspec by assisting him in operating the Braya Entities.

Indeed, despite the Members investing hundreds of thousands of dollars and man hours in Tecspec to assist the company in developing new, state of the art HVAC units, M. Donnolo has turned his back on his partners. To that end, fueled by greed and arrogance, M. Donnolo secretly formed the Braya Entities to undercut Tecspec as retribution for the Members refusing his demand to be made an 85% member of the company. In M. Donnolo's mind, he alone is the reason for Tecspec's success, and more specifically, for landing a multi-million-dollar job at the Two Penn Plaza building in Manhattan. Not so. The reality is that Tecspec was nothing but an idea on paper prior to the hard work and dedication of the Members, whose relevant industry knowledge and

substantial financial backing was critical to launching the company and developing Tecspec's confidential HVAC unit designs and manufacturing processes (which are the keys to Tecspec's achievement).

Worse yet, M. Donnolo has not just formed a competing entity. Rather, M. Donnolo has engaged in a series of coordinated efforts to run Tecspec out of business. To that end, all while feigning loyalty to Plaintiffs by continuing to oversee the Two Penn Plaza job, M. Donnolo enlisted Tecspec employees, (including J. Donnolo and Mr. Long), to rob Tecspec blind. That cannot be understated. Just last week, Mr. Senia and Mr. Rose entered the Braya Entities facility only to discover thousands of dollars' worth of stolen Tecspec equipment in the building. That is indisputable, as Plaintiffs have photographic evidence documenting that fact. Moreover, it was uncovered that M. Donnolo misappropriated Tecspec's confidential designs and manufacturing processes to produce Tecspec's HVAC units through the Braya Entities. As if this conduct was not egregious enough, after being alerted to this theft, Plaintiffs were informed that the Braya Entities have bid on a substantial project that Tecspec was previously awarded at the 730 Third Avenue Teachers' Insurance Building, and the 200 Park Avenue Building, which Tecspec has bid on.

Further, since being caught, M. Donnolo (in addition to J. Donnolo and Mr. Long), have locked the Members out of Tecspec, thereby precluding them from operating the company. Specifically, the Individual Defendants are currently in possession of the passwords to access Tecspec's designs, schematics, websites, facility cameras, business emails, manufacturing machines' and even the Tecspec facility temperature controls. Significantly, because of the Individual Defendants' conduct, Tecspec has been unable to continue work on several job sites, including Two Penn Plaza, 1211 6th Avenue, and 110 East 59th Street.

In short, as will be explained in more detail below, immediate mandatory and prohibitive injunctive relief is warranted. Indeed, Defendants should not be permitted to retain equipment that was indisputably stolen from Tecspec's facility, and otherwise be allowed to withhold access to information, passwords, data necessary for Tecspec to operate. Likewise, Defendants must be restrained from using Tecspec's confidential trade secrets and unlawfully competing against Tecspec. Absent that relief, Defendants will run Tecspec out of business.

## STATEMENT OF FACTS

The facts underlying this application are set forth in the Verified Complaint ("Verified Complaint") and Declaration of David Lopez, filed contemporaneously herewith. For the sake of brevity, those facts are not reiterated herein but are instead incorporated by reference and emphasized as necessary.

## LEGAL ARGUMENT

### I.  PLAINTIFFS ARE ENTITLED TO A TEPMORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In the Second Circuit, a party seeking a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Islam v. Cuomo*, 475 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). The standard for issuing a TRO is the same as for a preliminary injunction. *Al Saidi v. U.S. Embassy in Djibouti*, 544 F. Supp. 3d 289, 295 (E.D.N.Y. 2021).

