## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER,<br><br>Plaintiffs,<br><br>- against -<br><br>MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10,<br><br>Defendants. | Case No. 1:24-cv-08077-JHR |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**ROSENBERG & ESTIS, P.C.**
Matthew S Blum
Jay H Min
733 Third Avenue
New York, New York 10017

*Attorneys for Defendants Michael Donnolo,
Joshua Donnolo, John Michael Long, Braya
Concepts LLC, Braya Machine Company
LLC, Braya Systems LLC, and Braya
Ventures LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 3

LEGAL ARGUMENT ............................................................................................................ 3

I.    Plaintiffs' claims are without merit, leaving it impossible for plaintiffs to meet the
clear and convincing burden required to show liklihood of success on the merits. ........... 4

   A.    Plaintiffs Cannot Sustain Causes of Action for Misappropriation of Trade Secrets
Under New York Law or DTSA ................................................................................... 4

   B.    Plaintiffs Cannot Succeed On Their Breach of Contract Claim based on the Non-
Compete. ................................................................................................................. 4

   C.    Plaintiffs Cannot Succeed On Their Remaining Claims. ............................................ 7

      i.    Plaintiffs' Breach of Fiduciary Duty Claim Against Michael Donnolo is based on
the inapplicable Non-Compete and fails as a matter of law. ................................ 7

      ii.    Aiding and Abetting Breach of Fiduciary Duty Against Joshua and John Fails as a
Matter of Law. ................................................................................................... 8

      iii.    Breach of Implied Covenant of Good Faith and Fair Dealing Against Michael
Fails as a Matter of Law .................................................................................... 9

      iv.    Corporate waste, mismanagement and self-dealing claims against Michael
Donnolo Fails as a Matter of Law. .................................................................... 10

      v.    Breach of Faithless Servant Doctrine Against All Individual Defendants Fails as a
Matter of Law .................................................................................................. 10

      vi.    Unjust enrichment Against All Defendants ........................................................ 11

      vii.    Conversion Against All Defendants Fails as a Matter of Law ............................ 12

      viii.    Tortious interference with prospective business relationships against all Individual
Defendants Fails as a Matter of Law. ............................................................... 12

      ix.    Unfair competition claims against all Defendants .............................................. 13

II.    Plaintiffs fail to show irreparable harm by clear and convincing evidence, Plaintiffs
arguing that (i) Plaintiffs were somehow irreparably harmed as a result Defendants 'use'
of proprietary Tecspec nozzles that Defendants have actually never used, (ii) Michael
Donnolo's alleged violation of a non-compete agreement that explicitly does not apply to
Braya, and (iii) Michael Donnolo's withholding of Tecspec passwords or property that
have already been turned over. ...................................................................................... 14

i

A.    Plaintiffs' allegation of misappropriation of trade secrets is meritless in that the only specific purported technology Plaintiffs claim was misappropriated is not even used as part of the Braya Product............................................................................................... 14

B.    That Plaintiffs waited 4 months to act highlights the lack of irreparable or imminent harm........................................................................................................................... 17

**III.  Plaintiffs fail to show a balancing of the equities by clear and convincing evidence for failing to demonstrate how entitlement to the relief it seeks, all while asking this Court to essentially bankrupt Braya for engaging in the same competition the Individual Plaintiffs have done for the last 6 years. ........................................................................... 17**

**CONCLUSION ......................................................................................................................... 21**

# TABLE OF AUTHORITIES

## Cases

*Actava TV, Inc. v. Joint Stock Company "Channel One Russia Worldwide"*,
412 F.Supp. 3d 338, 351 (S.D.N.Y. 2019). ----------------------------------------------------------13

*Borey v. National Union Fire Ins.*,
934 F.2d 30, 33 (2d Cir. 1991) ----------------------------------------------------------------------- 3

*Bytemark, Inc. v. Xerox Corp.*,
342 F.Supp. 3d 496, 512 (S.D.N.Y. 2018). -------------------------------------------------------12

*Carson Optical Inc. v. eBay Inc.*,
202 F.Supp.3d 247, 267-8 (E.D.N.Y. 2016)------------------------------------------------------13

*Catalyst Advisors, L.P. v Catalyst Advisors Inv'rs Glob. Inc.*,
602 F Supp 3d 663, 678 (SDNY 2022)------------------------------------------------------------ 9

*De Long Corp. v. Lucas*,
278 F.2d 804, 808–09 (2d Cir.1960)-------------------------------------------------------------- 5

*DirecTV Latin Am., LLC v Park 610, LLC*,
691 F Supp 2d 405, 439 (SDNY 2010)------------------------------------------------------------ 7

*en. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*,
862 F. Supp. 1070, 1074 (S.D.N.Y. 1994)------------------------------------------------------- 3

*Free Country Ltd v Drennen*,
235 F Supp 3d 559, 565 (S.D.N.Y. 2016)-------------------------------------------------------- 3

*Giordano v. Thomson*,
564 F.3d 163, 170 (2d Cir. 2009) ------------------------------------------------------------------11

*Guzik v. Albright*,
2018 WL 4386084, at *5 (S.D.N.Y. 2018) -----------------------------------------------------13

*Heinert v Bank of Am. N.A.*,
835 Fed Appx 627, 630 (2d Cir 2020)------------------------------------------------------------- 8

*In re Chateaugay Corp.*,
156 B.R. 391, 400 n.10 (S.D.N.Y. 1993) --------------------------------------------------------12

*In re Lehr Constr. Corp.*, 528 B.R. 598, 607 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732
(S.D.N.Y. 2016) -----------------------------------------------------------------------------------------10

