UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER,<br><br>                                  Plaintiffs,<br><br>- against -<br><br>MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10,<br><br>                                  Defendants. | Case No. 1:24-cv-08077-JHR<br><br>**DECLARATION OF MICHAEL DONNOLO** |

Michael Donnolo, states the following as true and accurate, under penalty of perjury:

1. I submit this declaration in opposition to Plaintiffs' Order to Show Cause which seeks a preliminary injunction and temporary restraining order against Defendants. All of the facts contained in this Declaration are based upon my personal knowledge.

2. Since its creation over seven years ago, I have been an owner and Manager of plaintiff Tecspec, LLC ("**Tecspec**").[1]

3. In my professional career, I have worked extensively in the field of heating ventilation and air conditioning ("**HVAC**") performing both technical and design work.

4. Leveraging my training and knowledge, I personally developed many of Tecspec's products and innovative processes.

5. Among all the past and present owners of Tecspec, I alone possess this type of technical background and expertise.

**A.    TecSpec's Operating Agreement**

---

[1] Terms not defined herein shall have the definitions ascribed to them defined under the Operating Agreement.

6. On or about February 24, 2017, Tecspec was formed under the laws of the State of New York as a limited liability company. See Tecspec's entity information from the New York Department of State, Division of Corporations, annexed as **Exhibit A**.

7. The Operating Agreement of Tecspec, LLC (the "**Operating Agreement**"), dated as of October 6, 2017, was entered into by Tecspec's then-two members, Christina Senia ("**Christina**") and myself, as memorialized by Christina's ownership of 75% and my ownership of 25% of Tecspec's shares. See Operating Agreement, annexed as **Exhibit B**.

8. Critically, in recognition of express agreements which allowed all Members to engage in business activities competing with Tecspec, the Operating Agreement provides as follows:

> [Section] 8.5 The Managers Have No Exclusive Duty to Company. The Managers shall not be required to manage the Company as their sole and exclusive function and **they may have other business interests and**, subject to the provisions of Section 25 hereof (to the extent a Manager is also a Member**) may engage in other activities in addition to those relating to the Company**. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Managers or to the income or proceeds derived therefrom.
>
> [Section] 19. Other Activities of Members
>
> Except as otherwise provided in Section 25 hereof, **any Member may engage in other business ventures of every nature, including**, without limitation by specification, the **ownership of another business similar to that operated by this Company**. Neither the Company nor any of the other Members shall have any right or interest in any such independent ventures or to the income and profits derived therefrom.
>
> Section 25 - Covenant Not to Compete
>
> 25.1 Except as otherwise provided herein, each Member covenants and agrees that while he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly, individually or in conjunction with any person or persons … in any other manner whatsoever, carry on

> or be engaged in, or connected with or interested in any business which competes, in whole or in part, with the Company, which is **located in any county in which the Company is doing or has done business** ….

(Ex. B, emphasis added)

9. Thereafter, on or about January 1, 2018, Christina assigned her 75% interest, in equal shares of 25% each, to individual plaintiffs Robert Senia ("**Robert**"), Richard Rose ("**Richard**"), and Ralph Schlenker ("**Ralph**") (collectively, "**Individual Plaintiffs**", and together with Tecspec, the "**Plaintiffs**").

10. On or about January 1, 2018, Robert, Richard, Ralph, and I executed a First Amendment to Operating Agreement (the "**Amendment**").

11. The Amendment did not change any of the Operating Agreement's key provisions, cited above, and Plaintiffs' claims, in this action and on the instant motion for a temporary restraining order and preliminary injunction, are directly undermined by these express provisions.

**B.  Defendants Are Permitted To Compete With Tecspec, Just As The Individual Plaintiffs Have Competed With Tecspec For The Last 6 Years.**

12. First, the purported non-compete covenant in Section 25.1 of the Operating Agreement is limited to "any business … which is located in any county in which [Tecspec] is doing or has done business…." See Ex. B, at Section 25.1.

13. In compliance with Section 25.1, none of the entity defendants Braya Concepts LLC ("**Concepts**"), Braya Machine Company LLC ("**Machine**"), Braya Systems LLC ("**Systems**"), and Braya Ventures LLC ("**Ventures**", together with Concepts, Machine, and Systems, the "**Braya Entities**") are located in a county where Tecspec does or has done business. See entity information from the New York Department of State, Division of Corporations, for each of the Braya Entities, collectively annexed as **Exhibit C**.

