

1325 Avenue of the Americas, 19th Floor
New York, NY 10019
212-752-8000    212-752-8393  fax

New Jersey

Delaware

Maryland

Texas

Florida

Jason R. Melzer
Member
Admitted in NJ and NY

Reply to New York Office
Writer's Direct Line: 201.525.6313
Writer's Direct Fax: 201.678.6313
Writer's E-Mail: JMelzer@coleschotz.com

October 30, 2024

**VIA ECF**

The Honorable Jennifer H. Rearden
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:    *Tecspec LLC, et al. v. Michael Donnolo, et al.*
              Civil Action No. 24 Civ. 8077 (JHR)

Dear Judge Rearden:

        This office represents Plaintiffs[1] in the above matter. Please accept this letter brief in lieu of a more formal submission in further support of Plaintiffs' Order to Show Cause application seeking temporary restraints and preliminary injunctive relief.

## Introduction

        Defendants' opposition to Plaintiffs' application is premised upon: (i) a fundamental misunderstanding of Tecspec's line of business as compared to that of SRS; and (ii) a tortured and frankly nonsensical reading of the non-compete provision contained within the Operating Agreement – which, at this stage is irrelevant anyway. The law and facts relevant to Plaintiffs' application could not be more clear, simple, and straightforward. M. Donnolo is a current ***member*** of Tecspec and owes fiduciary duties to the company and its other members completely independent from the non-compete provision at issue. There is absolutely no justification whatsoever that would allow one member of an LLC to remove the company's property (tangible and intellectual) and employees, relocate them to a new company that member has formed, begin competing head-to-head against his fellow members (including on current jobs), and usurp opportunities that belong to the company.

        Likewise, Defendants' contention that Plaintiffs were required to bring their Order to Show Cause application four months ago is absurd. Defendants cannot shield themselves from the

---

[1] Capitalized terms herein shall have the same meaning ascribed to them as in Plaintiffs' moving brief in support of their Order to Show Cause application.



October 30, 2024
Page 2

consequences of their misdeeds by saying that Plaintiffs "should have known." While Plaintiffs certainly had suspicions, they did not have in their possession the necessary proofs that would warrant injunctive relief at that time, *i.e.*, actual evidence that Defendants had: (i) misappropriated trade secrets; (ii) stolen equipment; and (iii) were actively competing against Tecspec to its detriment. Plaintiffs diligently pursued an investigation based on their suspicions, and ultimately, discovered that their suspicions were fact. At that time, Plaintiffs immediately brought their Order to Show Cause application without any delay.

In short, Defendants were caught red-handed, which explains why they have begun returning *some* of Tecspec's stolen property, only in attempt to show some form of good faith before this Court. Defendants' limited return of property, however, is merely window dressing. Tecspec remains crippled as a result of Defendants' well-prepared scheme. Emergency relief remains necessary to allow Tecspec to resume operations and continue its work on critical jobs, such as the Two Penn Plaza job.

### 1. Despite Defendants' Attempts at Obfuscation, There Remains a Host of Undisputed Facts Warranting the Requested Temporary Restraints and Injunctive Relief

While Defendants have conjured up "creative" arguments to justify their misconduct, Defendants overlook several critical undisputed facts that warrant Plaintiffs' request for temporary restraints and injunctive relief. *First*, M. Donnolo, as a member of Tecspec, has created a separate entity, poached two high level Tecspec employees, ***and has actively competed against Tecspec to its detriment while being paid by the company***. Specifically, Defendants do not, and cannot, dispute that the Braya Entities have bid on two projects Tecspec is currently working on or submitted bids on: (i) the 730 Third Avenue Teachers' Insurance building job; and (ii) the 200 Park Avenue building job. As will be explained in greater detail below, that conduct flies in the face of M. Donnolo's fiduciary duties owed to Plaintiffs. Indeed, neither the Tecspec Operating Agreement nor Non-Compete Agreement, allows a member to engage in conduct to effectively run Tecspec out of business. That is absurd.

