

1325 Avenue of the Americas, 19th Floor
New York, NY 10019
212-752-8000   212-752-8393  fax
—
New Jersey
—
Delaware
—
Maryland
—
Texas
—
Florida

Jason R. Melzer
Member
Admitted in NJ and NY

Reply to New York Office
Writer's Direct Line: 201.525.6313
Writer's Direct Fax: 201.678.6313
Writer's E-Mail: JMelzer@coleschotz.com

January 30, 2025

**VIA ECF**

The Honorable Jennifer H. Rearden, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> By **February 5, 2025**, Defendants shall file any opposition to Plaintiffs' application.  To the extent that Defendants deny possession of any item or information identified in the instant letter, they should submit an affidavit or declaration detailing their position regarding such item or piece of information.  By **February 7, 2025**, Plaintiffs shall file their reply, if any.
>
> SO ORDERED.
>
> */s/ Jennifer H. Rearden*
> Jennifer H. Rearden, U.S.D.J.
> Dated: January 31, 2025

Re:   *Tecspec LLC, et al. v. Michael Donnolo, et al.*
       **Civil Action No. 24 Civ. 8077 (JHR)**

Dear Judge Rearden:

This office represents Plaintiffs in the above-captioned matter. We are writing to the Court to provide your Honor with a status update regarding the January 23, 2025 videoconference between the parties, and to respectfully request that this Court order Defendants to provide Plaintiffs with the information they need to make Plaintiff Tecspec LLC ("Tecspec LLC") operational, as well as return to Plaintiffs the items belonging to Tecspec LLC and which are currently and unlawfully in Defendants' possession. A copy of the proposed Order is attached hereto as Exhibit A[1].

---

[1] As the Court may recall, Plaintiffs' Proposed Order filed on January 17, 2025 (ECF #76) reserved Plaintiffs' rights to seek court intervention regarding the outstanding information owed to Plaintiffs be Defendants if the January 23, 2025 videoconference was unsuccessful. Accordingly, Plaintiffs are now submitting a separate proposed order regarding same.

COLE SCHOTZ P.C.

January 30, 2025
Page 2

On January 23, 2025, after multiple previous and unsuccessful meetings, the parties met via videoconference, as per the Court's directive, for the express purpose of Defendants providing information to Plaintiffs that would enable them to operate Tecspec LLC. Plaintiffs appeared on the videoconference in good faith, along with several of Tecspec LLC's IT and engineering personnel to facilitate the process. Defendants, on the other hand, did not appear in good faith. Indeed, Defendants refused to speak directly with Plaintiffs, instead using Mr. Blum as an intermediary. The entire purpose of this videoconference was for the parties to engage in a frank discussion and for Defendants to freely provide the information Plaintiffs needed to make Tecspec LLC operational. Instead, as demonstrated by the recording of the videoconference[2], Defendants refused to speak directly to Plaintiffs or their engineering personnel, leaving Mr. Blum, a non-engineer, to provide information that was often unclear, missing context, or flat out evasive. As demonstrated in detail below, it quickly became evident that Defendants had not appeared in good faith, and as such, Plaintiffs were unable to obtain the information that they needed. For the ease of the Court's reference, Plaintiffs have provided a full list of what specific, technical information remains outstanding, which is attached hereto as Appendix A. Below is a review of various excerpts from the videoconference, which clearly demonstrate that Defendants were being purposefully evasive.

One of the main issues that Plaintiffs have been grappling with is how to get Tecpec LLC's conveyor belt back up and running. When asked about the conveyor belt, Defendants (through their counsel) stated for the first time that "the conveyor belt hasn't been used in four years," (20:55

---

[2] A true and correct recording of the videoconference is attached hereto as Exhibit B. Due to the format of the file, it cannot be uploaded via ECF. Plaintiffs are therefore attaching Exhibit B via hyperlink here.



January 30, 2025
Page 3

- 21:40[3]) and further stated that the QR codes lasered onto the units had not been in effect "for at least the last two years." 42:34-42:47. These statements were directly contradicted by David Lopez, a Tecspec LLC employee, who stated that, "Six, eight months ago the QR codes were working, the conveyor was working, the laser about a year ago, but this was operational before they even left." 54:30 – 54:52. Defendants failed to respond to Mr. Lopez, leaving Plaintiffs none the wiser as to: (i) how to operate the conveyor belt; and (ii) the purpose of the conveyor belt for Tecspec LLC.

Another machine key to Tecspec LLC's operations is the Swiss Lathe. Since Defendants left their employment with Tecspec LLC, Plaintiffs have been unable to operate the Swiss Lathe. In response to Plaintiffs' request for the location of the Nozzles, Leveling Leg feet, and Leveling leg threaded rod programs and step files, along with other items that were made on the Swiss lathe, Defendants' counsel claimed that the programs were located in the machine's internal memory. *See* 58:31 ("[The programs are located in] the internal memory of the Swiss Lathe Machine.") Mr. Senia and Michael Mickulick, an engineer affiliated with Tecpsec LLC refuted this statement, saying:

> [Mickulick:] No…
>
> [Senia]: there's no USB key in the machine, it's gone.
>
> [Mickulick:] and there's nothing in the memory of the Swiss machine… it's not there, you wiped it.

