UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER,<br><br>        Plaintiffs,<br><br>  - against -<br><br>MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10,<br><br>        Defendants. | Case No. 1:24-cv-08077-JHR<br><br>**DECLARATION OF MICHAEL DONNOLO** |
| BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, JOHN MICHAEL LONG, JOSHUA DONNOLO, and MICHAEL DONNOLO, individually and derivatively on behalf of Tecspec LLC,<br><br>        Counterclaim Plaintiffs,<br>  v.<br><br>RALPH SCHLENKER, ROBERT SENIA, RICHARD ROSE, SRS ENTERPRISES INC., SRS ENTERPRISES NJ LLC, HVAC SERVICE ASSOCIATES, and SRS RESEARCH LLC,<br><br>        Counterclaim Defendants.<br><br>      -against- | |

**MICHAEL DONNOLO** states the following as true and accurate, under penalty of perjury:

1. I submit this declaration in support of Defendants/Counterclaim Plaintiffs' Order to Show Cause seeking (i) an injunction against Plaintiffs/Counterclaim Defendants; and (ii) the appointment of a receiver to oversee Tecspec, LLC ("Tecspec") during the pendency of this action. All of the facts contained in this Declaration are based upon my personal knowledge.

2. Since its creation over seven years ago, I have been an owner and Manager of Tecspec.[1]

3. In my professional career, I have worked extensively in the field of heating ventilation and air conditioning ("HVAC") performing both technical and design work.

4. Leveraging my training and knowledge, I personally developed many of Tecspec's products and innovative processes.

**THIS IS AN EMERGENCY
WHERE PLAINTIFFS ENGAGE IN UNREASONABLE, UNJUSTIFIED, DELIBERATE
INTERFERENCE WITH BRAYA'S BUSINESS OPPORTUNITIES, WHICH WILL
RESULT IN BRAYA'S LOSS OF SUCH OPPORTUNITIES IF A TEMPORARY
RESTRAINING ORDER IS NOT GRANTED**

**A.    Tecspec's Operating Agreement**

5. On or about February 24, 2017, Tecspec was formed under the laws of the State of New York as a limited liability company.

6. Tecspec is incorporated in and does business in Kings County, New York. See Tecspec's entity information from the New York Department of State, Division of Corporations, annexed as **Exhibit A.**

7. The Operating Agreement of Tecspec, LLC (the "Operating Agreement"), dated as of October 6, 2017, was entered into by Tecspec's then-two members, Christina Senia ("Christina")

---

[1] Terms not defined herein shall have the definitions ascribed to them defined under the Operating Agreement.

and myself, as memorialized by Christina's ownership of 75% and my ownership of 25% of Tecspec's shares. See Operating Agreement, annexed as **Exhibit B.**

8. The Operating Agreement was drafted by Richard Rose, Robert Senia and Ralph Schlenker.

9. Critically, in recognition of express agreements which allowed <u>all</u> Members to engage in business activities competing with Tecspec—subject to certain restrictions—the Operating Agreement provides as follows:

> [Section] 8.5 <u>The Managers Have No Exclusive Duty to Company</u>. The Managers shall not be required to manage the Company as their sole and exclusive function and **they may have other business interests and**, subject to the provisions of Section 25 hereof (to the extent a Manager is also a Member**) may engage in other activities in addition to those relating to the Company**. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Managers or to the income or proceeds derived therefrom.
>
> [Section] 19. <u>Other Activities of Members</u>
>
> Except as otherwise provided in Section 25 hereof, **any Member may engage in other business ventures of every nature, including**, without limitation by specification, the **ownership of another business similar to that operated by this Company**. Neither the Company nor any of the other Members shall have any right or interest in any such independent ventures or to the income and profits derived therefrom.
>
> <u>Section 25 - Covenant Not to Compete</u>
>
> 25.1   Except as otherwise provided herein, each Member covenants and agrees that while he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly,

> individually or in conjunction with any person or persons … in any other manner whatsoever, carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with the Company, which is **located in any county in which the Company is doing or has done business** ….

