## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER, | Case No. 1:24-cv-08077-JHR |
| Plaintiffs, | |
| v. | |
| MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10, | |
| Defendants. | |
| BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, JOHN MICHAEL LONG, JOSHUA DONNOLO, and MICHAEL DONNOLO, individually and derivatively on behalf of Tecspec LLC, | |
| Counterclaim Plaintiffs, | |
| v. | |
| RALPH SCHLENKER, ROBERT SENIA, RICHARD ROSE, SRS ENTERPRISES INC., SRS ENTERPRISES NJ LLC, HVAC SERVICE ASSOCIATES, TECSPEC LLC, and SRS RESEARCH LLC, | |
| Counterclaim Defendants. | |

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION SEEKING A PRELIMINARY INJUNCTION AND THE APPOINTMENT OF A RECEIVER

ROSENBERG & ESTIS, P.C.
Matthew S Blum
733 Third Avenue
New York, New York 10017

*Attorneys for Defendants/Counterclaim Plaintiffs Michael Donnolo, Joshua Donnolo, John Michael Long, Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

LEGAL ARGUMENT ............................................................................................... 2

I.      DEFENDANTS/COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO A
PRELIMINARY INJUNCTION ..................................................................... 2

        A.    Defendants/Counterclaim Plaintiffs are Likely to Succeed on the Merits .............. 3

               1.    Defendants/Counterclaim Plaintiffs are Likely to Succeed on the
Merits of Their Breach of Contract Claim ................................................... 3

               2.    Defendants/Counterclaim Plaintiffs are Likely to Succeed on the
Merits of Their Defend Trade Secrets Act Claim ....................................... 5

               3.    Defendants/Counterclaim Plaintiffs are Likely to Succeed on the
Merits of Their Tortious Interference Claim ............................................... 6

               4.    Defendants/Counterclaim Plaintiffs M. Donnolo are Likely to
Succeed on the Merits of Their Good Faith and Fair Dealing Claim ......... 7

        B.    Defendants/Counterclaim Plaintiffs Have Suffered and Will Continue to
Suffer Irreparable Harm Absent Injunctive Relief ................................................. 8

        C.    The Balance of the Hardships Overwhelmingly Favors
Defendants/Counterclaim Plaintiffs ....................................................................... 12

II.     A RECEIVER SHOULD BE APPOINTED TO MANAGE TECSPEC PENDING
THE OUTCOME OF THIS LITIGATION ..................................................... 13

        D.    Plaintiffs/Counterclaim Defendants Are Engaged in Fraudulent Conduct ........... 14

        E.    Under the SRS Owners' Stewardship,  Tecspec's Assets are Being
Intentionally Squandered ....................................................................................... 14

        F.    No Adequate Remedy is Available at Law ............................................................. 15

        G.    The Harm that Defendants/Counterclaim Plaintiffs will Suffer by Denying
the Appointment of Receiver is Significantly Greater than the Potential
Injury to Plaintiffs/Counterclaim Defendants ....................................................... 15

H.     Defendants/Counterclaim Plaintiffs are  Extremely Likely to Succeed on the Merits ........................................................................................................... 16

CONCLUSION ................................................................................................................... 16

RE\24801\0001\5873135v4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cyanamid Co. v Elizabeth Arden Sales Corp.*,
   331 F Supp 597 (SDNY 1971).................................................................................6

*Citigroup Global Mkts., Inc. v VCG Special Opportunities Master Fund Ltd.*,
   598 F3d 30 (2d Cir 2010).....................................................................................3

*Don King Prods., Inc. v Douglas*,
   742 F Supp 741 (SDNY 1990).................................................................................6

*Duration Mun. Fund, L.P. v J.P. Morgan Sec. Inc.*,
   2009 WL 2999201 (NY Sup Ct 2009).......................................................................7

*Esbitt v Dutch-Am. Mercantile Corp.*,
   335 F2d 141 (2d Cir 1964)..................................................................................10

*Franklin D. Nastasi Tr. v Bloomberg, L.P.*,
   224 AD3d 804 (2d Dept 2024) ..............................................................................7

*Free Country Ltd v Drennen*,
   235 F Supp 3d 559 (SDNY 2016) ............................................................................5

*Goldhirsh Grp., Inc. v Alpert*,
   107 F3d 105 (2d Cir 1997)...................................................................................6

*Guzik v Albright*,
   2018 WL 4386084 (SDNY 2018)..............................................................................6

