UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC et al., | |
| Plaintiffs, | |
| -v.- | 24 Civ. 8077 (JHR) |
| MICHAEL DONNOLO et al., | OPINION & ORDER |
| Defendants. | |

JENNIFER H. REARDEN, District Judge:

Plaintiffs Tecspec LLC ("Tecspec"), Richard Rose, Robert Senia, and Ralph Schlenker bring this action alleging misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, as well as breach of contract and fiduciary duties, corporate waste and mismanagement, unjust enrichment, conversion, tortious interference, and unlawful competition under New York law. ECF No. 1 (Complaint). Plaintiffs seek a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) against Defendants Michael Donnolo, Joshua Donnolo, and John Michael Long, along with Braya Systems LLC, Braya Machine Company LLC, Braya Concepts LLC, and Braya Ventures LLC (collectively, "Braya"). ECF No. 10. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## I.    BACKGROUND[1]

---

[1] The facts herein are drawn from the parties' declarations filed in connection with Plaintiffs' preliminary injunction motion. *See Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." (citation omitted)). Neither party requested an evidentiary hearing. *See Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("A party may, of course, waive its right to an evidentiary hearing . . ."). In any event, the Court "concluded that 'an evidentiary hearing [wa]s not required' because 'the relevant facts are not in dispute.'" *Team Rubicon Glob., Ltd. v. Team Rubicon, Inc.*, No. 20 Civ. 2537 (LTS) (KNF), 2020 WL 2539117, at *1 (S.D.N.Y. May 19, 2020) (quoting *Charette*, 159 F.3d at 755) (cleaned up).

On February 24, 2017, Christina Senia and Michael Donnolo formed Tecspec, a limited liability company that manufactures HVAC units.  *See* ECF No. 26-1 (First Donnolo Decl.) ¶¶ 6-7; ECF No. 26-5 (Operating Agreement) at 4; ECF No. 38 at 5:6.  On January 1, 2018, Christina Senia assigned her 75% interest, in equal shares of 25% each, to Robert Senia, Richard Rose, and Ralph Schlenker.  *See* First Donnolo Decl. ¶ 9.  Michael Donnolo maintained his 25% share of the company.  *Id.*

The Tecspec Operating Agreement described its members' obligations.  In a section entitled "Covenant Not to Compete," each member agreed that:

> [W]hile he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation, limited liability company, association or syndicate, or in any other manner whatsoever, carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with [Tecspec], which is located in any county in which [Tecspec] is doing or has done business.

Operating Agreement § 25.1.  The Tecspec members also agreed that, "[e]xcept as otherwise provided in Section 25 hereof, any Member may engage in other business ventures of every nature, including, without limitation by specification, the ownership of another business similar to that operated by this Company."  *Id.* § 19.

In 2023, Michael Donnolo formed Braya, which, like Tecspec, manufactures and sells HVAC units.  Complaint ¶ 69; First Donnolo Decl. ¶ 19; ECF No. 26-4 (identifying the date of Braya's initial New York Department of State filing as May 9, 2023).  Donnolo recruited Tecspec employees Joshua Donnolo and John Michael Long to work for Braya.  Complaint ¶ 68.  According to Plaintiffs, Braya has "directly interfered and competed with Tecspec LLC on two jobs: (i) the 730 Third Avenue Teachers' Insurance Building Project; and (ii) the 200 Park Avenue Building."  ECF No. 73 at 11 (citing ECF No. 50 (Anthes Decl.) ¶¶ 3-13).

On October 24, 2024, Plaintiffs filed this action and moved for a temporary restraining order and preliminary injunction.  ECF Nos. 1, 10.  On November 5, 2024, the Court ordered Defendants to show cause why a preliminary injunction should not issue and directed the parties to propose a briefing schedule.  ECF No. 31.  Because the parties failed to do so, *see* ECF Nos. 41, 44, the Court set deadlines and scheduled a preliminary injunction hearing.  ECF No. 44. Less than an hour before the hearing on December 10, 2024, Defendants moved to strike Plaintiffs' submissions filed on December 6, 2024.  ECF No. 54.  The Court heard argument on that issue, adjourned the preliminary injunction hearing, and ordered supplemental briefing. December 10, 2024 Minute Entry.  On January 13, 2025, the Court heard oral argument on Plaintiffs' motion for a preliminary injunction.  *See* ECF No. 70.  On January 30, 2025, Plaintiffs filed a letter expanding their requested mandatory injunction to include production of "the information they need to make [Tecspec] operational, as well as return to Plaintiffs the items belonging to Tecspec LLC and which are currently and unlawfully in Defendants' possession." ECF No. 92.[2]

## II.    LEGAL STANDARDS

"A preliminary injunction is an 'extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 460-61 (S.D.N.Y. 2017) (quoting *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. App'x 31, 33 (2d Cir. 2015)).  The Second Circuit "ha[s] recognized two different standards governing preliminary injunctions."  *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 105 (2d Cir. 2024).