Further, like here, where a portion of the relief sought requires a mandatory injunction, *i.e.*, "one that alter[s] the status quo by commanding some positive act . . . a higher standard applies." *Islam*, 475 F. Supp. 3d at 152 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d

27, 34 (2d Cir. 1995)). "Plaintiffs seeking a mandatory injunction must show 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)). "The 'clear' or 'substantial' showing requirement . . . alters the traditional [preliminary injunction] formula by requiring that the movant[s] demonstrate a greater likelihood of success.'" *Id.* (quoting *Tom Doherty Assocs.*, 60 F.3d at 34.).[1] Notwithstanding that the Operating Agreement provides that there will be "no adequate remedy at law" and that the remaining Members "shall be entitled to such equitable and injunctive relief as may be available to restrain a violation or threatened violation of" the Operating Agreement, Plaintiffs have otherwise met each of the factors necessary for the issuance of the mandatory and prohibitive relief sought through this application.

> ### A.    Plaintiffs Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted

To establish irreparable harm, a plaintiff must demonstrate that: (i) an injury is likely absent that injunction; and (ii) that the injury cannot be adequately remedied with money damages. *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011). There is no question that Tecspec will suffer irreparable harm to its business without immediate injunctive relief.

In this regard, based solely on Plaintiffs' own investigation, Plaintiffs have established that Defendants are currently in possession of its confidential trade secrets. In fact, after entering the Braya Entities' facility in Staten Island, Plaintiffs discovered that Defendants were manufacturing HVAC units using Tecspec's confidential designs and manufacturing processes. (Verified

---

[1] As will be explained herein, Plaintiffs have shown a substantial likelihood of success on the merits of their claims warranting mandatory relief. Nevertheless, in analyzing Plaintiffs' claims in connection with the prohibitive relief Plaintiffs also seek, Plaintiffs are only required to establish that their probability of prevailing is "better than 50 percent." *Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 282 Fed. Appx. 885, 888 (2d Cir. 2008).

Complaint at ¶¶ 14, 75, 77). Moreover, Plaintiffs are aware that Mr. Long has machined over 9,000 units of Tecspec's confidential nozzle component for the Braya Entities benefit. (*Id.* at ¶ 78). Put plainly, Defendants are using Tecspec's trade secrets for their own benefit. That alone satisfies irreparable harm warranting injunctive relief. In fact, in the Second Circuit, "irreparable harm is presumed where a trade secret has been misappropriated." *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 124 (E.D.N.Y. 1997); *see also FMC Corp v. Taiwan Tainan Giant Indus. Co. Ltd.*, 730 F.2d 61, 63 (2d Cir. 1984) ("A trade secret once lost is, of course, lost forever" and therefore, such a loss "cannot be measurable in money damages.")

Further, Plaintiffs will be irreparably harmed in connection with M. Donnolo's violation of his non-compete agreement by operating the Braya Entities. Specifically, M. Donnolo is now poaching potential clients by bidding on projects that Tecspec is already working on, including the Teachers' Insurance Building Job. (Verified Complaint at ¶ 82). Tecspec faces the growing reality that M. Donnolo would poach that opportunity from Tecspec, and ruin Tecspec's relationship with that client moving forward. That harm cannot be remedied by money damages. *See Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 205 (N.D.N.Y. 2011) ("Monetary damages are insufficient to compensate such loss, as it is very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." (citation and quotation omitted)).

Finally, absent obtaining the requested injuncting relief sought through this application, Tecspec will be unable to function. To that end, Individual Defendants are currently in possession of the passwords to access Tecspec's designs, schematics, websites, facility cameras, business emails, and manufacturing machines. (Verified Complaint at ¶¶ 16, 87). Without that information, Tecspec cannot operate, and in fact, Tecspec has been unable to continue working on any of its

jobsites. (*Id.*). In plainer terms, Tecspec is at standstill, and faces the significant possibility that it cannot adhere to its contractually obligated deadlines and will otherwise be forced out of business. (*Id.* at ¶¶ 16, 18). To be clear: Tecspec is unable to work on any jobsites at this time, cannot generate any profit, and faces a real risk that it will have to close its doors. That irreparable harm cannot be allowed to occur. *See New York State Trawlers Ass'n v. Jorling*, 764 F. Supp. 24, 26 (E.D.N.Y. 1991) ("Where a loss of profits is severe enough to drive a party out of business, this can be irreparable harm.").