*Inspired Capital, LLC v Conde Nast*,
803 Fed Appx 436, 439 (2d Cir 2020)------------------------------------------------------------- 8

*JAPNA, Inc. v SELFX Innovations Inc.*,
22CV10753ALCRWL, 2024 WL 1250269, at 9 (SDNY 2024)------------------------------- 7

*JSG Trading Corp. v. Tray-Wrap, Inc.*,
917 F.2d 75, 79 (2d Cir. 1990) --------------------------------------------------------------------- 3

*Marino v Grupo Mundial Tenedora, S.A.*,
810 F Supp 2d 601, 607 (SDNY 2011)------------------------------------------------------------ 7

iii

*Marks v. New York Univ.,*
    61 F.Supp.2d 81, 88 (S.D.N.Y. 1999) ----------------------------------------------------------------------- 5

*Patrick v Allen,*
    355 F Supp 2d 704, 714-15 (SDNY 2005). -------------------------------------------------------------------10

*Phansalkar v. Andersen Weinroth & Co., L.P.,*
    344 F.3d 184, 200 (2d Cir. 2003) -----------------------------------------------------------------------------10

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
    813 F.Supp.2d 489, 534 (S.D.N.Y. 2011)-----------------------------------------------------------------11

*RiseandShine Corp. v. PepsiCo, Inc.,*
    41 F.4th 112, 119 (2d Cir. 2022) -------------------------------------------------------------------------- 3

*Ritani, LLC v Aghjayan,*
    880 F Supp 2d 425, 453 (SDNY 2012)-------------------------------------------------------------------- 5

*Sussman v Crawford,*
    488 F.3d 136, 139-40 (2d Cir 2007) ---------------------------------------------------------------------- 4

*Winter v. Nat. Res. Def. Council, Inc.,*
    U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ------------------------------------------------- 3

## **Statutes**

18 U.S.C. § 1836 ----------------------------------------------------------------------------------------------------14

iv

## PRELIMINARY STATEMENT

Defendants Michael Donnollo ("Michael"), Joshua Donnollo ("Joshua"), John Michael Long ("John", together with Michael and Joshua, the "Individual Defendants"), Braya Concepts LLC ("Concepts"), Braya Machine Company LLC ("Machine"), Braya Systems LLC ("Systems"), and Braya Ventures LLC ("Ventures", together with Concepts, Machine, and Systems, the "Braya Entities") (collectively, "Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs Tecspec LLC ("Tecspec"), Robert Senia ("Robert"), Richard Rose ("Richard"), and Ralph Schlenker's ("Ralph") (collectively, "Plaintiffs") application, via order to show cause, for a temporary restraining order and a preliminary injunction.

Plaintiffs' motion for temporary restraining order ("Motion") must be denied for failing to meet any of the elements required to impose a temporary restraining order ("TRO"), all of which are required. In sum, by the Tecspec operating agreement, the Individual Plaintiffs and Defendant Michael are <u>contractually</u> entitled to compete with each other and Tecspec. In fact, Individual Plaintiffs have been competing with Tecspec for more than 6 years. Except, now, Defendants developed and are selling a superior product, borne from monetary and temporal investments by the Defendants and having nothing to do with Plaintiffs. The Tecspec HVAC units (the "Tecspec Product") are clearly discernible from the Braya HVAC units (the "Braya Product"), both, in how the respective products are manufactured, installed, serviced, and designed.

Particularly where Defendants have a superior and unquestionably different product, it follows that Plaintiffs cannot now complain about certain competitive advantage absent showing that Defendants actually removed and are using property belonging to Tecspec for the benefit of the Braya Entities. Set forth below, it is impossible for Plaintiffs to present the requisite showing needed to prove unfair competition or other restrain-able conduct since the technology between

1

Braya and Tecspec do not overlap. The respective units for each business are fundamentally different, though they achieve the same ultimate HVAC result.

 foregoing showing, which is required to be shown, cannot be shown required  Defendant the Individual Defendants have not violated any agreements which might exist. For these and numerous additional reasons as set forth below, And since Defendants are entitled to compete against the Plaintiffs, without misappropriating any technology owned by Plaintiffs, nor undertaking any act that diminishes the ability of Plaintiffs to perform its tasks, there can be no prevailing cause of action, compelling denial of Plaintiffs' Motion.

Plaintiffs fail to establish the actual, immediate, irreparable harm essential to the relief sought. Plaintiffs waited to seek any relief for more than at least four months after Plaintiffs knew that Michael and Braya were competing against Individual Plaintiffs and Tecspec. If Defendants' conduct posed any threat of irreparable harm, Plaintiffs would never have waited so long. Plaintiffs' delay establishes the overall lack of merit of their application, and alone warrants its denial.

Plaintiffs also cannot demonstrate any likelihood of success on their trade secret claims. There is not one scintilla of evidence that any of the Defendants took any of Plaintiffs' information or materials and used them in furtherance of the Braya Defendants' business. Moreover, it is telling that Defendants have no need for any of Tecspec's processes or designs as they are inferior to Defendants' product. In essence, Plaintiffs speculate as to malfeasance and motive where there are none.

Plaintiffs' also assert the usual alternative theories, such as breach of duty of fiduciary duty and unfair competition, but neither the facts, the law, nor the equites support any of the extraordinary relief which Plaintiffs now seek. For all of the reasons set forth below, and in the

detailed accompanying declaration filed herewith, Plaintiffs' application should be denied in its entirety.