14. As plainly evident from these filings, all of the Braya Entities are located in Richmond County (Staten Island) where, upon information and belief, Tecspec has never before conducted any business.

15. Second, to the extent Plaintiffs' allegation are that Defendants are "directly competing with Tecspec by manufacturing [Tecspec's] HVAC units in a separate facility" (see Verified Complaint, dated October 24, 2024 (the "**Complaint**"), annexed as **Exhibit D**., at ¶ 11), such is no more true than the Individual Plaintiffs competing with Tecspec. See § C below.

16. Plaintiffs' contention that Defendants must be in possession of 9,000 HVAC nozzles simply because they have misplaced them (see Ex. D, at ¶ 78; Affidavit of John Michael Long, dated October 28, 2024) is unsupported conjecture. However, to remove any doubt, I inspected the Braya Entities' facility over the past weekend for any Tecspec property and found no such nozzles.

17. Moreover, Defendants have never needed any of Tecspec's designs because Braya Entities' products have never used or needed them.

18. Defendants have never manufactured any Tecspec products at the Braya Entities' facility including, but not limited to, Tecspec HVAC units, nozzle components, or SOV Valves.

19. The Braya Entities' products are wholly different from any of Tecspec's products. Tecspec makes and sells induction unit products used in the HVAC industry. The sole nexus between Tecspec and the Braya Entities' products are merely use in the HVAC market generally. But that is where any connection ends.

20. By contrast, the Braya Entities' modular product is completely different from Tecspec's rigid housing and is compatible with existing HVAC units, which do not require full hardware replacement.

21. This Braya modular product is a novel innovation of my own design and is the result of my own development, expertise, and training as an engineer, as well as the result of my personal investment of funds to develop.

22.     Plaintiffs further allege, without proof, that Defendants have "stolen thousands of dollars' worth of equipment, inventory, and engineering know how from Tecspec, as Plaintiffs just discovered …." See Ex. D, at ¶ 73.

23.     In support, Plaintiffs rely exclusively on six (6) generic photographs which merely depict a handheld "sound machine", a single laptop computer, a single printer, a label printer, some generic pipe insulation, and a surprised individual standing next to shelves in a warehouse. These photos do not depict the alleged thousands of dollars' worth of equipment and inventory, and certainly fail to identify any specific property belonging to Tecspec that should not be in my possession as owner of Tecspec.

24.     The printer was given to me by my father and I bought the pipe insulation -- none of which belong to Tecspec.

25.     Despite managerial and personal conflicts with Robert around April 1, 2022 (discussed below in greater detail), we resolved the issue and I continued performing my Tecspec duties and responsibilities - often remotely.

26.     In keeping with the Operating Agreement, which unequivocally allows me to work on other business ventures in addition to my Tecspec role (discussed in the next section), I kept a laptop, printer, and limited other equipment at the Braya Entities' facility to remotely perform my Tecspec responsibilities.

27.     However, despite my being an owner of Tecspec and, thus, entitled to possession, in light of this lawsuit, **I have now returned Tecspec's property**.

28.     Notwithstanding my return of all such property, the Tecspec property that was in my possession was basic office equipment, nothing proprietary to Tecspec.

C.  **The Individual Plaintiffs have been competing with Tecspec for over 6 years, diverting corporate opportunities to themselves.**

29.     There is no question that business activities and interests outside of Tecspec are expressly permitted under Sections 8.5 and 19 of the Operating Agreement. See Ex. A. Moreover, these provisions expressly cut off any rights which Tecspec or its Members (namely Robert,

5

Richard, or Ralph), may claim to the activities, income, or proceeds derived from other business activities and interests outside of Tecspec.

30. Under the protection of these very same provisions, Individual Plaintiffs own and operate non-party SRS Enterprises ("**SRS**"), which serves as their own independent HVAC business in direct competition with Tecspec. In fact, Individual Plaintiffs use SRS to divert business opportunities away from Tecspec, and further use Tecspec to shoulder expenses of SRS through misappropriation of Tecspec resources and assets. They have done so to the detriment of over $4,500,000.00. See a true copy of a breakout of diversions of Tecspec units, transferred from Tecspec to SRS, amounting to nearly $15,000,000.00, which constitutes a 30% reduction, hereto annexed as **Exhibit G**.