*Second*, it undisputed that Defendants have frustrated Plaintiffs' ability to operate Tecspec. In this regard, despite providing Plaintiffs with some passwords, Defendants still have not provided and/or returned other essential software, material, and information, including but not limited to:

- Tecspec's CAD/CAM, AutoCad, and Mastercam software;

- The password to Tecspec's Dropbox which contains schematics for its various component designs;

- The password to Tecspec's website;

- Access to Tecspec's software and programs to operate its assembly line, including the source code for all its products;

- Access to the software and programs necessary to operate certain robotic manufacturing machines;

68430/0001-48720776v3

- The suction cup attachment to a certain robotic manufacturing machine, rendering it inoperable;
- Access to all programs necessary for the machining of component parts;
- Access to the software to program Tecspec's SOV valve;
- Access to the software program which controls the distribution panel for induction units and fan coils;
- Access to Tecspec's Microsoft Office Suite and Solidworks;
- The engineering drawings for each and every Tecspec job;
- Insulation for induction units;
- Inlet and out tube material and machined parts already produced for various Tecspec jobsites;
- Dampers;
- Testing fans;
- The identity of the Two Penn Plaza building drain gasket vendor;
- The Two Penn Plaza takeoff document;
- Certain Haas machine tool bits;
- Screw guns;
- Printers;
- Sound meters;
- The list of all vendors Tecspec uses;
- HVAC unit construction details;
- Certain gaskets for induction units; and
- 3-D printer wire

Put plainly, absent this critical information and equipment, in addition to the other items outlined in Plaintiffs' proposed order, Tecspec is unable to operate, and is at risk of failing to meet contractually obligated deadlines. That conduct cannot be countenanced.

*Third*, a substantial number of Tecspec's proprietary nozzles were manufactured and then "disappeared" from Tecspec's facility. Indeed, Defendants expect this Court to believe, despite the fact that M. Donnolo, J. Donnolo, and Mr. Long were the only individuals capable of manufacturing Tecspec's components, that these nozzles were actually "misplaced." It is simply incredible to suggest that Tecspec misplaced these nozzles, and it remains undisputed that those nozzles were taken from Tecspec's warehouse. At a minimum, that undisputed fact warrants the expedited deposition of M. Donnolo to determine what happened to that inventory, in addition to what other equipment and information Defendants' may be in possession of.

Accordingly, in light of the aforementioned undisputed facts, in addition to all the reasons set forth in Plaintiffs' moving brief, Plaintiffs respectfully submit that they are entitled to the relief sought in their Order to Show Cause application.

## 2. **Defendants' Arguments Concerning the Non-Compete Agreement Are Premised Upon an Incorrect Factual Premise and Are Irrelevant to Plaintiffs' Application.**

Defendants' attempts to undermine the enforceability of M. Donnolo's Non-Compete Agreement are unavailing, and completely ignore the undisputed fact that M. Donnolo is a member of Tecspec that is actively competing against his own company. That conduct is a blatant breach of his fiduciary duties.

Rather than address that undisputed fact head on, Defendants point their fingers at Plaintiffs and suggest that SRS Enterprises ("SRS") has been competing with Tecspec for the past six years. Defendants are wrong. Put plainly, unlike Tecspec (and the Braya Entities), SRS is not an HVAC component manufacturer, but rather, a manufacturer's representative that assists other companies in procuring certain parts. That is why Tecspec and SRS have worked hand in hand together. SRS is able to procure parts from Tecspec and sell them to other companies. It is for that exact reason that Tecspec allowed its members to "engage in other activities" and otherwise own "another business similar to that operated" by Tecspec. While the members could own a similar company (like an HVAC manufacturer representative), they were not permitted to own a company that competes directly with Tecspec.

That is exactly what M. Donnolo and the remaining Defendants are undisputedly doing here, in direct violation of M. Donnolo's fiduciary duties. "Under New York law, LLC members owe one another, as well as the LLC, various fiduciary duties." *Renmaker Co. Consulting, Inc. v. TLM Grp., LLC*, 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017). "Among these duties are the duty of care, duty of loyalty, and the duty of disclosure." *Id.* "Under the duty of loyalty, a fiduciary must not engage in self-dealing, and he must avoid situations where his personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Id.* "Pursuant to the duty of care, a fiduciary must perform his duties in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." *Id.*

Tecspec has already supplied $850,000 worth of HVAC units for the 730 Third Avenue Teachers' Insurance building project. Recently, the owner sought more units for an additional five floors. Tecspec provided units for one of those floors and then M. Donnolo shifted the work for



October 30, 2024
Page 5

the additional four floors to Braya. The units for one of those four floors have already been installed. (Declaration of Robert Senia, the "Senia Declaration" at ¶ 12). Likewise, with respect to the 200 Park Avenue building, prior to the COVID-19 pandemic, Mr. Senia was advised by Adam Cannizaro, a salesperson of SRS, that the principal of P&A Consulting Engineers, John Anthes (which is the consulting engineer for HVAC installation in connection with the 200 Park Avenue job), toured Tecspec's facility in connection with a potential bid. (*Id.* at ¶ 5). M. Donnolo was the main point of contact for Tecspec. (*Id.* at ¶ 4). After that inspection, Mr. Senia was further informed that Mr. Anthes recommended that Tecspec HVAC units be installed at 200 Park Avenue. (*Id.*). During the Covid-19 pandemic, the project went dormant and was not awarded at that time. (*Id.* at ¶ 7). However, recently, the project has resumed, and Mr. Senia was informed by Mr. Cannizaro, that within the past few months M. Donnolo reached out to the operating engineer for the 200 Park Avenue project and represented he was returning to the job with his new company "Braya." (*Id.* at ¶ 8). Mr. Senia was also informed by Mr. Cannizaro that the Braya Entities have now installed HVAC units at 200 Park Avenue. (*Id.* at ¶ 9). Put plainly, Defendants are attempting to poach jobs that Tecspec are currently working on. Notwithstanding the Non-Compete Agreement, M. Donnolo's fiduciary duties prohibit him from directly competing with Tecspec.