58:39-58:48. After being caught in a lie, Defendants' counsel made an about face and claimed that "Apparently the USB never worked." 59:13.

---

[3] All time stamps refer to the recording attached hereto at Exhibit B.

68430/0001-49277206



January 30, 2025
Page 4

    Similarly, when asked about the program that was used to make the Tecspec LLC nozzles, Defendants' counsel claimed that:

> The program was in the machine memory, the last that was checked was in the machine memory. If it's not in the machine memory now, I don't know what to tell you. … anything relating to the programs for this machine are also in this [Dropbox] folder.

1:05:43- 1:06:16. Only one type of nozzle drawing is contained in the Dropbox folder.

    Defendants also failed to proffer a sufficient explanation regarding the location of various items on the network map. When asked about same, Defendants' counsel responded as follows:

> We don't know physically where those are in the facility, and we would have no way of knowing here today where those are in the facility. If there was inventory that was done of the facility… if there was an inventory done I'm sure that it would be identified within that inventory

14:00-14:32. This response is both nonsensical and internally inconsistent. Defendants, through their counsel, cannot simultaneously claim that they have "no way of knowing" where the items are, and in the same breath guarantee that if an inventory was done, "it would be identified within that inventory." Plaintiffs are thus left to locate these items without assistance.

    Finally, when Plaintiffs asked Defendants the simple question of who the panel builder that they contracted with was, Defendants' counsel responded as follows:

> We don't know, it's in Josh's email.

1:40: 50-53.

    Plaintiffs thus remain unable to operate Tecspec LLC, and after multiple conferences, it has become apparent that Defendants have no intention of enabling Plaintiffs to do same. Furthermore, Defendants are still in unlawful possession of several items belonging to Plaintiffs, including but not limited to:

68430/0001-49277206

COLE SCHOTZ P.C.

January 30, 2025
Page 5

1. M. Donnolo's laptop, which contains programs purchased by Tecspec LLC, as well as Tecspec LLC files;

2. Chairs and plastic orange chairs;

3. Red plastic bins;

4. Tools, screw guns, and miscellaneous tools and bolts;

5. All tools and bits used on the CNC machine, including but not limited to the stand that holds them;

6. Sound insulation for silencer tubing;

7. Wiring Harnesses used on the induction units;

8. Aluminum Silencer piping;

9. Dwyer gages;

10. 3D printer plastic wires;

11. Alum dies; and

12. All drawings and testing data on the new Coanda-based HVAC unit.[4]

Several of the requested items are demonstrated on Exhibit C attached hereto. On January 29, 2025, we wrote to Defendants' counsel and demanded return of same. A true and correct copy of the January 29, 2025 correspondence is attached hereto as Exhibit D. Plaintiffs have tried to resolve these issues in good faith. However, it has become clear that Plaintiffs are not going to receive the information they need or the items they are entitled to from Defendants absent court intervention. As such, Plaintiffs are respectfully requesting that this Court order Defendants to provide Plaintiffs with the information they need to make Tecspec LLC operational and to return the items Defendants have stolen from Tecspec LLC.

---

[4] To the extent that Defendants claim that they properly own any of the above, Plaintiffs hereby demand that they provide bills and/or invoices demonstrating same.

68430/0001-49277206



January 30, 2025
Page 6

      As always, we thank the Court for its time and attention to this matter.

                                      Respectfully submitted,

                                      */s/ Jason R. Melzer*

                                      Jason R. Melzer

JRM

cc:    Matthew S. Blum, Esquire (Via ECF)
       Jay H. Min, Esquire (Via ECF)

COLE SCHOTZ P.C.

January 30, 2025
Page 7

## Appendix A

1. The location of:

    a. apContainer;

    b. modbus2;

    c. ap3; and

    d. pi8.

2. All open questions regarding the conveyor belt, including but not limited to:

    a. how the conveyor belt QR codes were generated and applied,

    b. if the QR codes provide subcomponent traceability and how the lookups are done for that;

    c. how units are initially entered into the database via QR code;

    d. whether the script used for smaller portions of the conveyor belt were iterative or used for different components;

    e. the startup process for the conveyor belt system;

    f. the functions of the associated kiosks, test rigs, and pcams; and

    g. how the testrigX.py files run.

3. All documentation related to the calibration of testing equipment;

4. Whether Cloudkey0 or I uses DNS, and other related special configurations;

5. Whether all devices need to access the Tecspec Prod wireless network to run the Python scripts;

6. Sequence of operations for the three programs involved in the nozzle manufacturing;

7. The name, location, and execution of the SQL program that runs the assembly line;



January 30, 2025
Page 8

       8.   The software used to program the Belimo valve;[5]

       9.   Information regarding and location of the central panel program and name and phone number of the panel builder;

---

[5] A screenshot of the software is attached hereto as Exhibit E.

68430/0001-49277206