(Exhibit B, emphasis added)

10. Thereafter, on or about January 1, 2018, Christina assigned her 75% interest, in equal shares of 25% each, to individual Plaintiffs/Counterclaim Defendants Robert Senia, Richard Rose, and Ralph Schlenker (collectively, the "SRS Owners", and together with Tecspec, the "Plaintiffs/Counterclaim Defendants").

11. On or about January 1, 2018, Robert, Richard, Ralph, and I executed a First Amendment to Operating Agreement (the "Amendment").

12. The Amendment did not change any of the Operating Agreement's key provisions, cited above.

**B.   The SRS Entities Are Not Permitted to Compete with Tecspec**

Notwithstanding the aforementioned provisions, the Operating Agreement also contains a non-compete covenant in Section 25.1 (the "Non-Compete Clause").  The Non-Compete Clause states, in pertinent part, that no Member of Tecspec shall:

> directly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation . . . in any other manner whatsoever, carry on or be engaged in, or connected with any business which competes, in whole or in part, with [Tecspec], **which is located in any county in which [Tecspec] is doing or has done business**.

(Exhibit B, Section 25) (Emphasis supplied).

4

13.     Plaintiffs/Counterclaim Defendants claim that I violated the Non-Compete Clause by virtue of my involvement in Braya Concepts LLC ("Concepts"), Braya Machine Company LLC ("Machine"), Braya Systems LLC ("Systems"), and Braya Ventures LLC ("Ventures", together with Concepts, Machine, and Systems, the "Braya Entities").

14.     Not only is that allegation false, but Plaintiffs/Counterclaim Defendants—specifically, the SRS Owners—are themselves in violation of the Non-Compete Clause.

15.     In compliance with Section 25.1, none of the Braya Entities are located in a county where Tecspec does or has done business. See entity information from the New York Department of State, Division of Corporations, for each of the Braya Entities, collectively annexed as **Exhibit C**.

16.     As plainly evident from these filings, the Braya Entities are all located in Richmond County (Staten Island) where Tecspec has never before conducted any business.  Thus, my involvement in the Braya Entities does not violate the Non-Compete Clause.

17.     By contrast, the SRS Owners operate several businesses that violate the Non-Compete Clause.

18.     Specifically, the SRS Owners own and operate Counterclaim Defendants SRS Enterprises Inc., SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC ("SRS Entities"), which serve as their own independent HVAC businesses in direct competition with Tecspec.

19.     SRS Enterprises Inc., which is owned and operated by the SRS Owners, is located in Kings County, New York.  See entity information from the New York Department of State, Division of Corporations, for SRS Enterprises Inc., annexed as **Exhibit D**.

20.     Tecspec routinely does business in Kings County.

21. SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC—also owned and controlled by the SRS Owners—are located in Monmouth County, New Jersey. See entity information from the New York Department of State, Division of Corporations, for RS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC, annexed as **Exhibit E**.

22. Tecspec routinely does business in Monmouth County, New Jersey, most notably by engaging in extensive business dealings with SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC.

23. Moreover, the SRS Entities directly compete with Tecspec in the HVAC industry.

24. Although the SRS Entities hold themselves out as HVAC manufacturers' *representatives*, rather than manufacturers, Plaintiffs' Complaint admits that the purchase order for a lucrative HVAC production and installation opportunity at the Two Penn Plaza Building was awarded to SRS Enterprises Inc and not Tecspec. [ECF 1, ¶ 7]. Notably, this is a contract which Tecspec could, and should, have been awarded but for Plaintiffs' interference with Tecspec's ability to bid on the Two Penn Plaza Building project.

25. Even worse, SRS Enterprises Inc. fulfills the orders for that Tweo Penn Plaza Building project by misappropriating Tecspec's HVAC induction units, engaging in self-interested transactions between Tecspec and SRS Enterprises Inc. so the SRS Owners could profit directly from the Two Penn Plaza Building project while Tecspec is rendered insolvent.