*IDG USA, LLC v Schupp*,
   416 F App'x 86 (2d Cir 2011) .............................................................................8, 9

*Islam v Cuomo*,
   475 F Supp 3d 144 (EDNY 2020)............................................................................3

*Janmort Leasing, Inc. v Econo-Car International Inc.*,
   475 F Supp 1282 (EDNY 1979) ..............................................................................8

*John B. Hull, Inc. v Waterbury Petroleum Products, Inc.*,
   588 F2d 24 (2d Cir 1978)....................................................................................8

*Marsh USA Inc, v Karasaki*,
   2008 WL 4778239 (SDNY 2008).............................................................................9

RE\24801\0001\5873135v4

*Medicrea USA, Inc. v K211/1 Spine, Inc.*,
     2018 WL 3407702 (SDNY 2018) ............................................................................9

*Mercer Health & Benefits LLC v DiGregorio*,
     307 F Supp 3d 326 (SDNY 2018) ..........................................................................9

*N. Atl. Instruments Inc. v Haber*,
     188 F3d 38 (2d Cir 1999) .......................................................................................8

*Newport Tire & Rubber Co. v Tire & Battery Corp.*,
     504 F Supp 143 (EDNY 1980) ..........................................................................8, 12

*SEC v Am. Bd. of Trade, Inc.*,
     830 F2d 431 (2d Cir 1987) ....................................................................................10

*Semmes Motor, Inc. v Ford Motor Co.*,
     429 F2d 1197 (2d Cir 1970) ...................................................................................8

*Serdarevic v Centex Homes*,
     LLC, 760 F Supp 2d 322 (SDNY 2010) .................................................................7

*Ticor Ins. Co. v Cohen*,
     173 F3d 63 (2d Cir 1999), 173 F3d (2d Cir 1999) .................................................9

*Varsames v Palazzolo*,
     96 F Supp 2d 361 (SDNY 2000) ......................................................................10, 11

**Statutes**

18 USC § 1839(3) .........................................................................................................5

18 USC § 1839(5) .........................................................................................................5

Defend Trade Secrets Act ............................................................................................5

**Other Authorities**

12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983
     (1999) ....................................................................................................................11

Federal Rules of Civil Procedure Rule 65 ...................................................................1

RE\24801\0001\5873135v4

## PRELIMINARY STATEMENT

Defendants/Counterclaim Plaintiffs Michael Donnolo, individually and derivatively on behalf of Tecspec LLC ("M. Donnolo"), Joshua Donnolo, John Michael Long, Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC and Braya Ventures LLC,[1] respectfully submit this memorandum of law in support of their motion for an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Plaintiffs/Counterclaim Defendants Richard Rose, Robert Senia, Ralph Schlenker,[2] SRS Enterprises Inc., SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC.[3]  This memorandum of law is also submitted in support of Defendants/Counterclaim Plaintiffs' request that a receiver be appointed to oversee Tecspec during the pendency of this litigation.

Tecspec's Operating Agreement includes a non-compete clause that expressly prohibits Tecspec's members from engaging in a competing business located in a county where Tecspec has operated or is currently operating (the "Non-Compete Clause"). The SRS Owners are members of Tecspec and are thus bound by this Non-Compete Clause. Despite this, the SRS Owners formed the SRS Entities, which directly competes with Tecspec and are located in counties where Tecspec conducts business. This blatant violation of the Non-Compete Clause is causing Tecspec—a derivative Counterclaim plaintiff—irreparable harm and warrants immediate and urgent relief.

Furthermore, without an injunction, the SRS Owners will soon drive Tecspec into bankruptcy due to their illicit scheme to siphon away Tecspec's assets. The SRS Owners hold a controlling interest in Tecspec and own the SRS Entities.  For years, the SRS Owners arranged for

---

[1]  Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC are collectively referred to as the "Braya Entitles."  The Braya Entitles, together with M. Donnolo, Joshua Donnolo and John Michael Long are collectively referred to as the "Defendants/Counterclaim Plaintiffs."

[2]  Richard Rose, Robert Senia and Ralph Schlenker are collectively referred to as the "SRS Owners."

[3]  SRS Enterprises Inc., SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC are collectively referred to as the "SRS Entities."  The SRS Entities, together with SRS Owners, are collectively referred to as the "Plaintiffs/Counterclaim Defendants."