---

[2] Defendants, as Counterclaim Plaintiffs, filed a separate motion for a preliminary injunction against Counterclaim Defendants, *see* ECF No. 120, for which the parties will complete briefing on June 10, 2025, *see* ECF No. 143.  This Opinion & Order does not reach that motion.

The first—applicable to prohibitory injunctions—"simply bar[s] a party from taking action that disturbs the status quo, defined as 'the last peaceable uncontested status preceding the present controversy.'" *Id.* (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 121 (2d Cir. 2014)).  It requires the "party seeking a preliminary injunction [to] show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *TomGal LLC v. Castano*, No. 22 Civ. 9516 (JGK), 2022 WL 17822717, at *3 (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

"The second, and more demanding, standard" applies to "mandatory injunctions, which 'alter the status quo by commanding some positive act,' as well as to injunctions that '(1) would provide the plaintiff with all the relief that is sought and (2) could not be undone by a judgment favorable to defendants on the merits at trial.'" *JLM Couture*, 91 F.4th at 105 (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 89-90 (2d Cir. 2006)) (internal citations omitted).  For a mandatory injunction, the movant must show, "'in addition to demonstrating irreparable harm,' . . . that it has 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *Mastrovincenzo*, 435 F.3d at 89).

### III.    DISCUSSION

"[A]n injunction must [] be 'narrowly tailored to fit specific legal violations. . .'" *Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 51 (2d Cir. 2017), *as amended* (Oct. 4, 2017) (quoting *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999)).  Plaintiffs have not connected each requested restraint or directive to a specific legal theory; they have left that to the Court.  For simplicity, the Court divides Plaintiffs' requested relief into four categories:

(1) Restraints on Defendant Michael Donnolo's ability to compete with Tecspec by
enjoining him from:

    a. "[M]anaging, operating, joining, controlling, being employed by or with, or
       participating in any manner with" Braya;

    b. "[M]anaging, operating, joining, controlling, being employed by or with, or
       participating in any manner with any business entity that manufactures HVAC
       units and services clients in any county in which Tecspec LLC is doing
       business"; and

    c. "[B]idding on any contracts concerning the manufacturing of HVAC units for
       any projects located in any county in which Tecspec LLC is doing business,"
       Proposed Preliminary Injunction at 2.[3]

(2) Restraints on Defendants Joshua Donnolo and John Michael Long's ability to
compete with Tecspec by enjoining them from "managing, operating, joining,
controlling, being employed by or with, or participating in any manner with [Braya]
or any other HVAC manufacturer that operates in any county that Tecspec LLC does
business," *id.* at 3;

(3) Restraints on Defendants' possession and use of Tecspec trade secrets by enjoining
them from "possessing, using, disclosing, or disseminating Tecspec LLC's
confidential information and trade secrets," *id.* at 2-4; and

---

[3] In addition, the proposed preliminary injunction limits Michael Donnolo's ability to compete
by enjoining Braya from "bidding on any contracts concerning the manufacturing of HVAC
units for any projects located in any county where Tecspec LLC is doing business, including but
not limited to, New York County"—the same geographic range covered by Michael Donnolo's
Covenant Not to Compete in Section 25.1 of the Operating Agreement. *Id.* at 4.

(4) Directives to Defendants to disclose information about Tecspec's operations to Plaintiffs and return physical property, *see* ECF No. 10 at 2-4 (seeking mandatory injunction for return of Tecspec operational information and property); Proposed Preliminary Injunction at 4 (reserving Plaintiffs' right to seek mandatory injunction); ECF No. 92 (requesting "that this Court order Defendants to provide Plaintiffs with the information they need to make [Tecspec] operational, as well as return to Plaintiffs the items belonging to Tecspec").

The Court considers each category in turn.

**1.    Defendant Michael Donnolo Is Restrained from Conducting Business in Certain Counties.**

Plaintiffs seek to enjoin Michael Donnolo from (1) "bidding on any contracts concerning the manufacturing of HVAC units for any projects located in any county in which Tecspec LLC is doing business, including but not limited to New York County"; (2) "directly or indirectly, managing, operating, joining, controlling, being employed by or with, or participating in any manner with any business entity that manufactures HVAC units and services clients in any county in which Tecspec LLC is doing business, including but not limited to New York County"; and (3) "directly or indirectly, managing, operating, joining, controlling, being employed by or with, or participating in any manner with Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC."  Proposed Preliminary Injunction at 2.  They also seek to enjoin Braya from "bidding on any contracts concerning the manufacturing of HVAC units for any projects" in the same region where Michael Donnolo agreed not to compete with Tecspec: "any county where Tecspec LLC is doing business, including but not limited to, New York County."  *Id.* at 4.  "[T]he Court concludes that [Plaintiffs] are entitled to a

preliminary injunction, albeit a [] narrower one than they seek." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 85 (S.D.N.Y. 2021).