### B.    Plaintiffs Have a Substantial Likelihood of Success on the Merits

As demonstrated below, Plaintiffs have made a substantial showing that they will succeed on the merits on their claims against Defendants. Indeed, it is indisputable that: (i) Defendants have stolen thousands of dollars' worth of Tecspec's equipment; (ii) misappropriated and are currently using Tecspec's confidential trade secrets; (iii) are actively competing against Tecspec; and (iv) precluding Tecspec from completing current active jobs.   Those salient facts are dispositive to Plaintiffs' claims.

### 1.    Breach of Fiduciary Duty – Against M. Donnolo

Plaintiffs will prevail on their claim for breach of fiduciary duty. To succeed on a breach of fiduciary duty claim, a plaintiff must show that the defendant (1) owed a fiduciary duty, (2) breached that duty, and (3) caused harm as a result. *Ackerman v. Pilipiak*, 457 B.R. 191, 198 (E.D.N.Y. 2011); *Digital Camera Int'l, Ltd. v. Antebi*, No. 11 CV 1823 (SJ), 2017 WL 2992719, at *3 (E.D.N.Y. July 14, 2017). "Under New York law, LLC members owe one another, as well as the LLC, various fiduciary duties." *Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16 Civ. 3787 (DAB), 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017). "Among these duties are the duty of care, duty of loyalty, and the duty of disclosure." *Id.* "Under the duty of loyalty, a

fiduciary must not engage in self-dealing, and he must avoid situations where his personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* (quotations and citation omitted). "Pursuant to the duty of care, a fiduciary must perform his duties in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." *Id.* (citation omitted).

M. Donnolo has breached his duties of loyalty and care owed to Plaintiffs. To that end, while M. Donnolo is permitted to operate a separate company under the terms of the Non-Compete Agreement, that does not give him carte blanche to renege on his job responsibilities at Tecspec, steal thousands of dollars' worth of equipment, or misappropriate trade secrets. (See generally Verified Complaint at ¶¶ 12, 68, 73, 81, 83). Indeed, M. Donnolo's conduct flies in the fact of his respective fiduciary duties.

## 2.    <u>Breach of Contract – Against M. Donnolo</u>

M. Donnolo's conduct is in direct violation of the enforceable non-compete agreement contained in the October 6, 2017 Tecspec Operating Agreement, as amended on January 1, 2018 (the "Non-Compete Agreement"). That agreement specifically provides that while M. Donnolo is a member of Tecspec, and for a period of four years after, he would not:

> [D]irectly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation . . . in any other manner whatsoever, carry on or be engaged in, or connected with any business which competes, in whole or in part, with [Tecspec LLC], which is located in any county in which [Tecspec LLC] is doing or has done business.

> [Verified Complaint. at ¶ 138.]

At the outset, M. Donnolo's Non-Compete Agreement is valid and enforceable. In New York, a non-compete agreement "will be enforced to the extent that it is reasonable in duration and area, necessary to protect the employer's legitimate interests, not harmful to the general public, and

not unreasonably burdensome to the employee." *Trionic Assocs., Inc. v. Harris Corp.*, 27 F. Supp. 2d 175, 184 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 235 (2d Cir. 1999). *First*, the Non-Compete Agreement is reasonable in duration, as it only restricts M. Donnolo from competing with Tecspec for a period of four years. Indeed, "New York Courts have held restrictions of up to five years to be reasonable depending on the circumstances." *Cardwell v. Thermo Fischer Sci.*, No. 09 CIV. 7809 (DAB), 2010 WL 3825711, at *7 (S.D.N.Y. Sept. 23, 2010). *See also Nat'l Elevator Cab & Door Corp.*, 282 F. App'x at 888 (affirming that a non-compete restriction operational for five years was reasonable).