## STATEMENT OF FACTS

In the interest of brevity, Defendants rely on the facts as set forth in the Declaration of Michael Donnollo, dated October 28, 2024 ("Donnollo Decl."), the Declaration of Kevin Kerr, dated October 28, 2024 ("Kerr Decl."), and the Declaration of John Michael Long, dated October 28, 2024 ("Long Decl.") submitted herewith, and incorporated by reference herein.

## LEGAL ARGUMENT

Plaintiffs are not entitled to the "extraordinary and drastic remedy" of a preliminary injunction. *Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,* 862 F. Supp. 1070, 1074 (S.D.N.Y. 1994) (citing *Borey v. National Union Fire Ins.,* 934 F.2d 30, 33 (2d Cir. 1991)). The granting of a preliminary injunction should not routinely be granted." *Id.*

A party seeking a temporary restraining order, must prove the following four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted. *See Free Country Ltd v Drennen,* 235 F Supp 3d 559, 565 [S.D.N.Y. 2016]; *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022).

A temporary restraining order, like a preliminary injunction, is "never awarded as of right," (*see Id*. citing *Winter v. Nat. Res. Def. Council, Inc.*, U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), and whether to grant such relief "rests in the sound discretion of the district court," (*see JSG Trading Corp. v. Tray-Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir. 1990)). Further, "a preliminary

injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing,* carries the burden of persuasion." *Sussman v Crawford*, 488 F.3d 136, 139-40 [2d Cir 2007].

As explained more fully below, Plaintiffs' Motion woefully fails to establish any of these required elements, and should be denied.

**I.** **Plaintiffs' claims are without merit, leaving it impossible for plaintiffs to meet the clear and convincing burden required to show likelihood of success on the merits.**

**A.** **Plaintiffs Cannot Sustain Causes of Action for Misappropriation of Trade Secrets Under New York Law or DTSA**

Under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. *Free Country Ltd v Drennen,* 235 F Supp 3d 559, 565 [SDNY 2016].

 Defendants have neither obtained any of Tecspec's trade secrets by improper means nor obtained any trade secrets in breach of any agreement. As addressed more fully herein, Defendants simply had no need whatsoever for any of Tecspec's designs, manufacturing processes, or component parts. Accordingly, Plaintiffs are unable to prove that Defendants "used" Tecspec's trade secrets and, therefore, the extraordinary and drastic remedies now sought by Plaintiffs must be denied.

**B.** **Plaintiffs Cannot Succeed On Their Breach of Contract Claim based on the Non-Compete.**

Plaintiffs' claim that Michael Donnolo entered into a "valid and enforceable non-compete agreement" is wholly mischaracterized since the "agreement" is merely a covenant in the 2017 Tecspec Operating Agreement (the "**Operating Agreement**"). Further, the covenant is specifically limited to competition within the same county as Tecspec's business operations.

The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach. *See Marks v. New York Univ.,* 61 F.Supp.2d 81, 88 [S.D.N.Y. 1999].

With respect to a covenant not to compete, courts have held that certain activities done in preparation to compete constitute breaches of a non-compete provision in an employment agreement (*see Ritani, LLC v Aghjayan*, 880 F Supp 2d 425, 453 [SDNY 2012] citing *De Long Corp. v. Lucas,* 278 F.2d 804, 808–09 (2d Cir. 1960) where defendant's development and engineering of devices during a two year non-compete went beyond planning stages and constituted "exactly the kind of head start" the agreement intended to prevent).

Here, Plaintiffs rely exclusively on the Operating Agreement but fail to appreciate that the relevant non-complete clause is expressly limited by its own terms. The Operating Agreement states:

> Section 25 - Covenant Not to Compete
>
> 25.1    Except as otherwise provided herein, each Member covenants and agrees that while he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly, individually or in conjunction with any person or persons … in any other manner whatsoever, carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with the Company, which is **located in any county in which the Company is doing or has done business** ….
>
> (See Ex. B to the Donnolo Decl., emphasis added.)

The Braya Entities are located in Richmond County. *See* Donnolo Decl., at ¶ 13. Tecspec has <u>never</u> conducted business in Richmond County. *Id.* Therefore, Plaintiffs cannot establish that Michael breached any contract or covenant not to compete.

The Operating Agreement further provides:

[Section] 8.5  <u>The Managers Have No Exclusive Duty to Company</u>. The Managers shall not be required to manage the Company as their sole and exclusive function and **they may have other business interests and**, subject to the provisions of Section 25 hereof (to the extent a Manager is also a Member) **may engage in other activities in addition to those relating to the Company**. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Managers or to the income or proceeds derived therefrom.

[Section] 19.  <u>Other Activities of Members</u>

Except as otherwise provided in Section 25 hereof, **any Member may engage in other business ventures of every nature, including**, without limitation by specification, the **ownership of another business similar to that operated by this Company**. Neither the Company nor any of the other Members shall have any right or interest in any such independent ventures or to the income and profits derived therefrom.

(See Ex. B to the Donnolo Decl., **emphasis added.**)

Accordingly, Michael was contractually entitled to engage in other business ventures "of every nature" in addition to those relating to Tecspec and even if this activity was with another business similar to the business of Tecspec or even in competition with it.

Indeed, that is precisely what the Individual Plaintiffs have been doing for years through their own business venture SRS Enterprises. *See* Donnolo Decl.; Exhibit G.

Even after the Individual Plaintiffs became owners of Tecspec in 2018, they have continued to compete with Tecspec by enriching themselves through the Two Penn Plaza contract and by purchasing Tecspec's products and then re-selling those same products to Tecspec's customers. Plaintiffs' attempt to unilaterally weaponize the non-complete provision of the Operating Agreement must be seen for what it is: a blatant effort to unfairly eliminate competition in the HVAC marketplace.