31. Paragraph 7 of the Complaint acknowledges the existence of SRS Enterprises and its financial impact on Tecspec's business. See Ex. D, at ¶ 7.

32. Plaintiffs characterizes SRS Enterprises as "the Members' HVAC representative firm" but this is materially false.

33. I have been a Member of Tecspec since its formation back in 2017.

34. In all that time, I have never held any ownership or other interest in SRS.

35. SRS was not an authorized representative of Tecspec.

36. SRS is a distinct entity from Tecspec which the Individual Plaintiffs use to purchase Tecspec products at a discount, buying Tecspec products itself in order to sell the Tecspec products as SRS products, selling via SRS at full price to the end user.

37. SRS Enterprises' actions artificially increased the price of Tecspec's products, deprived Tecspec of profits, and hurt Tecspec's overall business, thereby making SRS Enterprises a competitor to Tecspec within the HVAC industry.

38. Nevertheless, despite the legitimate and expressly permitted business activities of the Braya Entities, in conformity with Sections 8.5 and 19 of the Operating Agreement, and the Individual Plaintiffs' own competitive venture against Tecspec's interests, Plaintiffs now

selectively attack Defendants in an improper attempt to eliminate an innovative startup from the HVAC marketplace.

39. Stated plainly, the Individual Plaintiffs have brought this action, and this application for extraordinary relief, with unclean hands.

### D. Defendants Have Not Misappropriated Any of Tecspec's Purported Trade Secrets

40. Plaintiffs' allegations that I, together with defendants Joshua Donnolo ("Joshua") and John Michael Long ("John") engaged in conduct that "locked out" the Individual Plaintiffs from running Tecspec' business and shut down Tecspec's operations are meritless.

41. Paragraph 60 of the Complaint asserts that Plaintiffs stored "schematics in a cloud-based system which can only be accessed by a limited number of employees with proper authorizations and passwords." See Ex. D, at ¶ 60.

42. While I did have access to this cloud-based system and the information stored, such access was necessary to perform my duties and responsibilities. However, I did not access this system or this information outside of my duties and responsibilities to Tecspec nor did I need to since the Braya Entities' products are materially different from Tecspec's products.

43. My responsibilities as a Manager of Tecspec, my unique role as only owner with an engineering background or training required me to regularly access to the cloud-based system and the designs which I developed for Tecspec in furtherance of Tecspec's business.

44. By contrast, Richard, Ralph, and Robert lacked my technical background and training as they are, essentially, salespeople and not technical personnel.

45. Any claim which the Individual Plaintiffs have made about my purported ability to erase any critical information on the cloud-based system necessary for Tecspec's operations is also patently untrue.

46. As Plaintiffs should be aware, this cloud-based system belongs to Tecspec and Tecspec alone would have the ability to remove or restrict access to its own system.

47. While I cannot opine as to why they are unable to access the system (other than perhaps incompetence) neither Joshua, John, nor I have done anything to "lock out" the Individual Plaintiffs after the passwords have been provided.

48. To the extent requested, I am willing to provide any required passwords to all Tecspec accounts in my possession to facilitate joint access with the caveat that no documents or things be erased to ensure such data and environment is preserved.

49. For the avoidance of doubt, I have never been asked by anyone for this information and, accordingly, I have never denied anyone this information.

E. **Defendants Have Not Otherwise Engaged in Improper Conduct**

50. As plain reading of Section 25 to the Operating Agreement will show, there is no prohibition on solicitation or hiring of past or present Tecspec employees.

51. Plaintiffs further allege that I instructed Tecspec employees not to appear for work but this is not the whole truth.

52. On or about April 1, 2022, Robert attempted to verbally fire Joshua Donnolo from Tecspec and subsequently physically pushed him and harassed him as he was collecting his personal effects from Tecspec's New Jersey facility and, later that same day, Robert expressed terroristic threats about his personal safety to John.