Worse yet, Defendants have feigned ignorance to the fact that Tecspec has contracted to install HVAC units for the 730 Third Avenue Teachers' Insurance Building and otherwise has bid on 200 Park Avenue. To that end, attached to the Declaration of Robert Senia is: (i) the proposal submitted by Tecspec to provide HVAC units to 730 Third Avenue; (ii) purchase orders for HVAC units to be delivered to 730 Third Avenue; (iii) invoices issued by Tecspec for HVAC units that were supplied to 730 Third Avenue; and (iv) emails that reflect Tecspec's efforts to sell HVAC units to the owner of 200 Park Avenue. In short, Tecspec has indisputably worked on and bid on the same projects that Defendants are now attempting to usurp.

### 3. **Plaintiffs Filed Their Order to Show Cause After Diligent Investigation Despite Defendants' Cover Up**

Defendants maintain that Plaintiffs cannot suffer irreparable harm because they waited four months since Mr. Rose made a cursory reference that he "knew Mike was competing with [Tecspec]." That argument is premised on a misrepresentation of the facts and the absurd insinuation that Plaintiffs should have rushed to the Courthouse on nothing more than pure speculation.

It is well-settled that a movant has no obligation to move for injunctive relief until it is aware of the extent of the wrongdoing. *E.g.*, *Kuklachev v. Gelfman*, 629 F. Supp. 2d 236, 250 (E.D.N.Y. 2008); *see also Tom Doherty Associates Inc. v. Saban Entertainment*, 60 F.3d 27, 40 (2d Cir. 1995) ("[P]arties should not be encouraged to sue before a practical need to do so has been clearly demonstrated"); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 522 n.3 (S.D.N.Y. 2013) ("[A] delay in filing suit will not rebut the presumption of irreparable harm if the plaintiff does not know how severe the [misconduct] is."). Simply stated, despite having a suspicion of wrongdoing four months ago, Plaintiffs were unaware of the full extent of Defendants' conduct until two weeks ago. That is because, as explained in Plaintiffs' moving brief, Defendants did everything in their power to cover up their conduct. Nevertheless, once Plaintiffs were aware that Defendants were actively competing against Tecspec, and had stolen thousands of dollars'



worth of equipment, in addition to misappropriating Tecspec's trade secrets, Plaintiffs promptly moved for relief.

### 4. **Defendants' Remaining Arguments Are Equally Unavailing and Are Nothing More than a Misguided Attempt to Deflect Blame**

Defendants have littered their opposition with ad hominin attacks that completely misconstrue certain events precipitating this litigation. For example, Defendants suggest that the walk out that was orchestrated by M. Donnolo of all of Tecspec's employees stemmed from certain comments made by Mr. Senia (identified in a video submitted by Defendants). At the outset, that video is from two years ago. Defendants failed to act on any event that transpired in that video, and instead, kept it in their back pocket as an insurance policy. Indeed, Defendants knew one day they would get caught and would need that video to try and use it as an excuse for their actions. In any event, the video completely misconstrues what occurred. In fact, omitted from Defendants' opposition papers is the fact that J. Donnolo got in Mr. Senia's face and screamed at him, leading to that confrontation. Moreover, Defendants fail to note that each of the employees who left the facility returned to work (except for M. Donnolo, J. Donnolo, and Mr. Long) and never raised any concern regarding their personal safety. Further, Defendants suggest that Mr. Senia and Mr. Rose broke into the Braya Entities' facility. Not so. Mr. Senia and Mr. Rose entered the facility through an unlocked door and left once they were told to do so. All told, Defendants' allegations do not paint the full picture of what has transpired, and do not warrant any credence.

### **Conclusion**

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant their application for temporary restraints pending a hearing on their request for injunctive relief.

Respectfully submitted,

*/s/ Jason R. Melzer*

Jason R. Melzer

JRM:saz

cc: Matthew S. Blum, Esquire (Via ECF and Email)

68430/0001-48720776v3