26. In fulfilling the Two Penn Plaza Building project, Tecspec is losing money: for e.g., the SRS Owners gave approximately 2275 Tecspec HVAC Units to SRS Enterprises Inc. to fulfill the Project requirements at a price of $2,264 per unit, where the actual cost of production per unit by Tecspec has exceed $4,400. Thus, as a result of SRS Owners' misappropriation and self-dealing,

6

Tecspec would have been better off had it not done the Project at all despite over $5,900,000 in HVAC units being transferred by the SRS Owners to SRS Enterprises Inc.

27.   Proven above, the SRS Entities sell Tecspec's HVAC Units, which the SRS Entities receive at a below-cost price. Active interference, and interception, by the SRS Owners and SRS Entities of Tecspec business opportunities makes the SRS Entities competitors by definition.

28.   Further, the SRS Entities' actions also artificially increased the price of Tecspec's products, deprived Tecspec of profits, and hurt Tecspec's overall business.

29.   Stated plainly, Plaintiffs/Counterclaim Defendants have brought this action with unclean hands. It is Plaintiffs/Counterclaim Defendants, not Defendants/Counterclaim Plaintiffs, who are violating the Non-Complete Clause.

**C.    The SRS Owners are Looting Tecspec's Assets**

30.   The SRS Entities are distinct entities from Tecspec, although the SRS Owners have an ownership entity in each.

31.   For years, the SRS Owners have been engaged in a fraudulent scheme to drain Tecspec of its assets solely to benefit the SRS Entities.

32.   Specifically, the SRS Owners purchase Tecspec products at a steep discount—buying Tecspec products through the SRS Entities in order to sell the Tecspec products as the SRS Entities' products at full price to the end-user.

33.   Often, these products are "sold" from Tecspec to the SRS Entities at a loss; meaning at a price significantly less than the manufacturing cost.

34.   This fraudulent conduct has undermined Tecspec's financial integrity and threatens Tecspec's solvency.

35. In total, the diversion of Tecspec units resulted in a loss of over $4,500,000.00. See a true copy of a breakout of diversions of Tecspec units, transferred from Tecspec to SRS, amounting to nearly $15,000,000.00, which constitutes a 30% reduction, annexed as **Exhibit F**.

36. As a result of the SRS Owners' scheme, Tecspec is shouldering the expenses of the SRS Entities, allowing the SRS Entities—and the SRS Owners—to reap substantial profits.

37. This has left Tecspec nearly bankrupt.

38. Moreover, the SRS Owners, in their capacity as members of Tecspec, created fraudulent financial documents to secure lines of credit or other financing from lending institutions and encumbering Tecspec's assets.

39. Then, once the loan proceeds were issued, the SRS Owners immediately mischaracterized the proceeds as profits, which the SRS Owners then used to secure further financing.

40. Ultimately, the SRS Owners illegally diverted the loan proceeds to themselves as their share of Tecspec's "profits."

41. This has left Tecspec burdened with debt from which it derived no benefit.

**D.    Other Improper Conduct by Plaintiffs/Counterclaim Defendants**

   **1.    Breaking and Entering and Misappropriating Trade Secrets**

42. Plaintiffs/Counterclaim Defendants are engaged in additional misconduct beyond the financial malfeasance described above.

43. For example, Plaintiffs/Counterclaim Defendants admit, with photographic evidence, that in October 2024 Plaintiffs/Counterclaim Defendants Robert Senia and Richard Rose entered, searched, and took photographs of the Braya Entities' facility located at 2589 Richmond Terrace, Staten Island, New York (the "Facility"), ECF 1, ¶ 14].

44. However, in doing so, Plaintiffs/Counterclaim Defendants have admitted to the crime of breaking and entering into the Facility.

45. Plaintiffs/Counterclaim Defendants did not have permission to enter the Facility.

46. The Facility is gated, secured, and monitored by security cameras; no individual from the public is permitted to enter without authorization.

47. When the SRS Owners broke in, I called 911 and the SRS Owners were instructed to leave.

48. The Braya Entities take great care to protect their trade secrets, keeping them in a Facility only accessible only to myself and specific authorized employees, agents, or vendors.