Tecspec to "sell" products to the SRS Entities at a fraction of their true value, often for significantly less than the manufacturing cost.  The SRS Entities then resold these products to end-users at full price, allowing the SRS Owners to reap the benefits while passing the losses onto Tecspec.  This misconduct has left Tecspec virtually penniless.

Plaintiffs/Counterclaim Defendants have engaged in further misconduct as well. They[4] illegally broke into the Braya Entities' facility to obtain proprietary trade secrets, interfered with the Braya Entities' prospective business, and falsified business records to secure loans against Tecspec's profits—the proceeds of which they subsequently pocketed.  This Court should not condone Plaintiffs/Counterclaim Defendants' misconduct.  Injunctive relief is warranted.

Finally, given these dire circumstances, the appointment of a receiver is necessary to manage Tecspec pending the outcome of this litigation.  Absent the appointment of a receiver, the SRS Owners will continue to plunder Tecspec.  To ensure the solvency of Tecspec—and to prevent any further abuse by the SRS Owners—a receiver must be appointed.

## STATEMENT OF FACTS

In the interest of brevity, Defendants/Counterclaim Plaintiffs rely on the facts as set forth in the Declaration of Michael Donnolo, dated February ___, 2025 ("Donnolo Decl.") and incorporated by reference herein.

## LEGAL ARGUMENT

### I.     DEFENDANTS/COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

A party seeking a preliminary injunction must show "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for

---

[4]     Specifically, Plaintiffs/Counterclaim Defendants Robert Senia and Richard Rose broke into the Braya Entities' facility.

litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," as well as "irreparable harm." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).  Moreover, where—as here—a party seeks a "mandatory injunction," it 'must show a clear or substantial likelihood of success on the merits.'" *Islam v. Cuomo*, 475 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (citation omitted).  That standard is easily met here.

## A.     Defendants/Counterclaim Plaintiffs are Likely to Succeed on the Merits

### 1.     Defendants/Counterclaim Plaintiffs are Likely to Succeed on the Merits of Their Breach of Contract Claim

The Non-Compete Clause states, in pertinent part, that no member of Tecspec shall:

> directly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation . . . in any other manner whatsoever, carry on or be engaged in, or connected with any business which competes, in whole or in part, with [Tecspec], **which is located in any county in which [Tecspec] is doing or has done business**.

(Exhibit B[5], Section 25) (Emphasis supplied).

In their motion seeking a preliminary injunction, Plaintiffs/Counterclaim Defendants conceded that the Non-Compete Clause is valid and enforceable.  [ECF 11, Point I(B)(2)].  Indeed, the Operating Agreement was drafted by Robert Senia, one of the SRS Owners.  (Donnolo Decl., ¶ 8).  There can be no dispute that by operating the SRS Entities, the SRS Owners are violating the Non-Compete Clause.

SRS Enterprises Inc., which is owned and operated by the SRS Owners, is located in Kings County, New York. (Donnolo Decl., ¶ 19).  Tecspec is also located in Kings County and does substantial business there.  (Donnolo Decl., ¶ 20).

---

[5]    All exhibits referenced herein are the exhibits annexed to the Donnolo Decl.)

SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC—also owned and controlled by the SRS Owners—are located in Monmouth County, New Jersey. (Donnolo Decl., ¶ 21). Tecspec is also active in Monmouth County. (Donnolo Decl., ¶ 22).[6]

Furthermore, there can be no serious question that the SRS Entities directly compete with Tecspec in the HVAC industry. (Donnolo Decl., ¶ 23). Although the SRS Entities hold themselves out as HVAC manufacturers' *representatives*, rather than manufacturers, Plaintiffs/Counterclaim Defendants' Complaint admits that the purchase order for a lucrative HVAC production and installation opportunity at the Two Penn Plaza Building was awarded to SRS Enterprises Inc. [ECF 1, ¶ 7] (Donnolo Decl., ¶ 24). The fact that the SRS Entities were awarded that contract, which it fulfilled with Tecspec products diverted to the SRS Entities at below-cost to Tecspec (at a financial loss), not only proves that SRS Entities competes with Tecspec, but also proves Defendant/Counterclaim Plaintiffs' RICO scheme alleged against Plaintiffs/Counterclaim Defendants.

Indeed, the SRS Entities sell Tecspec's own products, which the SRS Entities receive at a below-cost price at which Tecspec would not otherwise sell products, thereby making the SRS Entities competitors to Tecspec within the HVAC industry. (Donnolo Decl., ¶ 25).