**A.  Plaintiffs Are Likely to Succeed on the Breach of Contract Claim.**

"Under New York law, a breach of contract claim requires proof of '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 428-29 (S.D.N.Y. 2010) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994)).  "[A] written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Terwilliger v. Terwilliger et al.*, 206 F.3d 240, 245 (2d Cir. 2000) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)).  "That intent is derived from the plain meaning of the language employed in the agreement[], when the agreement[] [is] read as a whole." *In re Lehman Bros. Inc.*, 478 B.R. 570, 585–86 (S.D.N.Y. 2012) (internal citations omitted).  "The interpretation of a contract is a question of law for the court unless the contract is ambiguous . . . .'" *Broker Genius, Inc. v. Volpone*, 313 F. Supp. 3d 484, 500 (S.D.N.Y. 2018) (quoting *Random House, Inc. v. Rosetta Books LLC*, 150 F.Supp.2d 613, 618 (S.D.N.Y. 2001) (finding contract unambiguous in deciding motion for preliminary injunction)).  "Here, the parties have not suggested that" the covenant not to compete (the "Noncompete Agreement") in Section 25.1 of the Tecspec Operating Agreement is "ambiguous," nor have they "directed the Court to any extrinsic evidence of the contract's meaning." *Broker Genius*, 313 F. Supp. 3d at 500.  "The Court therefore follows the parties' lead, comfortable that the relevant language of the [Noncompete Agreement] is sufficiently 'unequivocal' 'so as to give effect to the intention of the parties.'" *Id.* (quoting *Terwilliger*, 206 F.3d at 245).

The parties disagree about the meaning of the term "business" in the Noncompete

Agreement.  As previously noted, the Noncompete Agreement provides:

> [W]hile he is a Member of the Company, and for a four (4) year period after the
> Member transfers his entire Interest in the Company, he will not directly or
> indirectly, individually or in conjunction with any person or persons, firm,
> partnership, corporation, limited liability company, association or syndicate, or in
> any other manner whatsoever, carry on or be engaged in, or connected with or
> interested in any business which competes, in whole or in part, with [Tecspec],
> which is located in any county in which [Tecspec] is doing or has done business.

Operating Agreement § 25.1.  Plaintiffs contend that "business" in this context "refer[s] to the

action of doing business."  ECF No. 49 (Reply) at 6.  Specifically, they argue that "Section 25.1

clearly provides" that, "for a span of four years after M. Donnolo is no longer a member," "M.

Donnolo cannot perform any jobs or work on any projects in counties where Tecspec is

*performing any jobs or working on any projects*, including New York County[.]"  Reply at 6

(emphasis added).  In contrast, implying that the Noncompete Agreement refers to a business

entity or enterprise, Defendants maintain that Michael Donnolo did not breach the Noncompete

Agreement given that "[t]he Braya Entities are *located in* Richmond County," ECF No. 26

(Opp.) at 10 (emphasis added), and "Tecspec has <u>never</u> conducted business in Richmond

County," *id.* (emphasis in original).  These different interpretations lead to divergent views about

where Michael Donnolo may "carry on or be engaged in . . . business": either he is barred from

conducting business in *all* counties in which Tecspec has done business, as Plaintiffs assert, or,

consistent with Defendants' position, he is only barred from working with a business entity that

is headquartered in *one* of those counties.

Plaintiffs make three arguments in support of their interpretation.  First, they argue that

"one cannot 'carry on' a business entity—rather, one carries on a job or project."  Reply at 6.

Second, they contend that "the term 'business' is used later on in Section 25.1" to cover counties

where Tecspec "*is doing or has done* business,'" suggesting that "business" carries that same

meaning in the contested context. *Id.* Third, they maintain that the legal definition of "doing business" for purposes of analyzing personal jurisdiction, where New York courts define "'doing business' and/or 'carry[ing] on business'" to mean that "the corporation must be engaged in a regular and continuous course of conduct in the State," should inform interpretation of the term here. *Id.* Defendants, on the other hand, "have not favored the Court with any view, argument, or authority," beyond conclusory assertions, "on how the Court should interpret the contract in this breach of contract case[.]" *Broker Genius*, 313 F. Supp. 3d at 500 (noting that the parties had relied on a single "definition from the Merriam–Webster Dictionary" to interpret a contested term). The Court nevertheless has carefully considered Defendants' arguments.