*Second*, the Non-Compete Agreement is reasonably limited in area, as it only prohibits M. Donnolo from operating a competing company "located in any county in which [Tecspec] is doing or has done business," *i.e.*, Manhattan, where Tecspec has multiple ongoing jobs. (Compl. at ¶ 83). *See Int'l Bus. Machines Corp. v. De Freitas Lima,* No. 7:20-cv-04573 (PMH), 2020 WL 5261336, at *9 (S.D.N.Y. Sept. 3, 2020) (upholding non-compete agreement that only precluded defendant from working "within a geographic area in which he had job responsibilities within the last twelve months of his employment"); *see also Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 221 (S.D.N.Y. 2013) (upholding a non-compete agreement which prohibited employee from working within "New York and Long Island"); *Inflight Newspapers, Inc.,* 990 F. Supp. at 135 (finding a non-compete reasonable where it was geographically limited "to seven states and the District of Columbia"); *DAR & Assocs., Inc. v. Uniforce Servs., Inc.*, 37 F. Supp. 2d 192, 199 (E.D.N.Y. 1999) (finding a non-compete covering a fifty mile radius to be reasonable).

*Third*, the non-compete is necessary to protect Tecspec's legitimate business interests. It is well established that "New York courts have recognized four legitimate interests that may be asserted to support a restrictive covenant: (1) protection of trade secrets, (2) protection of

confidential customer information, (3) protection of the employer's client base, and (4) protection against irreparable harm where the employee's services are unique or extraordinary." *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 694 (S.D.N.Y. 2017). Here, the Non-Compete agreement ensures that M. Donnolo will not divulge Tecspec's confidential trade secrets, *i.e.*, its designs and manufacturing processes, which have been, and are, critical to the success of Tecspec. Likewise, the Non-Compete Agreement protects Tecspec's client base by prohibiting M. Donnolo from competing in an area where Tecspec operates, thereby ensuring that M. Donnolo does not poach any potential clients.

*Fourth*, the Non-Compete Agreement is not harmful to the general public, nor is it unreasonably burdensome to M. Donnolo. In this regard, the Non-Compete Agreement does not prohibit M. Donnolo from making a living. Indeed, M. Donnolo is permitted to work in any county where Tecspec does not operate. To be sure, the Non-Compete Agreement is narrowly tailored enough to provide M. Donnolo with meaningful employment options. *Int'l Bus. Machines Corp.*, 2020 WL 5261336, at *9 (finding non-compete did not impose undue hardship because it did not create a complete ban on employment). Further, restricting an individual from operating an HVAC unit manufacturing company does not rise to level of conduct that would be harmful to the general public. *But cf. Magtoles v. United Staffing Registry, Inc.*, 665 F. Supp. 3d 326, 348 (E.D.N.Y. 2023) (holding that it would be "harmful to the general public if dozens of licensed nurses and practitioners were prohibited from contributing their services to an industry as valuable and important as nursing.")

*Fifth and finally*, Plaintiffs have shown that M. Donnolo breached his Non-Compete Agreement by bidding on jobs in Manhattan. Indeed, Tecspec actively competes in Manhattan. By way of example, Tecspec currently is working on the: (i) Two Penn Plaza building; (ii) 1211 6th

Avenue building; (iii) the 110 East 59th Street building; and (iv) the 730 Third Avenue Teachers' Insurance Building. (Verified Complaint at ¶¶ 82-83). Each of those buildings are located in Manhattan. M. Donnolo, through the Braya entities, has also submitted bids on the 730 Third Avenue Teachers' Insurance Building (again, a project Tecspec is already working on) and the 200 Park Avenue building, also located in Manhattan. (*Id.* at ¶ 82). Accordingly, M. Donnolo is competing in a "county in which [Tecspec LLC] is doing or has done business" in direct violation of his Non-Compete Agreement. (*Id.* at ¶¶ 82-83).