6

Should the Court grant Plaintiffs' application, which it should not, Plaintiffs will become further unjustly enriched while Defendants and consumers will be unfairly penalized. For these reasons, Plaintiffs' instant motion should be denied.

**C.    Plaintiffs Cannot Succeed On Their Remaining Claims**

**i.    Plaintiffs' Breach of Fiduciary Duty Claim Against Michael Donnolo is based on the inapplicable Non-Compete and fails as a matter of law.**

Plaintiffs failed to show that Michael breached any fiduciary duty to Tecspec because the Operating Agreement explicitly eliminated Michael and the Individual Plaintiffs' duties of loyalty as proscribed therein.

New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims. *Marino v Grupo Mundial Tenedora, S.A.,* 810 F Supp 2d 601, 607 [SDNY 2011].

Ordinarily, to recover damages for breach of fiduciary duty under New York law, a plaintiff must prove "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *JAPNA, Inc. v SELFX Innovations Inc.,* 22CV10753ALCRWL, 2024 WL 1250269, at 9 [SDNY 2024].

Further, in typical fiduciary breach cases, in the absence of a contrary provision Further, in the absence of a contrary provision in the LLC agreement, the manager of an LLC owes the traditional fiduciary duties of loyalty and care to the members of the LLC. (*see DirecTV Latin Am., LLC v Park 610, LLC*, 691 F Supp 2d 405, 439 [SDNY 2010]).

Here, Tecspec's Operating Agreement eliminated the traditional fiduciary duty of loyalty in express recognition of all members' interests and activities outside of, and in conflict with, Tecspec. Operating Agreement § 8.5 (entitled "The Managers Have No Exclusive Duty to Company") and § 19 (entitled "Other Activities of Members"), and the operative provisions in

each, leave no doubt. Michael's contractually permitted freedom to engage in outside business -
even "ownership of another business similar to that operated by [Tecspec]" (see Ex. B to the
Donnolo Decl., at Section 19) - requires dismissal of Plaintiffs' breach of fiduciary duty claim.

Nevertheless, Michael did not engage in any misconduct or breach any fiduciary duty - and
did not need to - because the Braya Entities have their own products which do not require any of
Tecspec's designs, processes, or components.

Moreover, Michael has worked faithfully for Tecspec with care and, since 2017, Tecspec
has enjoyed product innovations and years of profitable business through the fruits of his labors.
In the absence of any facts or credible basis for Plaintiffs' claim, neither a temporary restraining
order nor preliminary injunction are warranted.

### ii.    Aiding and Abetting Breach of Fiduciary Duty Against Joshua and John Fails as a Matter of Law.

"To state an aiding and abetting breach of fiduciary claim under New York law, a plaintiff
must allege (1) a "breach by a fiduciary of obligations to another" of which the defendant "had
actual knowledge;" (2) "that the defendant knowingly induced or participated in the breach"; and
(3) "that [the] plaintiff suffered damage as a result of the breach." *Inspired Capital, LLC v Conde
Nast,* 803 Fed Appx 436, 439 [2d Cir 2020].

Additionally, the United States Court of Appeals, Second Circuit has held that "[A] failure
to allege sufficient facts to support the inference that the alleged aider and abettor had actual
knowledge of the fraudulent scheme warrants dismissal of the aiding and abetting claim at the
pleading stage." *See Heinert v Bank of Am. N.A.,* 835 Fed Appx 627, 630 [2d Cir 2020]. Moreover,
constructive knowledge is insufficient to constitute the knowledge element of an aiding and
abetting claim. *Id*.

Here, Plaintiffs have failed to establish a predicate breach of fiduciary by Michael and, on this basis alone, this claim against Joshua and John must fail.

Additionally, Plaintiffs baldly assert that Joshua and/or John participated in the purported breach but rely on unsupported hearsay and speculation including, *inter alia*, that one or both of them manufactured component parts utilizing Tecspec designs, facilities and materials, stole parts orders, and improperly used Tecspec vehicles for ulterior purposes. However, notwithstanding Defendants' lack of any need for these items and inability to use them (since the Breya Entities' products do not utilize any Tecspec components), Plaintiffs have not actually proven any of their allegations or itemized any of the items allegedly stolen or offered any police report substantiating this false allegation. In one instance, Plaintiffs summarily concludes that Defendants must have stolen a quantity of nozzles simply because Plaintiffs cannot find them. Devoid from Plaintiffs' assertion is any description of the actual size of these nozzles or the possibility that these parts were simply misplaced by Tecspec personnel. In similar fashion, Plaintiffs have failed to itemize the items allegedly stolen. For these additional reasons, Plaintiffs' claim must fail.

### iii. Breach of Implied Covenant of Good Faith and Fair Dealing Against Michael Fails as a Matter of Law

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Catalyst Advisors, L.P. v Catalyst Advisors Inv'rs Glob. Inc.*, 602 F Supp 3d 663, 678 [SDNY 2022]. Further, New York law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing distinct from a breach of contract claim based on the same facts and so "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Id.*

Here, because Plaintiffs have pled a breach of contract cause of action, and because the Operating Agreement provides contractual remedies, this claim is redundant and should properly be dismissed or the reasons set forth above in opposition to Plaintiffs' breach of contract claim.