53. After John left, video footage showed Robert telling employees, in essence, that he would "go home, get his gun and kill everybody and then himself." A true copy hereto found at this link, as **Exhibit E**. Accordingly, David Lopez's statement in his recent declaration, that I called and instructed him not to come to work because "it was not safe" is accurate.

54. I truly believed that the employees' safety was at risk.

55. However, Plaintiffs' creative retelling of an employee "walk out" is false.

56. Plaintiffs' further allegation that I threatened to "walk out" is also false.

8

F.   **Improper Conduct By Plaintiffs and Other Factual Inaccuracies in the Complaint**

(i)   Senia and Rose admit to breaking and entering

57.   Senia and Rose admit, with photographic evidence, that they entered and searched the Braya Entities' facility located at 2589 Richmond Terrace, Staten Island, New York (the "Facility"), purportedly, for the purpose of determining if any Tecspec's property was stored there. See Ex. D, at ¶ 14.

58.   However, in doing so, the Individual Plaintiffs have also admitted to the crime of breaking and entering into the Facility. And not that they needed to admit to the crime, the Individual Plaintiffs were seen on video, breaking and entering. A true copy of a video of the Individual Defendants committing felony trespass onto Braya property is at this link, as **Exhibit F**.

59.   However, in doing so, Senia and Rose have also admitted to the crime of breaking and entering into the Facility.

60.   Senia, Rose and an unknown third person did not have permission to enter the Facility.

61.   Joshua and I called 911 and they were instructed to leave. Senia, Rose and an unknown third person did not do so until instructed by responding police officers.

(ii)   Tecspec's innovations did not result from the Individual Plaintiffs' work

62.   Concerning Plaintiffs' inaccurate allegations as to the origin of Tecspec (see Ex. D, at ¶ 35), I had already began manufacturing prototype concept HVAC units before I met with Robert in his garage.

63.   Plaintiff's claim that Tecspec's "invaluable manufacturing techniques and designs" were developed by the "efforts, expertise, and capital of Plaintiffs" is false. See Ex. D, at ¶ 5.

64. All of these innovations resulted from the work and efforts of Josh, John, or myself without Richard or Ralph and possibly limited involvement only by Robert.

65. Concerning Plaintiffs' inaccurate claim that I was placed in charge of running Tecspec's New Jersey facility after Robert's injury (see Ex. D, at ¶ 55), this is false as I had always been in charge from Tecspec's formation in 2017.

66. Concerning Plaintiffs' inaccurate allegation that "all of Tecspec's manufacturing was done in-house [and] no third-party, or non-employee, would have access to its designs and manufacturing processes" (see Ex. D, at ¶ 61), this is false as certain parts and components were outsourced thereby necessitating disclosure.

67. Plaintiffs contradict themselves by claiming that the $6.5 million Two Penn Plaza Building job belonged to Tecspec while, simultaneously, admitting that the purchase order for that job was awarded to SRS Enterprises, and not Tecspec. See Ex. D, at ¶ 7.

68. Concerning Tecspec's purported "contract" on the 730 Third Avenue Teachers' Insurance Building project (see Ex. D, at ¶ 84), Tecspec has no such "contract".

69. Concerning Tecspec's purported "job" at 200 Park Avenue (see Ex. D, at ¶ 165), upon information and belief, Tecspec has no such "job" or dealings of which I am aware.

      (iii)    The Braya Entities

70. Joshua is not employed or compensated by any of the Braya Entities.

71. John is not employed or compensated by any of the Braya Entities.

72. I am not employed or compensated by any of the Braya Entities.

73. Throughout the limited existence of the Braya Entities, I have only ever invested time, money, and technical support when doing so would not interfere with Tecspec operations.

74. All of the projects for the Braya Entities were separate and distinct from any of Tecspec's work and projects.

75. Braya units can be fully produced without any of Tecspec's components, designs, or facilities.

76. Accordingly, the Braya Entities have never taken, or needed, any component parts from Tecspec.

77. The Braya Entities do not have any policy concerning prohibited clothing and employees are free to wear what they want absent a safety issue.

78. All of the Braya units are the result of proprietary designs developed and owned by the Braya Entities.

**[Remainder of Page Left Intentionally Blank]**

RE\24801\0001\5765715v2

**<u>DECLARATION</u>**

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                                                      _____

                                                                                        MICHAEL DONNOLO

Dated: October 28, 2024