49. The Braya Entities took these precautions for a reason. The Braya Entities have undertaken extraordinary efforts and incurred substantial expenses to develop sophisticated machinery, designs, and other intellectual property, enabling them to manufacture HVAC units far more efficiently than their competitors. Thus, the proprietary nature of this material is critical to the competitive advantage of the Braya Entities.

50. The photographs taken by Robert Senia and Richard Rose likely expose these delicate trade secrets. Plaintiffs/Counterclaim Defendants must not be permitted to utilize them.

    **2.  Interference with the Braya Entities Business Relations**

51. Since becoming aware of the Braya Entities, Plaintiffs/Counterclaim Defendants have launched a calculated campaign aimed solely at undermining the Braya Entities' business interests.

52. For example, Plaintiffs/Counterclaim Defendants told a Braya Entities customer that it would have to return HVAC units sold to it because of this lawsuit.

53. Moreover, Plaintiffs/Counterclaim Defendants have engaged in an unlawful campaign to sew doubt about the Braya Entities' abilities to do business, actively interfering with the Braya Entities' business through threats and false statements to other potential and current customers.

54. To be clear, none of what the SRS Owners are saying is true or accurate, which has included accusations that we have stolen the Braya Unit from Tecspec (which is patently false) or engaged in other types of criminal conduct, that Braya and its principals will be subject to legal claims with the patently false promise to potential customers that the customer would somehow be sued or liable for doing business with Braya, and that Braya is actively going out of business. All of the foregoing is patently false, yet used as a tactic to disparage Braya in the market place to dissuade potential clients from doing business with Braya -- this, while the SRS Owners actively misappropriate, steal, self-deal, and compete with Tecspec to Tecspec's clear detriment, as well as to Braya's clear detriment.

55. The foregoing must stop to prevent unfair competition in which the SRS Owners have illegally engaged.

56. In short, this is an emergency, where Braya has an opportunity to conduct certain business in which Plaintiffs now seek to interfere.

57. Despite there being no temporary restraining order, Plaintiffs have engaged in a campaign to stop Braya from conducting business within the market by illegally and falsely threatening Braya's potential customers with litigation, making false allegations that Braya is actually enjoined from doing business, falsely claiming that any products that Braya sells will be "re-claimed" once Braya loses in court, falsely claiming that Braya stole the products and designs from Tecspec that will allow Plaintiffs to sue Braya's customers for damages, and more.

58. The foregoing has had a freezing effect on Braya's ability to operate, such statements being defamatory and false appearing so as to torpedo Braya's business opportunities.

59. **Currently, Braya is in the running for a potential project, which is time and information sensitive.** The sensitivity of the opportunity requires details to remain undisclosed to the public, without being filed on the public docket.

60. For the balance of Defendants' arguments in favor, I refer to my Declaration dated April 2, 2025, titled "SENSITIVE BUSINESS INFORMATION".

**F.     Conclusion**

61. Plaintiffs/Counterclaim Defendants' conduct has left Tecspec at the precipice of bankruptcy.

62. Given the above facts, without immediate intervention from this Court, it is likely that my membership interest in Tecspec will soon become worthless.

63. Accordingly, this Court should issue an order enjoining Defendants/Counterclaim Plaintiffs from (i) unlawfully competing against Tecspec in violation of Tecspec's Operating Agreement; (ii) diverting corporate resources from Tecspec by "selling" Tecspec inventory to the SRS Entities at artificially discounted amounts; (iii) tortiously interfering with the Braya Entities' business opportunities; and (iv) retaining photographs, materials, and any other confidential information that were indisputably stolen from the Braya Entities' facility.

64. This Court should also appoint a receiver to oversee Tecspec during the pendency of this litigation, to ensure that Defendants/Counterclaim Plaintiffs cease siphoning away its assets.

**<u>DECLARATION</u>**

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
MICHAEL DONNOLO

Dated: April 2, 2025