In any event, the Non-Compete Clause bars the SRS Owners from any connection to a business that competes "in whole or in part" with Tecspec. (Exhibit B, Section 25). Thus, even if the SRS Owners merely distributed—rather than manufactured *and* distributed—HVAC units, the SRS Owners would still be violating the Non-Compete Clause due to their involvement with the SRS Entities.

---

[6]    Moreover, all of the SRS Entities are inextricably intertwined. Accordingly, even if Tecspec did not do business in Monmouth County, the SRS Owners' involvement with SRS Enterprises Inc.—which is located in Kings County necessitates that all the SRS Entities be enjoined.

## 2. Defendants/Counterclaim Plaintiffs are Likely to Succeed on the Merits of Their Defend Trade Secrets Act Claim

To prevail on a cause of action under the Defend Trade Secrets Act ("DTSA"), a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret . . ." *Free Country Ltd v. Drennen*, 235 F.Supp.3d 559, 565 (S.D.N.Y. 2016); *see also* 18 U.S.C. § 1839(5). A trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *See* 18 U.S.C. § 1839(3).

The information stolen by Plaintiffs/Counterclaim Defendants constitutes trade secrets under the DTSA. *First*, the Braya Entities, took great care to protect their trade secrets, keeping them in a facility (the "Braya Premises") accessible only to M. Donnolo and specific authorized employees, agents, or vendors. (Donnolo Decl., ¶ 46). The Braya Premises is gated, secured, and monitored by security cameras; no individual from the public is permitted to enter without authorization. (Donnolo Decl., ¶ 44).

*Second*, the economic value of the trade secrets derives largely from the fact that they are not known to the public at large. The Braya Entities have undertaken extraordinary efforts and incurred substantial expenses to develop sophisticated machinery, designs, and other intellectual property, enabling them to manufacture HVAC units far more efficiently than their competitors (Donnolo Decl., ¶ 47). Thus, the proprietary nature of this material is critical to the competitive advantage of the Braya Entities.

Finally, Plaintiffs/Counterclaim Defendants obtained the trade secrets through improper means—by breaking into the Braya Premises. Specifically, in October of 2024, Plaintiffs/Counterclaim Defendants Richard Rose, Robert Senia, and an unidentified third individual broke into the Braya Entities facility and photographed this sensitive, non-public material. These actions that were captured on video. (Donnolo Decl., ¶ 44).

Accordingly, Defendants/Counterclaim Plaintiffs are likely to prevail on their DTSA claim.

### 3. Defendants/Counterclaim Plaintiffs are Likely to Succeed on the Merits of Their Tortious Interference Claim

To prevail on a cause of action sounding in tortious interference with business relation-ship, a party need only demonstrate that: "(1) there is a business relationship between the plaintiff and a Counterclaim; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Guzik v. Albright*, 2018 WL 4386084, at *5 (S.D.N.Y. 2018) (citing *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 [2d Cir. 1997]). Moreover, "[i]n a tortious interference action, a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue. It is enough that the defendant who interfered have '[k]nowledge of the existence of the contract' or business relationship." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 775 (S.D.N.Y. 1990) (internal citation omitted) (quoting *Am. Cyanamid Co. v. Elizabeth Arden Sales Corp.*, 331 F. Supp. 597, 608 [S.D.N.Y. 1971]).

Since becoming aware of the Braya Entities, Plaintiffs/Counterclaim Defendants have launched a calculated campaign aimed solely at undermining the Braya Entities' business interests. For example, Plaintiffs/Counterclaim Defendants told a Braya Entities' customer that it would

RE\24801\0001\5873135v4

have to return HVAC units sold to it because of this lawsuit.  (Donnolo Decl., ¶ 50).  Moreover, Plaintiffs/Counterclaim Defendants have engaged in an unlawful campaign to sew doubt about the Braya Entities' abilities to do business, actively interfering with Braya's business through threats and false statements.  (Donnolo Decl., ¶ 51).  This is textbook interference with a contract and should not be condoned by this Court.  *See e.g. Franklin D. Nastasi Tr. v. Bloomberg, L.P.*, 224 A.D.3d 804, 809 (2d Dept 2024) (sustaining tortious interference with business relations claim when plaintiff alleged defendants "intentionally interfered with [plaintiff's] business relationship through improper and illegal means, including threats and bribes").