The bargain struck by the parties refers to "business" in the sense of "dealings or transactions especially of an economic nature." *Business*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/business. "[T]he contract 'must be enforced according to the plain meaning of its terms.'" *Lehman Bros.*, 478 B.R. at 586 (S.D.N.Y. 2012) (quoting *Lockheed Martin Corp.*, 639 F.3d at 690). Although "business" can, at times, refer to "a commercial or sometimes an industrial enterprise," *Business*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/business, the "relevant context" of the language in the Noncompete Agreement clarifies the term's plain meaning. *ABCNY, Inc. v. Axis Surplus Ins. Co.*, 738 F. Supp. 3d 418, 423 (S.D.N.Y. 2024). Plaintiff aptly recognizes that the phrase "carry on . . . any business" imbues "business" with a transaction-based connotation. Reply at 6.

This interpretation is "supported further by the principle of contract construction requiring a presumption of consistent usage (unless otherwise indicated) of words used in the same paragraph." *Lehman Bros.*, 478 B.R. at 589. The Noncompete Agreement refers to "business" as something that an entity "is doing or has done." Operating Agreement § 25.1. In contrast, it describes *entities* with which an individual could "carry on or be engaged in . . . any

business" as "firm[s], partnership[s], corporation[s], limited liability company[ies], association[s] or syndicate[s]." *Id.* The Court therefore adopts Plaintiffs' interpretation of the Noncompete Agreement.

Consistent with this interpretation, Michael Donnolo agreed not to "carry on or be engaged in[] or connected with or interested in" any business dealings or transactions "which compete[]" with Tecspec and are "located in a county in which [Tecspec] is doing or has done business."[4] Operating Agreement § 25.1. Tecspec has conducted business in New York County. ECF No. 38 at 3:17-18. Braya has sold HVAC units to customers in New York County, including potential Tecspec customers. *See* ECF No. 49-1 (Anthes Decl.) ¶¶ 5-7, 12-13. The Court therefore concludes that Braya has competed with Tecspec "in a county in which [Tecspec] . . . has done business." Operating Agreement § 25.1. Plaintiffs are likely to succeed in showing that Michael Donnolo breached the Noncompete Agreement by "bidding on [] contracts concerning the manufacturing of HVAC units for [] projects", ECF No. 74 (Proposed Preliminary Injunction) at 2—and more broadly by conducting business activities—in New York County.

---

[4] Defendants have not argued that the Noncompete Agreement is unenforceable. The Court nevertheless concludes that it is "reasonable in time and geographic area." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 102 (S.D.N.Y. 2021) (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)); *see Cardwell v. Thermo Fischer Sci.*, No. 09 Civ. 7809 (DAB), 2010 WL 3825711, at *7 (S.D.N.Y. Sept. 23, 2010) ("New York Courts have held restrictions of up to five years to be reasonable depending on the circumstances."); *Locke v. Tom James Co.*, No. 11 Civ. 2961 (GBD), 2013 WL 1340841, at *9 (S.D.N.Y. Mar. 25, 2013) ("New York courts have upheld geographical restrictions corresponding with an employer's direct area of business"); *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195 (JGK), 2008 WL 4778239, at *16 (S.D.N.Y. Oct. 31, 2008) ("[I]t is now clear that under New York law," a restrictive covenant may safeguard "a legitimate interest in protecting client relationships developed by an employee at the employer's expense.") (quoting *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 534 (S.D.N.Y. 2004)).

Plaintiffs do not and cannot show, however, that Michael Donnolo breached the Noncompete Agreement simply by "managing, operating, joining, controlling, being employed by or with, or participating in any manner with any business entity that manufactures HVAC units and services clients in any county in which Tecspec LLC is doing business," including the Braya entities. *Id.* Plaintiffs successfully argue that the Noncompete Agreement bars Michael Donnolo from engaging in certain business conduct—not from running or being associated with particular business entities. Indeed, the Operating Agreement provides that, "[e]xcept as otherwise provided in [the Noncompete Agreement], any Member may engage in other business ventures of every nature, including, without limitation by specification, the ownership of another business similar to that operated by this Company."[5] Operating Agreement § 19. Thus, the Operating Agreement expressly permits Michael Donnolo to participate, and the Court does not enjoin him from participating, in a business entity that competes with Tecspec as long as he can do so without conducting business in any county where Tecspec is doing or has done business.[6]

For similar reasons, Braya need not be enjoined from "bidding on any contracts concerning the manufacturing of HVAC units for any projects located in any county where Tecspec LLC is doing business, including but not limited to, New York County." Proposed Preliminary Injunction at 4. To the extent that Michael Donnolo is an owner of Braya, ECF No.