### 3.   Breach of the Implied Covenant of Good Faith and Fair Dealing – Against M. Donnolo

M. Donnolo's exhaustive list of improper actions outlined in the Complaint, including but not limited to: (i) stealing thousands of dollars' worth of Tecspec equipment; (ii) forming the Braya Entities to undercut Tecspec; (iii) misappropriating Tecspec's trade secrets; and (iv) preventing Tecspec from working on its current outstanding jobs, constitute a violation of the covenant of good faith and fair dealing. (See generally Verified Complaint). "Parties to a contract in New York have an implicit duty of good faith and fair dealing." *Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.*, No. 04-CV-2652 (JS) (MLO), 2008 WL 11447906, at *4 (E.D.N.Y. Mar. 24, 2008) (citing *Carvel Corp. v. Diversified Mgmt. Grp., Inc.*, 930 F.2d 228, 230 (2d Cir. 1991)); *see also Woods v. Bos. Sci. Corp.*, No. 06 Civ. 5380(AKH)(THK), 2006 WL 4495530, at * 13 (S.D.N.Y. Nov. 1, 2006) (explaining that New York law recognizes a covenant implicit in all contracts that requires both parties thereto to refrain from taking any actions that prohibit the other party from receiving the bargained-for benefits of the contract). M. Donnolo has intentionally (and literally) robbed Tecspec of the protection it bargained for in the Non-Compete Agreement. To that end, the purpose of the Non-Compete Agreement was to preclude M. Donnolo from competing against Tecspec. Implicit in that agreement was that M. Donnolo would not engage in actions that

undermine the Company. As outlined above, M. Donnolo has gone above and beyond to damage Tecspec, and therefore violated the implied covenant of good faith and faith dealing.

### 4.    Misappropriation of Trade Secrets Pursuant to 18. U.S.C. 1836 and New York Common Law– Against Defendants

To prevail on a misappropriation of trade secrets claims, a party must demonstrate that it possessed a trade secret that a defendant misappropriated.[2] *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (noting the standards for misappropriation under the DTSA and New York law "are fundamentally the same" and therefore "courts have found that a [c]omplaint sufficiently plead[ing] a DTSA claim . . .  also states a claim for misappropriation of trade secrets under New York law."). A "trade secret" is broadly defined to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," provided that (i) the owner has "taken reasonable measures to keep such information secret," and (ii) the information has "independent economic value." *Id.*

Here, Plaintiffs HVAC unit designs and manufacturing processes easily qualify as a trade secret under the DTSA and New York common law. To that end, Tecspec has developed a series of confidential components, when combined through its manufacturing processes, produce an HVAC unit that stands alone. (Verified Complaint at ¶¶ 43-51). That combination is a protectable trade secret. *See Imperial Chem. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d

---

[2] For a DTSA claim, the plaintiff must also establish that the trade secret is related to a product or service that is used or intended for use in interstate commerce. 18 U.S.C. 1836(b)(1). That is clearly the case here, as Tecspec manufactures its products in New Jersey and transports same to New York. (Verified Complaint at ¶¶ 54, 83, 101).

Cir. 1965) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret."); *Shamrock Tech., Inc. v. Med. Sterilization, Inc.*, 808 F. Supp. 932, 937 (E.D.N.Y. 1992) ("A trade secret is not to be denied a manufacturer because the components or a combination of some of the components are in the public domain. The test is whether the manufacturer, by combining all of the components, has developed a system or process that affords a competitive advantage").

Moreover, Plaintiffs have gone to extraordinary measures to ensure the confidentiality of its trade secrets by: (i) storing designs on a secured cloud-based system which can only be accessed by a limited number of employees with proper authorization and passwords; (ii) limited access to its CNC machines to a small number of employees; (iii) limiting access to its Newark facility to employees only; (iv) manufacturing units in house so no third-party or non-employee would have access to designs and manufacturing processes; and (v) informing Tecspec employees who have access to secured systems of the proper protection of confidential information. (Verified Complaint at ¶¶ 59-62). *See Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 251 (S.D.N.Y. 2023) (finding that the plaintiff took reasonable measures to guard the confidentiality of its trade secrets where it "stor[ed] all pertinent code in a secure cloud-based server, utiliz[ed] . . . computer and software passwords, and work[ed] in an office that has visitor control systems, locked door access, and overnight security personnel."); *Ad Lighting Inc. v. Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (explaining that reasonable measures include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information

confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality.").