### iv. Corporate waste, mismanagement and self-dealing claims against Michael Donnolo Fails as a Matter of Law.

"[T]he essence of waste is the diversion of corporate assets for improper or unnecessary purposes." *Patrick v Allen*, 355 F Supp 2d 704, 714-15 [SDNY 2005]. Corporate waste occurs when assets are used in a manner "so far opposed to the true interests [of the corporation so] as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests." *Id.*

Here, the facts presented fail to support any proven diversion of corporate assets or other purported waste by Michael.

### v. Breach of Faithless Servant Doctrine Against All Individual Defendants Fails as a Matter of Law

"The faithless servant doctrine applies where an individual 'owes a duty of fidelity to a principal and ... is faithless in the performance of ... services.'" *In re Lehr Constr. Corp.*, 528 B.R. 598, 607 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003)).

Under New York law, there are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: (1) "misconduct and unfaithfulness substantially violate the contract of service" which requires a "persistent pattern", and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith." *In re Lehr Constr. Corp.*, 528 B.R., at 607.

The "remedies of the faithless servant doctrine are drastic, *Id.*, and permits the principal to recover any commission or salary that it paid to the faithless servant. *Id.* at 607.

However, as here, where Plaintiffs cannot establish a duty of fidelity against Michael (because such duty was eliminated from Tecspec's Operating Agreement), this claim must fail. As to the remaining Individual Defendants, Plaintiffs have failed to prove that Joshua or John were bound by such a duty or that either of them violated same. Moreover, this doctrine provides for a remedy - albeit not one that is warranted on these facts - and Plaintiffs' application for injunctive relief must fail since Plaintiffs could conceivably be made whole in damages.

### vi.    Unjust enrichment Against All Defendants

"[T]o prevail on a claim of unjust enrichment, a Plaintiff must establish (1) that the defendant benefitted; (2) at the Plaintiff's expense; and (3) that equity and good conscience require restitution." *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,* 813 F.Supp.2d 489, 534 (S.D.N.Y. 2011) (internal citations omitted). It is well-settled that the relief for such a claim is damages restricted to the "reasonable value" of the benefit conferred upon defendants. *See Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009).

Here, once again, Plaintiffs rest solely on conclusory statements that all profits derived from the Braya Entities are "creations of a willful, prolific, and extensive scheme which included the misappropriation of trade secrets" (see Complaint, at ¶ 157). These allegations lack any basis in fact and willfully ignore Defendants' complete independence from Plaintiffs' trade secrets and the Braya products' complete lack of any need for Tecspec's component parts or designs.

Moreover, in addition to their failure to prove their ability to prevail on each element of this claim, Plaintiffs' unjust enrichment claim must also be dismissed as duplicative of their

contract and tort claims. *See Bytemark, Inc. v. Xerox Corp.*, 342 F.Supp. 3d 496, 512 (S.D.N.Y. 2018).

### vii.    Conversion Against All Defendants Fails as a Matter of Law

Under New York law, the general rule is that "a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *See Phansalkar v. Andersen Weinroth & Co., L.P.,* 175 F.Supp. 2d 635, 639 (S.D.N.Y. 2001) (but New York has extended the tort of conversion to intangible property rights that are "merged in, or identified with, some document" or "relate to specifically identifiable money") *citing In re Chateaugay Corp.,* 156 B.R. 391, 400 n.10 (S.D.N.Y. 1993).

Here, Plaintiffs assert this claim with regards to intangible trade secrets and certain equipment. Since the intangible trade secrets are neither specifically identifiable money nor merged in or identified with some document, such as the classic example of stock certificates, the conversion claim cannot stand. As for the equipment which Plaintiff alleges Defendants have converted, this too fails for a multitude of reasons. First, Plaintiffs have not identified with particularity all of the equipment at issue. Second, Michael had a right to possess the equipment provided by Tecspec in light of Michael's ownership interest in and his duties and responsibilities to the company (which were only recently terminated by the Individual Plaintiffs' unilaterally and unjustified termination of Michael's Manager status. Third, notwithstanding Michael's right to possess, Tecspec equipment in his possession has already been returned to Plaintiffs rendering this claim a nullity.

### viii.    Tortious interference with prospective business relationships against all Individual Defendants Fails as a Matter of Law.

To prove this claim, Plaintiffs must prove "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes

with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *See Guzik v. Albright,* 2018 WL 4386084, at *5 (S.D.N.Y. 2018). Additionally, a "plaintiff must assert, with respect to each defendant, that the defendant's actions were the 'but for' cause of the alleged breach." *See Actava TV, Inc. v. Joint Stock Company "Channel One Russia Worldwide"*, 412 F.Supp. 3d 338, 351 (S.D.N.Y. 2019).

Here, in support of this claim, Plaintiff simply assert two specific predicate contracts: one with 730 Third Avenue Teachers' Insurance Building and another at 200 Park Avenue, a building. Defendants deny all material allegations and, further, note that Plaintiffs' conclusory arguments on this claim fail to specify, with respect to **each** defendant: (1) details supporting the existence of these purported business relationships, (2) the existence of a valid "contract" and/or prospective business relationship with 730 Third Avenue Teachers' Insurance Building or 200 Park Avenue, (3) details concerning the who, what, when, or how behind each defendant's purported acts which arose to the level of tortiously interfered, or (4) any "but for" causation whatsoever.

Moreover, injunctive relief is also not available on this basis since Plaintiff could conceivably be made whole by damages, if warranted, which they are not.

### ix.    Unfair competition claims against all Defendants

Under New York law, "the essence of an unfair competition claim … is that the defendant misappropriated the fruits of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *See Bytemark, Inc., supra*, 342 F.Supp. 3d at 505. Jurisprudence recognizes two theories of common-law unfair competition: palming off and misappropriation. *Id, citing Carson Optical Inc. v. eBay Inc.,* 202 F.Supp.3d 247, 267-8 (E.D.N.Y. 2016).