### 4.  Defendants/Counterclaim Plaintiffs M. Donnolo are Likely to Succeed on the Merits of Their Good Faith and Fair Dealing Claim

The covenant of good faith and fair dealing "is implicit in every contractual arrangement. . ." *Serdarevic v. Centex Homes*, LLC, 760 F. Supp. 2d 322, 333 (S.D.N.Y. 2010) (citation omitted).  New York imposes the implied duty of good faith and fair dealing such that a party may be in breach of the duty even where it has abided by the strict terms of the contract.  *See Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.*, 2009 WL 2999201 at *6 (N.Y. Sup. Ct.2009) ("[A] party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to ... deprive the other party of the fruit of its bargain.").

Here, the SRS Owners agreed to the provisions of Tecspec's Operating Agreement. (Donnolo Decl., ¶¶ 10-11).  However, they have deprived M. Donnolo of the benefits of that agreement by engaging in an illicit scheme to siphon away Tecspec's profits for themselves.

Specifically, the SRS Owners—who also maintain a controlling interest in Tecspec—used the SRS Entities to divert business opportunities away from Tecspec, and further use Tecspec to shoulder the expenses of SRS through the misappropriation of Tecspec resources and assets.

(Donnolo Decl., ¶¶ 29-32).  The SRS Owners accomplished this by arranging for the SRS Entities to purchase Tecspec products at a discount and then sell the Tecspec products at full price to the end-user. (Donnolo Decl., ¶ 30).  Often, these products would be "sold" from Tecspec to the SRS Entities at loss; meaning at a price significantly less than the manufacturing cost.  (Donnolo Decl., ¶ 31).  In total, the diversion of Tecspec units resulted in a loss of over $4,500,000.00.  (Donnolo Decl., ¶ 33; Exhibit F).  This has left Tecspec nearly bankrupt.  (Donnolo Decl., ¶ 35).

### B.    Defendants/Counterclaim Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm Absent Injunctive Relief

"The showing of irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction. . . " *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983).  To establish irreparable harm, a party seeking preliminary injunctive relief must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation." *N.Y. Pathological & X–Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir.1975).

As a threshold matter, there can no dispute that the harm facing Defendants/Counterclaim Plaintiffs is continuing.  Plaintiffs/Counterclaim Defendants' looting of the Tecspec is ongoing, as is their effort to interfere with the Braya Entities' business relationships.  The SRS Owners have signaled they have no intention of complying with the Non-Compete Clause.  And the Braya Entities' proprietary information remains at risk absent an injunction.   In short, Plaintiffs/Counterclaim Defendants' misconduct will continue unchecked unless they are restrained.

Moreover, it is well-settled that "an act that threatens an ongoing business with destruction causes that business irreparable injury."  *Newport Tire & Rubber Co. v. Tire & Battery Corp.*, 504 F. Supp. 143, 149 (E.D.N.Y. 1980) (citing *John B. Hull, Inc. v. Waterbury Petroleum Products,*

*Inc.*, 588 F.2d 24 [2d Cir. 1978]; *Semmes Motor, Inc. v. Ford Motor Co.*, 429 F.2d 1197 [2d Cir. 1970]; *Janmort Leasing, Inc. v. Econo-Car International Inc.*, 475 F.Supp. 1282 [E.D.N.Y.1979]). As discussed, the SRS Owners' flagrant looting of Tecspec has severely hampered the company's ability to operate. Without immediate intervention from this Court, it is likely that M. Donnolo's membership interest in Tecspec will soon become worthless. (Donnolo Decl., ¶ 53). This clearly constitutes irreparable harm.

Further, the SRS Owners expressly agreed in the Operating Agreement that a breach of the Non-Compete Clause constitutes irreparable harm and entitles M. Donnolo to injunctive relief. (Exhibit B, Section 27.4). Such provisions support a finding of irreparable harm. *See, e.g., N. Atl. Instruments Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (holding that a former employee's acknowledgment in his agreement that a breach would cause "irreparable injury" supported irreparable harm); *Ticor Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999), 173 F.3d at 69 (2d Cir. 1999) (contractual provision "conced[ing] that in the event of…breach of the post-employment competition provision," employer shall be entitled to injunctive relief "might arguably be viewed as an admission" of irreparable harm).

Finally, the Braya Entities are also suffering irreparable harm due to the Plaintiffs/Counterclaim Defendants' ongoing interference with their business relationships. The "loss of client relationships and customer goodwill" exemplifies "irreparable harm." *See Medicrea USA, Inc. v. K2M/1 Spine, Inc*., 2018 WL 3407702, at *10 (S.D.N.Y. 2018) (quoting *Marsh USA Inc, v. Karasaki*, 2008 WL 4778239, at *14 (S.D.N.Y. 2008)); *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018). Such injuries, by their very nature, "cannot be adequately remedied with money damages." *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011) .