---

[5] Michael Donnolo was removed as Tecspec's manager more than seven months ago. *See* ECF No. 38 at 2:20-24. Thus, the Court need not consider any injunctive relief based on the obligations of a manager under the Tecspec Operating Agreement.

[6] This "exculpatory clause" similarly "shields [Michael Donnolo] from liability" for breach of fiduciary duty based on his ownership of a competing business entity. *Hatteras Enterprises, Inc. v. Forsythe Cosm. Grp., Ltd.*, No. 15 Civ. 887 (GRB) (JMW), 2022 WL 3682270, at *10 (E.D.N.Y. Aug. 25, 2022) (concluding that an Operating Agreement's exculpatory clause shielded the defendant from liability absent "fraud, gross negligence, willful misconduct, bad faith or a wrongful taking"); *see John v. Varughese*, 194 A.D.3d 799, 801 (N.Y. App. Div. 2021) (limiting the defendant's liability for breach of fiduciary duty based on the exculpatory clause in the operating agreement).

1 ¶ 23, he is "connected with or interested in" any business that Braya conducts, Operating Agreement § 25.1.  The injunction against Michael Donnolo may therefore limit Braya's ability to compete.  Nevertheless, Braya "exists independently of its owners, as a separate legal entity." *Inner Harbor Phase I L.P. v. COR Inner Harbor Co. LLC*, 211 A.D.3d 1475, 1478 (2022). Accordingly, Braya is not bound by Michael Donnolo's Noncompete Agreement or fiduciary duties to Tecspec.  As for Braya's liability alone, Plaintiffs have not argued that they are likely to succeed on the merits of any claim that would justify an injunction restraining Braya's ability to compete.  *See Markovits v. Venture Info Cap., Inc.*, 129 F. Supp. 2d 647, 660 (S.D.N.Y. 2001) (denying motion to enjoin a new employer of an employee subject to a non-compete agreement because the movant "cited no cases in which a new employer has been enjoined from *competing* against its employee's former employer, as distinct from *employing materials* wrongfully disclosed by the employee in violation of a confidentiality agreement").

**B.  Plaintiffs Have Shown Irreparable Harm from Lost Client Relationships.**

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  To make such a showing, Plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id.*  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *TomGal LLC*, 2022 WL 17822717, at *3 (quoting *Faiveley*, 559 F.3d at 118).

Plaintiffs have established irreparable harm with respect to lost client relationships. According to John Anthes, a consulting design engineer for HVAC projects, Defendants did

business with at least two actual or potential Tecspec customers located in New York County. *See* Anthes Decl. ¶¶ 5-7, 12-13 (describing presence of Braya units at 200 Park Avenue and 730 Third Avenue). Indeed, Anthes declares that "the Operating Engineer at 200 Park Avenue informed [him] that Michael Donnolo had returned to the project [at 200 Park Avenue] but with a 'new company name'": "Braya." *Id.* ¶ 6.

"It is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm." *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) (citing *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (collecting cases)). "As the Court of Appeals for the Second Circuit has recognized, it is 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" *Id.* (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)). "[T]he total monetary value of [Tecspec's] loss of clients would be very difficult, if not impossible, to calculate with any exactitude. Nor could the lost goodwill that [Tecspec] has built with these clients be easily quantified and compensated." *Willis*, 550 F. Supp. 3d at 106 (quoting *Marsh USA Inc. v. Karasaki*, No. 08 Civ. 4195 (JGK), 2008 WL 4778239, at *1 (S.D.N.Y. Oct. 31, 2008)) (cleaned up).

## C. The Balance of the Equities and the Public Interest Favor a Limited Injunction.

Finally, both the balance of equities and the public interest weigh in favor of an injunction. "The balance of hardships is heavily in [P]laintiffs' favor" because the requested injunction "would merely bar [Michael Donnolo] from violating his non-compete agreement[]." *Uni-World Cap. L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014). "It

would not impose any new legal duty on him; instead it would give necessary teeth to an existing contractual duty." *Id.* "Plaintiffs, by contrast, would suffer a substantial hardship if their request were denied, because [Michael Donnolo] would be likely to continue his breach of the non-compete."[7] *Id.* In addition, "[t]he public interest would not be disserved by the grant or denial of this injunction" because "[t]he injunction arises in the context of a commercial matter between two private parties." *Willis*, 550 F. Supp. 3d at 107 (S.D.N.Y. 2021). "If anything, the public interest would be advanced by such an injunction, because, on the facts here, such an injunction would tend to encourage parties to abide by their agreements." *Id.*

### 2. Plaintiffs Fail to Establish Irreparable Harm Requiring an Injunction Against Joshua Donnolo or John Michael Long.