Likewise, Tecspec has derived an independent economic benefit from its confidential HVAC unit designs and manufacturing processes. In fact, those trade secrets are invaluable to Tecspec, and are the sole reason Tecspec was able to land the Two Penn Plaza job as a start-up company. (Verified Complaint at ¶ 5). Put plainly, Tecspec's trade secrets are what keep the company competitive in the HVAC market and is the sole reason for Tecspec's documented success. As explained, Tecspec's success in the Manhattan market is directly attributable to the efficiency and durability of its HVAC units.

Finally, it is indisputable that Defendants misappropriated Plaintiffs' trade secrets. "The DTSA defines 'misappropriation' to include 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' or 'disclosure or use of a trade secret of another without express or implied consent' in specified circumstances." *AUA Private Equity Partners, LLC v. Soto*, No. 1:17-cv-8035-GHW, 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018). Plaintiffs have firsthand knowledge that Defendants are manufacturing Tecspec's HVAC units at their Staten Island facility and are using that product compete with Tecspec in Manhattan. (Verified Complaint at ¶¶ 14, 15, 75, 82). The Individual Defendants are more than aware that the designs and manufacturing processes they are implementing at the Braya Entities are Tecspec's trade secrets and that they never obtained the consent of Plaintiffs to use Tecspec's designs and processes. (Verified Complaint at ¶¶ 14, 68, 72, 73, 122, 133). In fact, the Individual Defendants were made aware of the confidentiality of those trade secrets but nevertheless decided to misappropriate same to benefit the Braya Entities. (*Id.* at

13

¶ 62). Accordingly, Plaintiffs have a substantial likelihood of success to prevail on its misappropriation of trade secrets claims.

### 5. Corporate Waste and Mismanagement – Against M. Donnolo

To succeed on a claim for corporate waste, a "plaintiff must show that the corporate officer used corporate assets in a way so far opposed to the true interests of the corporation so as to lead to the clear inference that the officer possessed no honest desire to protect those interests." *Eichenblatt v. Kugel*, No., 2018 WL 3202079, at *6 (E.D.N.Y. May 15, 2018) (citing *Patrick v. Allen*, 355 F.Supp.2d 704, 715 (S.D.N.Y. 2005)) (quotations omitted). "[T]he essence of waste is the diversion of corporate assets for improper or unnecessary purposes." *Patrick,* 355 F.Supp.2d at 714 (quoting *Aronoff v. Albanese*, 85 A.D.2d 3, 5, 446 N.Y.S.2d 368, 370 (1982)).

Here, it clear that M. Donnolo has committed corporate waste. On that point, M. Donnolo has coordinated and participated in the theft of thousands of dollars' worth of Tecspec equipment to the benefit of the Braya Entities. (Verified Complaint at ¶ 73). Moreover, M. Donnolo has pulled Mr. Long and J. Donnolo away from their responsibilities at Tecspec to work for the Braya Entities. (*Id.* at ¶ 17). Similarly, M. Donnolo has been manufacturing Tecspec component parts at its Newark facility, shifting the costs to Tecspec, only to use those components for the Braya Entities. (*Id.* at ¶ 77). In short, M. Donnolo is draining Tecspec of its valuable resources for his own benefit, and therefore, Plaintiffs will succeed on their claim for corporate waste.

### 6. Breach of the Faithless Servant Doctrine – Against M. Donnolo, J. Donnolo and Mr. Long

"Under New York law, an agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Western Elec. Co. v. Brenner*,

360 N.E.2d 1091 (N.Y. 1977)) (quotations omitted). "New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Id.* "Fundamental to [the employer-employee] relationship is the proposition that an employee is to be loyal to h[er] employer and is prohibited from acting in any manner inconsistent with h[er] agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of h[er] duties." *Miller v. Levi & Korsinsky, LLP*, 2021 WL 535599, at \*4 (S.D.N.Y. Feb. 12, 2021) (quoting *W. Elec. Co.*, 360 N.E.2d at 1094) (alterations in original).