13

Here, Plaintiffs do not argue that Defendants have "palmed off" Tecspec's goods as their own. As to the misappropriation claim, for the reasons stated above at length in earlier sections, Plaintiffs are unable to demonstrate success on the merits as to any misappropriation by Defendants of Tecspec's designs (which Defendants do not use or need), component parts (which are incompatible with the Braya Entities' products), or manufacturing processes (which are not needed for or relevant to Defendants' business).

Throughout the Complaint and Plaintiffs' instant motion, via order to show cause, Plaintiffs rely extensively on conclusory allegations to lend credence to their baseless claims.

**II.**    **Plaintiffs fail to show irreparable harm by clear and convincing evidence, Plaintiffs arguing that (i) Plaintiffs were somehow irreparably harmed as a result Defendants 'use' of proprietary Tecspec nozzles that Defendants have actually never used, (ii) Michael Donnolo's alleged violation of a non-compete agreement that explicitly does not apply to Braya, and (iii) Michael Donnolo's withholding of Tecspec passwords or property that have already been turned over.**

**A.**    **Plaintiffs' allegation of misappropriation of trade secrets is meritless in that the only specific purported technology Plaintiffs claim was misappropriated is not even used as part of the Braya Product.**

Despite Plaintiffs' bald allegations, Defendants have not misappropriated, diverted, or have any way utilized, or intend to utilize, even a single Tecspec trade secret.

The requirements for showing a misappropriation of a trade secret are similar under state and federal law. Plaintiffs' claims that Defendants misappropriated any "trade secrets" fail under both New York law and federal law pursuant to the Defend Trade Secrets Act of 2016 (the "**DTSA**"), as codified by 18 U.S.C. § 1836.

Under DTSA, a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances

14

giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person

who owed such a duty." *Free Country Ltd v Drennen*, 235 F Supp 3d 559, 565 [S.D.N.Y. 2016].

Here, Plaintiffs provide no evidence whatsoever that Braya is using Tecspec trade secrets.

Instead, Plaintiffs allege in its Motion that Defendants have misappropriated proprietary Tecspec

"nozzles," which Braya has never used in Braya's design. Plaintiffs make no other allegations of

specific trade secrets. However, in Plaintiffs' Complaint, ECF No. 1, Plaintiffs include pictures of

"proprietary material," including pictures of basic office equipment, including a "sound machine"

(Complaint ¶ 73(a)), a laptop (Complaint ¶ 73(b)), a printer (Complaint § 73(c)), a label printer

(Complaint ¶ 73(d)), and some insulation (Complaint ¶ 73(e)). Notwithstanding the fact that most

of these items are ubiquitous, are not proprietary, or trade secrets under DTSA or any other statute

or common law, most of these items do not belong to Tecspec: "The printer was given to me by

my father and I bought the pipe insulation -- none of which belong to Tecspec." *See* M. Donnolo

Decl. ¶ 24.

Concerning the "nozzles," as the only specific identifiable Tecspec item that Plaintiffs

allege were misappropriated:

> Plaintiffs' allude to Plaintiffs' illegal breaking and entering into the
> Braya Premises, and in conclusory fashion, without any evidence
> whatsoever, profess Defendants to be in possession of Tecspec trade
> secrets: In this regard, based solely on Plaintiffs' own investigation,
> Plaintiffs have established that Defendants are currently in
> possession of its confidential trade secrets. In fact, after entering the
> Braya Entities' facility in Staten Island, Plaintiffs discovered that
> Defendants were manufacturing HVAC units using Tecspec's
> confidential designs and manufacturing processes. (Verified
> Complaint at ¶¶ 14, 75, 77). Moreover, Plaintiffs are aware that Mr.
> Long has machined over 9,000 units of Tecspec's confidential
> nozzle component for the Braya Entities benefit. (Id. at ¶ 78). Put
> plainly, Defendants are using Tecspec's trade secrets for their own
> benefit. That alone satisfies irreparable harm warranting injunctive
> relief.

ECF No. 11, p. 5.

First, the allegation is belied by the fact that Braya and Tecspec have completely different designs and manufacturing processes - so much so that a lay person could easily identify the key differences between the units. Tecspec maintains an intractable, inflexible HVAC unit requiring machine assembly, with dozens of nozzles and which require machinery to service. To the contrary, the Braya Product has no nozzles (<u>none</u>), and is modular, with interchangeable parts that can be adjusted to fit almost any space, unlike Tecspec. Also unlike Tecspec, Braya's modular design of interchangeable parts makes assembly and service possible without having to completely disassemble the unit, rendering it far more versatile and cost efficient for the end user.

This key "nozzle" variation highlights the ridicuity of Plaintiffs' allegation that Mr. Long "**<u>machined over 9,000 units of Tecspec's confidential nozzle component</u>**" (*Id*, emphasis added); notwithstanding that Plaintiffs provide no evidence to prove this allegation but must do so by clear and convincing evidence, and that Mr. Long categorically denies the allegation -- Plaintiffs selected this "nozzle" part that the Braya Product does not even use, or have *anywhere* in its design. Long Decl. ¶ 5.

By the foregoing, Plaintiffs argue that Defendants are using proprietary "nozzles" in a theft of Tecspec trade secrets where Braya has never actually used such devices in its products. Ever.

Notwithstanding that Braya uses a far more advanced technology than which Plaintiffs allege was 'stolen,' any such possession of any items by Michael Donnolo (e.g., Tecspec laptop) were not improperly acquired in that Michael Donnolo is an owner of Tecspec.