Here, the Donnolo Declaration dated April 2, 2025, and the Blum Declaration dated April 2, 2025 identify unreasonable, unlawful methods by which the Plaintiffs have engaged in interference with the Braya Entities by way of defamation Braya and disseminating false statements regarding same. Specifically, the Plaintiffs have engaged in a malicious campaign to malign the Counterclaim Plaintiffs in the marketplace by dissemination of false statements and narratives, statements made to their prospective clients, and is designed to deprive the Braya Entities of the business opportunities to which they are rightly entitled.

It is well settled law,

> Under New York law, defamation is defined as "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him ..." *Dillon v. City of New York,* 261 A.D.2d 34, 37–38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (citation and internal quotations omitted); *see also Albert v. Loksen,* 239 F.3d 256, 265 n. 6 (2d Cir.2001) ("Modern courts in New York still use variations on arcane definitions of defamatory: that which exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induces an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly intercourse in society.") (citations and internal quotation marks omitted). The elements of defamation are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Dillon,* 261 A.D.2d at 38, 704 N.Y.S.2d at 5; *accord Peters v. Baldwin Union Free Sch. Dist.,* 320 F.3d 164, 169 (2d Cir.2003).

*Pure Power Boot Camp, Inc. v Warrior Fitness Boot Camp, LLC,* 813 F Supp 2d 489, 549 [SDNY 2011].

The <u>Pure Power Boot Camp</u> Court continues,

> Under New York law, "only statements alleging facts can properly be the subject of a defamation action." *600 West 115th St. Corp. v. Von Gutfeld,* 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825, 603 N.E.2d 930 (1992); *see also Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 178 (2d Cir.2000) ("[T]he New York Constitution provides for absolute protection of opinions."); *cf. Steinhilber v. Alphonse,* 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 501 N.E.2d 550 (1986) (recognizing a distinction between pure opinion, which "does not imply that it is based upon undisclosed facts," and mixed opinion, which "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it"). In

addition, a plaintiff must allege the time, place, and manner of the false statement and identify to whom the false statement was made. *See Vardi v. Mut. Life Ins. Co. of New York,* 136 A.D.2d 453, 455, 523 N.Y.S.2d 95 (1st Dep't 1988).

Special harm means economic or pecuniary loss. *See Liberman v. Gelstein,* 80 N.Y.2d 429, 434–35, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992); *see also Albert,* 239 F.3d at 271; *Gallo v. Alitalia–Linee Aeree Italiane–Societa,* 585 F.Supp.2d 520, 548 (S.D.N.Y.2008). Special harm "must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation." 🚩 *Matherson v. Marchello,* 100 A.D.2d 233, 235, 473 N.Y.S.2d 998 (2d Dep't 1984).

Defamation *per se* is an exception to the requirement that a plaintiff must prove special harm. Defamation *per se* consists of any one of the following: (1) a statement charging an individual with a serious crime; (2) a statement that tends to injure another in his or her trade, business, or profession; (3) a statement that claims an individual has a "loathsome disease;" or (4) a statement "imputing unchastity to a woman." *Liberman,* 80 N.Y.2d at 435, 590 N.Y.S.2d 857, 605 N.E.2d 344; *accord Albert,* 239 F.3d at 271.

To find that a statement qualifies as one that tends to injure another in his or her "trade, business, or profession," the statement "must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities." *Liberman,* 80 N.Y.2d at 436, 590 N.Y.S.2d 857, 605 N.E.2d 344. The allegedly defamatory statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is "of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *Id.*; *see also Aronson v. Wiersma,* 65 N.Y.2d 592, 593, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985) (holding statements regarding plaintiff's unsatisfactory job performance *not* defamatory *per se*); *Van–Go Transp. Co. Inc. v. New York City Bd. of Educ.,* 971 F.Supp. 90, 98 (E.D.N.Y.1997) ("Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties."). "The statement must be more than a remark on the business's ability to make a profit or remain in business in a particular field or geographical area." *Kforce, Inc. v. Alden Personnel, Inc.,* 288 F.Supp.2d 513, 517 (S.D.N.Y.2003).

Id, at 549-551.