Plaintiffs seek to enjoin Defendants Joshua Donnolo and Long from "managing, operating, joining, controlling, being employed by or with, or participating in any manner with Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC, or any other HVAC manufacturer that operates in any county that Tecspec LLC does business, including but not limited to New York County." Proposed Preliminary Injunction at 3. In support of this restraint, Plaintiffs allege that Joshua Donnolo and Long "have reneged on their respective duties to remain loyal to Tecspec as employees" in breach of the faithless servant

---

[7] In arguing against Plaintiffs' likelihood of success on the merits of their breach of contract claim, Defendants assert that the individual Plaintiffs—Richard Rose, Robert Senia, and Ralph Schlenker—are "attempt[ing] to unilaterally weaponize the non-complete provision" by seeking this injunction against Michael Donnolo while also "compet[ing] with Tecspec by enriching themselves through the Two Penn Plaza contract and by purchasing Tecspec's products and then re-selling those same products to Tecspec's customers." ECF No. 75 at 22. Defendants do not, however, contend in addressing the balance of the equities that Plaintiffs have unclean hands. The Court therefore reserves judgment on whether the individual Plaintiffs have also violated the Noncompete Agreement and will address that issue in a forthcoming opinion regarding Counterclaim Plaintiffs' motion for a preliminary injunction. *See* ECF No. 120.

doctrine, ECF No. 11 (Mot.) at 20-21, and "worked hand in hand to aid M. Donnolo in breach of his fiduciary duties owed to Plaintiffs," *id.* at 24-25.

Plaintiffs cannot, however, establish irreparable harm. To "show injury that is 'actual and imminent,' . . . [a] past injury . . . will not suffice." *Hedgepeth v. Vill. of Goshen*, No. 09 Civ. 7280 (CS), 2010 WL 11712814, at \*9 (S.D.N.Y. Mar. 31, 2010); *see Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (holding that, "to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury but must show a likelihood that he will be injured in the future'" (cleaned up)); *Rsch. Am., Inc. v. Simpson*, No. 23 Civ. 320 (LJV) (HKS), 2024 WL 4633423, at \*6 (W.D.N.Y. Oct. 31, 2024) ("A preliminary injunction cannot be issued based on past harm."). Joshua Donnolo and Long are no longer Tecspec employees. ECF No. 38 at 3:1-4. Regardless of Joshua Donnolo's and Long's former obligation "to be loyal to" Tecspec, *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003), Plaintiffs have not shown why harm from a past breach of the faithless servant doctrine would be "actual and imminent" and without "an adequate remedy at law," *TomGal LLC*, 2022 WL 17822717, at \*3.

Nor can Plaintiffs establish prospective harm from Joshua Donnolo and Long's allegedly aiding and abetting Michael Donnolo's breach of his fiduciary duty. Michael Donnolo is enjoined from further breaching the Noncompete Agreement and his concomitant fiduciary duties; this injunction will prevent any irreparable harm arising from such a breach. Thus, Plaintiffs fail to show any irreparable harm arising from Joshua Donnolo or Long's alleged actions, and the requested preliminary injunction against these Defendants is denied.[8]

---

[8] "Having concluded that [Plaintiffs] failed to meet [their] burden of demonstrating a likelihood of irreparable harm if the requested relief is denied, I need not further analyze . . . the likelihood of success on the merits." *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18 Civ. 11386 (VSB), 2022 WL 16707829, at \*10 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks omitted); *see Willis*, 550 F. Supp. 3d at 85 (similar). The Court expresses no view regarding

**3.   Plaintiffs Fail to Establish Irreparable Harm for the Alleged Trade Secrets Violations.**

Plaintiffs have not shown that they will suffer irreparable harm in the absence of a preliminary injunction restraining Defendants "from possessing, using, disclosing, or disseminating Tecspec LLC's confidential information and trade secrets."  Proposed Preliminary Injunction at 2-4.  Plaintiffs "urge[] the Court to apply a presumption of irreparable harm where a trade secret has been misappropriated, citing the Second Circuit's holding in *FMC Corp. v. Taiwan Tainan Giant Indus. Co.* that 'a loss of trade secrets cannot be measured in money damages.'"  *TGG Ultimate Holdings, Inc. v. Hollett*, No. 16 Civ. 6289 (VM), 2016 WL 8794465, at *4 (S.D.N.Y. Aug. 29, 2016) (quoting *FMC Corp.*, 730 F.2d 61, 63 (2d Cir. 1991)); *see* Mot. at 11.  But "the Second Circuit has more recently clarified that reading *FMC Corp.* to automatically presume irreparable harm . . . from a trade secret misappropriation is 'not correct.'"  *Id.* (quoting *Faiveley*, 559 F.3d at 118); *see also Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) ("The court must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm."); *Am. Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 579 (S.D.N.Y. 2009) (noting that, "in light of *Faiveley*, no such presumption arises on the facts of this case.")*.*  Indeed, "[w]here a misappropriator seeks only to use [trade] secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury."  *Faiveley*, 559 F.3d at 118-19.