Here, J. Donnolo, Mr. Long, and M. Donnolo have reneged on their respective duties to remain loyal to Tecspec as employees. M. Donnolo, J. Donnolo and Mr. Long have stolen thousands of dollars' worth of Tecspec equipment and misappropriated trade secrets, all while employed by Tecspec. (Verified Complaint at ¶ 73). Moreover, Mr. Long, J. Donnolo, and M. Donnolo have reneged on their job responsibilities by failing to show up at Tecspec, only to form and work at a competing business. (*Id.* at ¶ 12). Further, Mr. Long has manufactured, on Tecspec's dime, 9,000 HVAC nozzles for the Braya Entities' benefit and shifted those costs to Tecspec. (*Id.* at ¶ 78). Accordingly, Plaintiffs will prevail on their claim for breach of the faithless servant doctrine against J. Donnolo, M. Donnolo, and Mr. Long.

### 7.    Unjust Enrichment – Against Defendants

Plaintiffs are also substantially likely to prevail on their claim for unjust enrichment. To succeed on an unjust enrichment claim, a plaintiff must show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 55 (2d Cir.2011)).

Here, Defendants have undoubtedly been enriched at Plaintiffs' expense, as the Braya Entities have quite literally been built from the ground up using, and depending on, countless pieces of stolen property from Tecspec. Indeed, the Braya Entities are now in possession of thousands of dollars' worth of inventory and equipment they did not pay for. (Verified Complaint at ¶ 73). It was Tecspec that invested in and rightfully owns that inventory and equipment. Likewise, the Braya Entities are now in possession of Plaintiffs' trade secrets and are attempting to use those trade secrets for their own benefit. (*Id.* at ¶¶ 14, 15, 73, 75). This unjust benefit, *i.e.*, propping up a company on stolen goods, trickles down to the Individual Defendants, who did not need to put up capital to purchase equipment or otherwise develop their own product. Indeed, the fruits the Individual Defendants derive from their conduct is poisoned by their improper acts.

### 8.    Conversion – Against M. Donnolo, J. Donnolo, and Mr. Long

Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006), *certified question accepted*, 857 N.E.2d 528 (2006), *and certified question answered*, 864 N.E.2d 1272 (2007) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121 (N.Y. 1995)). "This includes a denial or violation of the plaintiff's dominion, rights, or possession over her property." *Id.* (quotations and citations omitted). "The two elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 178 (E.D.N.Y. 2010) (citing *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006)) (quotations omitted).

16

As explained throughout, the Individual Defendants have misappropriated Tecspec's trade secrets and equipment. Tecspec had a possessory right in each piece of property stolen from its facility by the Individual Defendants. (Verified Complaint at ¶¶ 14, 73). That property is now in the Individual Defendants' possession and being used to the benefit of the Braya Entities. Those indisputable facts will allow Plaintiffs to prevail on their claim for conversion.

**9.    <u>Tortious Interference and Unlawful<br>Competition– Against Defendants</u>**

Plaintiffs have a substantial likelihood of success on their claims for tortious interference with a prospective business relationship and contractual relationship. To succeed on a claim for tortious interference with prospective economic advantage, a plaintiff must show that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 818 N.E.2d 1100 (2004). "Importantly, a cause of action for interference with prospective (as opposed to existing) business relations, requires a plaintiff to show that the interference was accomplished by 'wrongful means.'" *Lader v. Delgado*, 941 F. Supp. 2d 267, 272 (E.D.N.Y. 2013) (citing *Waste Services*, 691 N.Y.S.2d 150, 151 (2d Dep't 1999) (holding a "cause of action for tortious interference with prospective contractual relations requires showing of 'malice or wrongful conduct'").) "'Wrongful means' includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and economic pressure." *Id.*

Here, the Defendants' conduct explained herein sets forth *prima facie* cases for both tortious interference and unfair competition claims. With respect to tortious interference with a prospective economic advantage, the Individual Defendants caused the Braya Entities to bid on

17

two projects which they were likely aware Tecspec was already working on, and had previously submitted a bid on, specifically, the: (i) 730 Third Avenue Teachers' Insurance Building; and (ii) the 200 Park Avenue Building. (Verified Complaint at ¶ 82). Moreover, the Individual Defendants were able to submit those bids through the Braya Entities solely because the Individual Defendants misappropriated the necessary materials and trade secrets to get the Braya Entities up and running. Further, by bidding on those opportunities, Defendants have weakened Tecspec's ability to maintain or otherwise obtain those jobs.