Since the formation of Tecspec in 2017, Michael has been a member of Tecspec and a duly appointed Manager. *See* Donnolo Decl., at ¶ 2.

Michael's access to Tecspec's cloud-based system and the information stored thereon was incident to his duties and responsibilities. *See* Donnolo Decl., at ¶ 43. Outside of his Tecspec

duties and responsibilities, Michael did not access Tecspec's system or information. *Id.*, at ¶ 73. Moreover, neither Michael nor any other Defendant had any need to access or use Tecspec's trade secrets because the Braya Products can be made without any of Tecspec's designs or manufacturing processes, incorporating none of Tecspec's components. *Id.*, at ¶¶ 74-76. The Braya Defendants' product represents a novel innovation in HVAC technology and their new modular system is completely distinguishable from Tecspec's products. *Id.*, at ¶¶ 20-22.

**B.    That Plaintiffs waited 4 months to act highlights the lack of irreparable or imminent harm.**

As demonstrated by the Kerr Decl., at ¶ 3, Richard Rose was aware of the Braya Entities as of June 11, 2024. Given that Plaintiffs waited more than four (4) months before seeking injunctive relief, there is no imminent harm. Further, Defendants are not using Tecspec's designs, processes, or components. Plaintiffs' alleged injuries are also too speculative to determine. As argued above, the purported "contracts" relief upon by Plaintiffs are either non-existent, opportunities subverted by the Individual Plaintiffs' separate competing entity SRS Enterprises, or devoid of any demonstration as to a "but for" causal nexus between any of Defendants' actions or business activities and the natural decline in Plaintiffs' business.

**III.    Plaintiffs fail to show a balancing of the equities by clear and convincing evidence for failing to demonstrate how entitlement to the relief it seeks, all while asking this Court to essentially bankrupt Braya for engaging in the same competition the Individual Plaintiffs have done for the last 6 years.**

Plaintiffs are not entitled to any of the relief requested, where Defendants would be highly prejudiced for granting any of the relief Plaintiffs seek.

Concerning Plaintiffs' Motion, requested item:

    a.    Enjoining and restraining Defendants, and any person or entity
          acting in concert with them or under their supervision, from
          possessing, using, disclosing, or disseminating Tecspec LLC's

confidential information and trade secrets, whether directly or indirectly, except as required by the Federal Rules of Civil Procedure governing discovery and Local Rules of this Court to comply with discovery obligations;

d. Enjoining Defendants, and any person or entity acting in concert with them or under their supervision from using any software and/or computer programs whose license was paid for by Tecspec LLC, including but not limited to SolidWorks;

To grant restraint and/or injunctive relief in the absence of any evidence that the foregoing have occurred is telling. And where Michael Donnolo is an owner of Tecspec, and competitor of Tecspec - just as the Individual Plaintiffs - such restraint is not warranted under any legally cognizable paradigm. Further, Plaintiffs will use such an order as a sword to attack Braya even if Braya is compliant, claiming Braya's proprietary technology and designs for use by the Individual Plaintiffs, while they continue to conduct business as a competitor of Tecspec and Braya through SRS.

Concerning Plaintiffs' Motion, requested item:

b. Enjoining M. Donnolo, and any person or entity acting in concert with him or under his supervision, from directly or indirectly owning, managing, operating, joining, controlling, being employed by or with, or participating in any manner with a competing business as restricted in the Non-Compete provision contained in the October 6, 2017 Operating Agreement of Tecspec LLC, as amended on January 1, 2018, executed by M. Donnolo;

c. Enjoining Defendants, and any person or entity acting in concert with them or under their supervision, from bidding on any contracts concerning the manufacturing of HVAC units in violation of M. Donnolo's fiduciary duties owed to Tecspec LLC and M. Donnolo's Non-Compete Agreement, making any purchases on Tecspec LLC's lines of credit, contacting any of Tecspec LLC's vendors or customers, and discussing any part of Braya Concepts LLC's, Braya Machine Company LLC's, Braya Systems LLC's, and Braya Ventures LLC's business or Tecspec LLC's business with Tecspec's business contacts;

This would impose a restriction on employment beyond what is even in the plain language of the Operating Agreement. In fact, all the Individual Plaintiffs and Michael Donnolo have their own businesses and compete. Notwithstanding, Plaintiffs ask this Court to deprive Mr. Donnolo of his business operations while Plaintiffs enjoy theirs, all of which are legally permitted under the Operating Agreement.

Concerning Plaintiffs' Motion, requested item, such has already been provided:

> e. Mandating Defendants, and any person or entity acting in concert with them or under their supervision to provide Robert Senia, Richard Rose, and Ralph Schlenker access to Tecspec LLC's Amazon web services, email accounts, HVAC and circulation air fans located in Tecspec LLC's office and workshop space, and video cameras located in Tecspec LLC's office and workshop space, by, amongst other things, providing the necessary passwords and IP addresses for each of the aforementioned items;

> f. Mandating Defendants, and any person or entity acting in concert with them or under their supervision to return to Tecspec LLC any Tecspec LLC issued computers;

> g. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to provide Robert Senia, Richard Rose, and Ralph Schlenker administrative level control to Tecspec's accounts on Quickbooks, Dropbox, Gmail, Tecspec LLC's servers, and Tecspec LLC's websites;