Here, there is no question that Plaintiffs' deliberate misrepresentations about Braya's ability to fulfill contracts, false statements concerning this litigation or the status or authority of Braya to enter into contracts, and threats against Braya customers, and potential customers,

collectively constitute unlawful, defamatory statements, which would result in irreparable harm if permitted to continue.

**C.    The Balance of the Hardships Overwhelmingly
Favors Defendants/Counterclaim Plaintiffs**

As discussed, Defendant/Counterclaim Plaintiff M. Donnolo risks irreparable harm if the SRS Owners are allowed to continue plundering Tecspec's assets, which will leave his membership interest in Tecspec—in which he invested countless hours of sweat equity—valueless. The Braya Entities also risk harm from the loss of client relationships and customer goodwill due to Plaintiffs/Counterclaim Defendants' interference with their business relationships.  Finally, the Defendants/Counterclaim Plaintiffs each risk harm due to Plaintiffs/Counterclaim Defendants' theft of confidential information.    Should that information be released to the public, Defendants/Counterclaim Plaintiffs' competitive advantage would be lost.

Plaintiffs/Counterclaim Defendants, by contrast, will not be unduly burdened by adhering to the Non-Compete Clause they agreed to in the Operating Agreement.  Nor can be it said that Plaintiffs/Counterclaim Defendants would suffer any harm from an injunction barring them from interfering with the Braya Entities' business relationships.  The injunction would also preserve the status quo by preventing Plaintiffs/Counterclaim Defendants from benefiting from the use of the Braya Entities' confidential information.

Accordingly, Defendants/Third-Plaintiffs' motion should be granted, and this Court should issue an Order enjoining Plaintiffs/Counterclaim Defendants from (i) unlawfully competing against Tecspec in violation of Tecspec's Operating Agreement; (ii) diverting corporate resources from Tecspec by "selling" Tecspec inventory to the SRS Entities at artificially discounted amounts; (iii) tortiously interfering with the Braya Entities' business opportunities; and (iv)

RE\24801\0001\5873135v4

retaining photographs, materials, and any other confidential information that were indisputably stolen from the Braya Entities' facility.

## II.    A RECEIVER SHOULD BE APPOINTED TO MANAGE TECSPEC PENDING THE OUTCOME OF THIS LITIGATION

The appointment of a receiver is governed by federal common law. *See Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). Courts have the power to appoint a receiver "where necessary to prevent the dissipation of a defendant's assets pending further action by the court." *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 426 (2d Cir. 1987) (affirming interim appointment of a receiver to conserve estate assets in light of defendants' deteriorating financial condition). "A primary purpose of appointing a receiver is to conserve the existing estate." *Esbitt v Dutch-Am. Mercantile Corp.*, 335 F. 2d 141 (2d Cir. 1964) (approving appointment). The court has broad equitable powers to direct the appointment of a receiver to marshal the assets of a defendant and protect those who have been defrauded from further losses. *Id.*

The *Varsames* court set the following factors to be examined when considering the need for a receivership:

> [F]raudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Varsames*, 96 F. Supp. 2d at 365 (quoting 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure § 2983 [1999]).*

As set forth below, all of these factors strongly militate toward the appointment of a receiver to manage the assets of Tecspec pending the outcome of this litigation.

RE\24801\0001\5873135v4

### D.     Plaintiffs/Counterclaim Defendants Are Engaged in Fraudulent Conduct

As discussed above, the SRS Owners have been diverting funds from Tecspec to the SRS Entities for years by "purchasing" Tecspec products at steep—and unprofitable—discounts and then selling those products to end users at a markup.  (Donnolo Decl., ¶ 30).  This fraudulent conduct has undermined Tecspec's financial integrity and threatens Tecspec's solvency. (Donnolo Decl., ¶ 32).

The SRS Owners have engaged in additional fraudulent conduct as well. For example, the SRS Owners, in their capacity as members of Tecspec, created fraudulent financial documents to secure lines of credit or other financing from lending institutions. (Donnolo Decl., ¶ 36).  Once the loan proceeds were issued, they were immediately recharacterized as profits rather than loan proceeds, which the SRS Owners then used to secure further financing.  (Donnolo Decl., ¶ 37).  Ultimately, the SRS Owners illegally diverted the loan proceeds to themselves as their share of "profits." (Donnolo Decl., ¶ 38).  This has left Tecspec burdened with debt from which it derived no benefit.  (Donnolo Decl., ¶ 39).

### E.     Under the SRS Owners' Stewardship,
### Tecspec's Assets are Being Intentionally Squandered

The SRS Owners are plundering Tecspec's inventory to benefit the SRS Entities, which are direct competitors of Tecspec.  (Donnolo Decl., ¶ 17).  As a result of the SRS Owners' scheme, Tecspec is shouldering the expenses of the SRS Entities by "selling" its inventory to them at reduced prices, allowing the SRS Entities—and the SRS Owners—to reap substantial profits. (Donnolo Decl., ¶¶ 29-33).  This has cost Tecspec at least $4,500,000.00.  (Donnolo Decl., ¶ 33).

Moreover, the SRS Owners are benefitting from fraudulent financing secured by non-existent Tecspec "profits," further diminishing the company's prospects.  (Donnolo Decl., ¶ 38).

The SRS Owners are saddling Tecspec with debt, stealing its assets, and leaving it devoid of value. Clearly, Tecspec's value is being squandered under the governance of the SRS Owners.

### F.    No Adequate Remedy is Available at Law

As set forth, *supra* at Point (I)(B), conduct that threatens the viability of a business cannot, by its very nature, be remedied at law.  See e.g. *Newport Tire & Rubber Co.,* 504 F. Supp. at 149. Here, the SRS Owners' ongoing fraud has created a "death spiral" for Tecspec.  The SRS Owners have brazenly looted Tecspec's inventory for the benefit of the SRS Entities. (Donnolo Decl., ¶¶ 30-39).  And the SRS Owners have engaged in an endless cycle of borrowing funds that the SRS Owners have no intention of sharing with the company.  (Donnolo Decl., ¶ 38).  This has left Tecspec at the precipice of bankruptcy. (Donnolo Decl., ¶ 35).    Accordingly, Plaintiff/Counterclaim Defendant M. Donnolo, both individually (as a member of Tecspec) and acting derivatively on behalf of Tecspec, undeniably faces irreparable harm without the appointment of a receiver.

### G.    The Harm that Defendants/Counterclaim Plaintiffs will Suffer by Denying the Appointment of Receiver is Significantly Greater than the Potential Injury to Plaintiffs/Counterclaim Defendants

The next factor to consider is the balancing of the harms, a factor that overwhelmingly favors Defendants/Counterclaim Plaintiffs. The SRS Owners are currently using their control over Tecspec to wrongfully appropriate its assets, to the detriment of both Tecspec and M. Donnolo. Tecspec's descent into bankruptcy can only be remedied if an outside party takes control of the company.   And Plaintiffs/Counterclaim Defendants cannot argue that the appointment of a receiver—who will act in Tecspec's best interest and put an end to the SRS Owners' fraudulent conduct—will somehow harm them, except to the extent that they would lose the opportunity to exploit Tecspec for their own gain.

Moreover, even if Plaintiffs/Counterclaim Defendants could theoretically suffer harm from the appointment of a receiver (and they cannot), the potential prejudice to Defendants/Counterclaim Plaintiffs if a receiver is not appointed is far greater. Specifically, M. Donnolo stands to lose his valuable interest in Tecspec—a company in which he has invested substantial time and effort—leaving him with nothing.

### H.    Defendants/Counterclaim Plaintiffs are Extremely Likely to Succeed on the Merits

As discussed in Point I(A), Defendants/Counterclaim Plaintiffs are highly likely to succeed on the merits. This is a clear case of corporate fraud and abuse. Plaintiffs/Counterclaim Defendants' misconduct is indisputable and demands relief.

Additionally, Plaintiffs/Counterclaim Defendants have violated the Non-Compete Clause by operating the SRS Entities in direct competition with Tecspec and have intentionally interfered with the business relationships of the Braya Entities by maliciously slandering Braya's reputation. Defendants/Counterclaim Plaintiffs will easily prevail at trial.

For all of the foregoing reasons, the appointment of a receiver to manage the assets of Tecspec is warranted.

## CONCLUSION

Defendants/Counterclaim Plaintiffs respectfully request that the Court grant the instant motion.

Dated:  New York, New York
       April 2, 2025

                                        **ROSENBERG & ESTIS, P.C.**


                                        _____
                                        Matthew S. Blum, Esq
                                        733 Third Avenue, 14th Floor
                                        New York, New York 10017
                                        MBlum@Rosenbergestis.com
                                        *Attorneys                  for
                                        Defendant/Counterclaim Plaintiffs*

- 17 -