"In this case, an award of money damages would adequately remedy the injury that [] [P]laintiffs allege they have suffered."  *TomGal LLC*, 2022 WL 17822717, at *3.  Plaintiffs "have not alleged that their trade secrets have been disseminated by the defendants to 'a wider

---

Plaintiffs' likelihood of success on the merits.  *See Advent Software Inc. v. G2 FT, LLC*, No. 18 Civ. 3750 (PGG), 2018 WL 4278350, at *1 (S.D.N.Y. May 4, 2018).

audience,' such that they no longer remain secret and are lost forever." *Id.* (quoting *Faiveley*, 559 F.3d at 118). Instead, they aver "only that the defendants have used the plaintiffs' trade secrets for the defendants' own pecuniary gain." *Id.* If, as alleged, Defendants have incorporated Tecspec's trade secrets into the Braya HVAC unit, they will "have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge." *Faiveley*, 559 F.3d at 119. "[W]here there is no danger that a misappropriator will disseminate proprietary information, 'the only possible injury that the plaintiff may suffer is loss of sales to a competing product[,] which should be fully compensable by money damages." *Id.* (quoting *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F. Supp. 955, 966 (S.D.N.Y. 1996) (cleaned up). Therefore, Plaintiffs have failed to show irreparable injury from any alleged misappropriation of their trade secrets.

**4. Plaintiffs Fail to Establish a Clear or Substantial Likelihood of Success on Any Cause of Action that Would Compel Defendants to Disclose Operational Information and Return Property.**

Finally, Plaintiffs ask the Court to "order Defendants to provide Plaintiffs with the information they need to make Plaintiff Tecspec LLC [] operational, as well as return to Plaintiffs the items belonging to Tecspec LLC and which are currently and unlawfully in Defendants' possession." ECF No. 92 at 1. As Plaintiffs have recognized, this request seeks mandatory injunctive relief. Mot. at 9-10. Plaintiffs therefore must establish "a clear or substantial likelihood of success." *JLM Couture*, 91 F.4th at 10. Although Plaintiffs do not identify the specific legal violation at issue, their requested injunctive relief relates exclusively to their claim for conversion. *See Waldman*, 43 F.3d at 785 ("Injunctive relief should be narrowly tailored to fit specific legal violations.").

"Under New York law, '[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone

else, interfering with that person's right of possession.'" *Rapillo v. Fingerhut*, No. 09 Civ. 10429 (VSB), 2016 WL 11705140, at *17 (S.D.N.Y. Sept. 14, 2016) (quoting *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 534 (S.D.N.Y. 2013)). "[T]o establish a claim for conversion, a plaintiff must show that: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Am. Lecithin Co. v. Rebmann*, No. 12 Civ. 929 (VSB), 2020 WL 4260989, at *5 (S.D.N.Y. July 24, 2020) (quoting *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04 Civ. 8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007)).

Plaintiffs' claim to Defendants' operational knowledge—including, for example, the location of certain items and programs (e.g., the apContainer, modbus2, ap3, pi8, the central panel program), "[a]ll open questions regarding the conveyor belt," (e.g., "how the conveyor belt QR codes were generated and applied," "how units are initially entered into the database via QR code," "the startup process for the conveyor belt system"), and the "sequence of operations for the three programs involved in the nozzle manufacturing," ECF No. 92 at 7-8—fails "because the types of 'property' that [Defendants] allegedly converted . . . are not amenable to claims for conversion." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 630-31 (S.D.N.Y. 2014) (concluding that confidential documents, information, and inventions were not property subject to a conversion claim). "It is well-settled that '[a] claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property.'" *Ferring B.V.*, 4 F. Supp. 3d at 630-31 (quoting *Matzan v. Eastman Kodak Co.,* 134 A.D.2d 863, 864 (4th Dep't 1987). "[P]asswords and other login information for websites, email accounts, and social media accounts" may be subject to conversion claims, *see Ardis Health, LLC v. Nankivell*, No. 11 Civ.

5013 (NRB), 2011 WL 4965172, at *1 (S.D.N.Y. Oct. 19, 2011), because that information

provides access to a "legally recognizable and protectable property interest," *Salonclick LLC v.

SuperEgo Mgmt. LLC*, No. 16 Civ. 2555 (KMW), 2017 WL 239379, at *4 (S.D.N.Y. Jan. 18,

2017). Defendants' Tecspec-related know-how, by contrast, is not an "electronic record[] that

[is] stored on a computer and [is] indistinguishable from printed documents," *Zebra Strategies,

Inc. v. Gonzalez-Nazario*, No. 24 Civ. 04146 (GWG), 2025 WL 353411, at *11 (S.D.N.Y. Jan.

31, 2025) (quoting *Thyroff v. Nationwide Mut. Ins.*, 8 N.Y.3d 283, 292-93 (2007)), or an online

account over which Defendants "seiz[ed] [] control," *JLM Couture, Inc. v. Gutman*, 24 F.4th

785, 797 (2d Cir. 2022) (recognizing that Instagram, Tiktok, and Pinterest accounts were

property subject to a conversion claim). It is not a "specific identifiable thing" over which

Plaintiffs "had ownership, possession or control." *Am. Lecithin*, 2020 WL 4260989, at *5.

Accordingly, it cannot be converted.[9]

      Plaintiffs' request for the return of certain physical property also fails. Despite several

rounds of briefing, *see* Mot. at 2-3; ECF No. 24; ECF No. 26 at 24-26; First Donnolo Declaration

¶¶ 47-49; ECF No. 92; ECF No. 94; ECF No. 97, conferences with the Court, *see* ECF No. 38 at

10-14; ECF No. 70 at 2-10, and a recorded video conference between the parties, *see* ECF No.

92-1—all of which the Court has reviewed—the parties continue to vigorously dispute the

ownership of these items. *Compare* ECF No. 92 at 5 ("Defendants are still in unlawful

possession of several items belonging to Plaintiffs.") *with* ECF No. 94 at 13 ("Defendants oppose

. . . Plaintiffs' bald characterizations that any of these items are Tecspec property.").[10] Plaintiffs

---

[9] In view of Plaintiffs' failure to show a likelihood of success on the merits or sufficiently serious
questions going to the merits, the Court need not address the issue of irreparable harm. *See B/E
Aerospace, Inc. v. Jet Aviation St. Louis, Inc.*, No. 11 Civ. 4032 (SAS), 2011 WL 2852857, at *3
(S.D.N.Y. July 1, 2011).
[10] For example, Defendants claim that several red chairs, which Plaintiffs identified as converted
property, were "used at the Tecspec facility" but "belonged to" Michael Donnolo because "a

demand that, "[t]o the extent that Defendants claim that they properly own any of the [disputed items]," they should "provide bills and/or invoices demonstrating" ownership.  ECF No. 92 at 5 n.4.  That demand, however, misunderstands Plaintiffs' burden.  To obtain a mandatory injunction, Plaintiffs must establish "a clear or substantial likelihood of success on the merits" of their conversion claim, *JLM Couture*, 91 F.4th at 91—including Plaintiffs "ownership, possession or control over the property before its conversion," *Am. Lecithin*, 2020 WL 4260989, at *5.  Without evidence that they own the items in question, Plaintiffs fail to meet that high bar.

In any event, "Plaintiffs have not demonstrated irreparable harm if [the physical property at issue] is not returned to them."  *Ardis Health*, 2011 WL 4965172, at *3.  Items such as laptops, chairs, bins, tools, sound insulation, and wires, ECF No. 92 at 5, are "mass-produced object[s]" whose "loss is clearly monetarily compensable," *Ardis Health*, 2011 WL 4965172, at *3.

## I.    CONCLUSION AND PRELIMINARY INJUNCTION

For the reasons stated above, the Court concludes that Plaintiffs are entitled to a preliminary injunction barring Michael Donnolo from conducting business in competition with Tecspec in counties where Tecspec is doing or has done business.  The preliminary injunction is thus GRANTED IN PART.  Pending resolution of this case, it is hereby ORDERED that Michael Donnolo is enjoined from directly or indirectly engaging in, carrying on, or being connected with or interested in any business activities concerning the manufacturing of HVAC units for any projects located in any county in which Tecspec LLC is doing business, including but not limited to New York County, pursuant to Section 25.1 of the October 6, 2017 Operating Agreement of Tecspec LLC, as amended on January 1, 2018, and in accordance with his

---

neighbor had thrown all of them in the trash and Michael had then salvaged, cleaned, and kept them."  ECF No. 94 at 14.

fiduciary duty of loyalty owed to Tecspec LLC.  All other requested preliminary relief is

DENIED.  The Clerk of Court is directed to terminate ECF No. 92.

     SO ORDERED.

Dated: June 6, 2025
     New York, New York

 

JENNIFER H. REARDEN
United States District Judge