Likewise, this conduct will lead to Plaintiffs succeeding on their unlawful competition claim. Likewise, "[t]he essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 185 (2d Cir. 2023) (citation omitted). "In an action of this type there must be a showing of a confidential relationship between the parties, the disclosure of trade secrets and the use by the defendant of this secret information*." Speedry Chem. Prod., Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962) (citing Restatement of Torts, Section 757). Again, to reiterate, Defendants' misappropriated thousands of dollars' worth of Tecspec's equipment and its trade secrets. That is the quintessential fact pattern for unfair competition.

### 10.    Aiding and Abetting Breach of Fiduciary Duty – Against J. Donnolo and Mr. Long

Finally, Plaintiffs will prevail on their aiding and abetting breach of fiduciary duty claims against J. Donnolo and Mr. Long. "A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the

breach." *Kaufman,* 307 A.D.2d at 125; *accord In re Sharp Int'l Corp.,* 403 F.3d 43, 49 (2d Cir. 2005); *see also Wechsler v. Bowman,* 34 N.E.2d 322, 326 (N.Y. 1941) ("Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the cestuis que trust."). With respect to the second requirement, "[a]lthough a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." *Kaufman,* 307 A.D.2d at 125. And "[a] person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance' to the primary violator." *Id.* at 126.

Here, J. Donnolo and Mr. Long worked hand in hand to aid M. Donnolo in breach of his fiduciary duties owed to Plaintiffs. Again, J. Donnolo and Mr. Long substantially assisted M. Donnolo in the misappropriation of Tecspec's trade secrets and theft of equipment. (Verified Complaint at ¶¶ 14, 180). At a minimum, J. Donnolo and Mr. Long were fully aware that M. Donnolo had a fiduciary duty to Tecspec as a member thereof, and at worst (and most likely), intended to harm Tecspec by aiding M. Donnolo in this conduct. Therefore, Plaintiffs will succeed on their aiding and abetting breach of fiduciary duty claims.

### C.    The Balance of Hardships Weighs Strongly in Plaintiffs' Favor and an Injunction Favors the Public Interest

Injunctive relief is warranted because Plaintiffs have established that Tecspec will suffer irreparable harm and that they are substantially likely to succeed on the merits. But even were the Court to find that Plaintiffs have only raised sufficiently serious questions about the merits, injunctive relief is still necessary because a balance of the hardships tip heavily in favor of Plaintiffs. In this regard, without the requested injunctive relief, Plaintiffs will lose whatever confidentiality remains of its trade secrets, lose its client base, and more likely than not, have to close its doors permanently.

On the other hand, Defendants will be brought to justice. The Defendants have misappropriated trade secrets, stolen thousands of dollars of equipment, and are preventing Tecspec from operating. The requested relief is righting a wrong, and Defendants should not be permitted to argue that they would be unjustly burdened if they cannot continue their improper conduct. Likewise, for that same reason, granting Plaintiffs a temporary restraining order and preliminary injunction would strongly serve the public interest.

## **CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request this Court grant their application for a preliminary injunction and temporary restraining order, as well as the other relief described herein and any other relief to which they are legally or equitably entitled.

Respectfully submitted,

COLE SCHOTZ P.C.
*Attorneys for Plaintiffs Tecspec LLC, Robert Senia, Richard Rose, and Ralph Schlenker*


By:     */s/ Jason R. Melzer*
   Jason R. Melzer
   JMelzer@coleschotz.com
   1325 Avenue of the Americas
   19th Floor
   New York, NY 10019
   (212) 752-8000

DATED: October 24, 2024