> h. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to turnover to Robert Senia, Richard Rose, and Ralph Schlenker: (i) unit software and program SOV control valves; (ii) software keys for all software used by Tecspec LLC; (iii) Tecspec LLC's software and BACnet list for controller on induction units and fan coils, including preformatted points list screen; (iv) the programs for every part built on Tecspec LLC's CNC machines (including but not limited to fancoils, induction units, fin tubes, and discharge air grilles); (v) the programs for the robot arm machine used by Tecspec LLC; (vi) Tecspec LLC's induction unit central distribution panel BacNet Controller software; (vii) Tecspec LLC's fan coil central distribution panel BacNet Controller software; (viii) the laser machine programs owned by Tecspec LLC; (vix) all Tecspec LLC assembly line software and the corresponding security and source codes; (x) source codes for all Tecspec LLC programs; (xi) graphics used for

Tecspec's SOV Valve, software to the program used in connection with the SOV Valve BACnet, fan coil, and induction unit; (xii) instructions for working all Tecspec LLC's assembly lines and other software; (xiii) the programs for Tecspec LLC's laser machines that cut insulation; (xiv) Tecspec LLC's 3-D printer software; and (xv) all invoices that have been paid by Tecspec LLC for the past five years;

Concerning Plaintiffs' Motion, requested item, such has already been provided except that

which applies to Braya and not Tecspec:

i. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to turnover to Richard Rose, Robert Senia, and Ralph Schlenker: (i) Tecspec LLC's engineering drawings, including but not limited to the latest unit construction details and drawings, including any drawings and designs the HVAC unit that Defendants are manufacturing; (ii) Tecspec LLC's SOV distribution panel wiring diagram and manufacturing drawing; (iii) Tecspec LLC's wiring diagrams for fan coils and induction; (iv) Tecspec LLC's die and jigs; (v) information on how to use all of Tecspec LLC's manufacturing machines and robots; (vi) Tecspec LLC's latest selection program data; (vii) Tecspec LLC's nozzle air flow data; (viii) all Intertek testing data for all Tecspec LLC's units; (vix) all take off data for Tecspec's Two Penn Plaza contract; and (x) all of Tecspec LLC's extrusions drawings;

j. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to turnover to Richard Rose, Robert Senia, and Ralph Schlenker: (i) Tecspec LLC's vendor lists; (ii) information as to what services the vendors contained in Tecspec LLC's vendor list provide; (iii) the contact information for the vendors contained in Tecspec LLC's vendor list, including but not limited to Tecspec LLC's anodizing company and extrusion vendors;

k. Mandating Defendants, and any person or entity acting in concert with them or under their supervision to: (i) forward all Tecspec phone calls and emails to Richard Rose, Robert Senia, and Ralph Schlenker; (ii) return all keys and locks for Tecspec LLC's machinery and office/workshop spaces; (iii) disclose Tecspec LLC's subcontractors and pricing information; (iv) provide a copy of the lease for the Tecspec LLC office/workshop building located in Newark, New Jersey; and (v) disclose any quotes on jobs Braya Concepts LLC, Braya Machine Company LLC, Braya Ventures LLC, and Braya Systems LLC have submitted;

l. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to return all property Defendants removed from Tecspec LLC's facility in Newark, New Jersey, to Robert Senia, Richard Rose, and Ralph Schlenker, including but not limited to: (i) 3-D printer wire(s); (ii) tool bits; (iii) server rack(s); (iv) test fans and hosing; (v) printer(s); (vi) label

20

printer(s); (vii) sound meter(s); (viii) insulation; (vix) dampers; (x) silencers; (xi) piping; (xii) plywood; (xiii) machined damper pipe; (xiv) screws; (xv) gaskets; (xvi) gasket sensors; (xvii) sensors; (xviii) insulation nozzles; (xvix) valves; (xx) copper pipe fittings; (xxi) wire harnesses; (xxii) tubing; (xxiii) condensation sensors; (xxiv) and all raw metals and raw metals made into parts;

m. Mandating Defendants, and any person or entity acting in concert with them or under their supervision, to provide Robert Senia, Richard Rose, and Ralph Schlenker: (i) bills for the parts Defendants have purchased for the HVAC units Defendants are building; (ii) an inventory of all items/materials taken from Tecspec LLC's facility in Newark, New Jersey; and (iii) all items Defendants improperly removed from Tecspec LLC's facility in Newark, New Jersey; and it is further

To the extent the request applies to Braya, a company in which Plaintiffs have absolutely no interest whatsoever, and which is a legal competitor of Tecspec, Plaintiffs have no right whatsoever to request the foregoing relief, which aims to undermine the competitive advantage of Braya.

Moreover, to seek immediate, inverted discovery of Michael Donnolo is highly improper in that there is no basis to do so. In that Plaintiffs commenced this action, they have an obligation to sit for discovery before Mr. Donnolo, or any other Defendant. Consequently, where Plaintiffs provide no basis whatsoever to upset the order of discovery, such must not be granted.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion.

Notably, these papers are preliminary submissions, done on an immediate and emergency basis. Thus, Defendants preserve the right to supplement these papers, which may include in camera review of design specifications for Braya Products.

Defendants further respectfully request that, if any injunctive relief is awarded to Plaintiffs, that a bond be issued in an appropriate amount. Finally, Defendants respectfully request such other and further relief, at law or in equity, to which they may justly be entitled.

**WHEREFORE,** Defendants request this Court deny Plaintiffs' Motion in its entirety.


Dated: October 29, 2024
      New York, New York

                    **ROSENBERG & ESTIS, P.C.**

                    Matthew S Blum
                    Jay H Min
                    733 Third Avenue
                    New York, New York 10017

                    *Attorneys for Defendants Michael Donnolo, Joshua Donnolo, John Michael Long, Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC*