## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER, | Case No. 1:24-cv-08077-JHR |
| Plaintiffs, | |
| v. | |
| MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10, | |
| Defendants. | |
| BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, JOHN MICHAEL LONG, JOSHUA DONNOLO, and MICHAEL DONNOLO, individually and derivatively on behalf of Tecspec LLC, | |
| Counterclaim Plaintiffs, | |
| v. | |
| RALPH SCHLENKER, ROBERT SENIA, RICHARD ROSE, SRS ENTERPRISES INC., SRS ENTERPRISES NJ LLC, HVAC SERVICE ASSOCIATES, and SRS RESEARCH LLC, | |
| Counterclaim Defendants | |
| -against- | |
| TECSPEC LLC | |
| Nominal Counterclaim Defendant | |

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION SEEKING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**ROSENBERG & ESTIS, P.C.**
Matthew S. Blum
Daniel C. Gibbons
733 Third Avenue
New York, New York 10017

*Attorneys for Defendants/Counterclaim Plaintiffs Michael Donnolo, Joshua Donnolo, John Michael Long, Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, and Braya Ventures LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 4

LEGAL ARGUMENT ........................................................................................................... 8

I.      DEFENDANTS/COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO
TEMPORARY RESTRAINING ORDER AND A PRELIMINARY
INJUNCTION .............................................................................................................. 8

      A.     Defendants/Counterclaim Plaintiffs Have Suffered and Will Continue to
Suffer Irreparable Harm Via Loss of Business Without Immediate
Injunctive Relief .............................................................................................. 8

      B.     This Matter Concerns Serious Questions on the Merits ...................................... 12

      C.     The Balance of the Equities and the Public Interest Overwhelmingly Favor
Enjoining Plaintiffs/Counterclaim Defendants ..................................................... 13

      D.     The Threat Letter and Related Evidence Satisfies the Concerns the Court
Articulated at the Hearing on Defendants/Counterclaim Plaintiffs' Prior
Motion for a Temporary Restraining Order ...................................................... 15

      E.     The Court Should Award Defendants/Counterclaim Plaintiffs Attorneys'
Fees and Impose Sanctions Upon Plaintiffs/Counterclaim Defendants for
Sending the Threat Letter ................................................................................. 17

CONCLUSION .................................................................................................................... 19

RE\24801\0001\6012184v6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alemite Mfg. Corp. v Staff,*
   42 F2d 832 (2d Cir 1930)..................................................................................13

*Chambers v NASCO, Inc.,*
   501 US 32, 111 S Ct 2123, 115 L Ed2d 27 (1991)*Ch* ..............................17

*Citigroup Glob. Markets, Inc. v VCG Special Opportunities Master Fund Ltd.,*
   598 F3d 30 (2d Cir 2010)..................................................................................12

*Faiveley Transp. Malmo AB v Wabtec Corp.,*
   559 F3d 110 (2d Cir 2009)................................................................................9

*Janmort Leasing, Inc. v Econo-Car International Inc.,*
   475 F Supp 1282 (ED NY 1979) ......................................................................9

*John B. Hull, Inc. v Waterbury Petroleum Products, Inc.,*
   588 F2d 24 (2d Cir 1978)..................................................................................9

*Johnson Controls, Inc. v A.P.T. Critical Sys., Inc.,*
   323 F Supp 2d 525 (SD NY 2004)....................................................................9

*Jones v Combs,*
   759 F Supp 3d 534 (SD NY 2024)....................................................................17

*Levin v Tiber Holding Corp.,*
   277 F3d 243 (2d Cir 2002)................................................................................14

*Mercer Health & Benefits LLC v DiGregorio,*
   307 F Supp 3d 326 (SD NY 2018)....................................................................9

*N. Am. Soccer League, LLC v U.S. Soccer Fed'n, Inc.,*
   883 F3d 32 (2d Cir 2018)..................................................................................8

*Newport Tire & Rubber Co. v Tire & Battery Corp.,*
   504 F Supp 143 (ED NY 1980) ........................................................................9

*Ransmeier v Mariani,*
   718 F3d 64 (2d Cir 2013)..................................................................................17

*Regal Knitwear Co. v NLRB,*
   324 US 9 (1945)................................................................................................13

RE\24801\0001\6012184v6

*Revson v Cinque & Cinque, P.C.*,
221 F3d 71 (2d Cir 2000).................................................................................18

*Rex Med. L.P. v Angiotech Pharm. (US), Inc.*,
754 F Supp 2d 616 (SD NY 2010).....................................................................14

*Rossbach v Montefiore Med. Ctr.*,
81 F4th 124 (2d Cir 2023) ..............................................................................17

*Semmes Motor, Inc. v Ford Motor Co.*,
429 F2d 1197 (2d Cir 1970)...............................................................................9

*Telecom Bus. Sol., LLC v Terra Towers Corp.*,
2025 WL 1194375 (SD NY Apr. 22, 2025)........................................................14

*Ticor Title Ins. Co. v Cohen*,
173 F3d 63 (2d Cir 1999)...................................................................................9

*TomGal LLC v Castano*,
2022 WL 17822717 .......................................................................................8, 9

*Uni-World Cap. L.P. v Preferred Fragrance, Inc.*,
73 F Supp 3d 209 (SD NY 2014) ..................................................................14, 15

*Weiss v Yotta Techs., Inc.*,
2024 WL 4285849 (SD NY Sept. 25, 2024)...................................................17, 18

**Statutes**

28 USC § 1927.................................................................................................17, 18

**Other Authorities**

FRCP Rule 11 .......................................................................................................17

FRCP Rule 65 .........................................................................................................1

## PRELIMINARY STATEMENT

Defendants/Counterclaim Plaintiffs Michael Donnolo, individually and derivatively on behalf of Tecspec LLC ("M. Donnolo"), Joshua Donnolo ("J. Donnolo"), John Michael Long ("Long"), Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC and Braya Ventures LLC, respectfully submit this memorandum of law in support of their motion for an order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, temporarily and preliminarily enjoining and restraining Plaintiffs/Counterclaim Defendants Richard Rose, Robert Senia, Ralph Schlenker, SRS Enterprises Inc., SRS Enterprises, NJ LLC, HVAC Service Associates and SRS Research LLC, and any person or entity acting in concert with them, representing them, or under their supervision, from:

i.   contacting, harassing, threatening, and/or communicating with, in any way, any and all current customers of Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC and Braya Ventures LLC (singular ("Braya Entity," plural, "Braya Entities"),

ii.  communicating about the Braya Entities to any potential customer of the Braya Entities,

iii. disseminating defamatory and/or false statements concerning the Braya Entities and its principals John Michael Long and Joshua Donnolo, including but not limited to the false statement that any of the Braya Entities, or its principals, are subject to the Court's preliminary injunction (ECF No. 147) as a falsely-posited basis for why the Braya Entities cannot conduct business, enter into new business contracts irrespective of the county or location, or fulfill all existing contracts with Braya customers,

      iv.      interfering, impeding, preventing or disrupting the Braya Entities from performing on any existing contract, including the Counterclaim Defendants' use of threats of lawsuits against Braya Entity customers, suing Braya Entity customers, intimidation, harassment, or dissemination of false statements, specifically concerning the Client-Company (as defined in the Declaration of John Michael Long, dated June 17, 2025),

      v.      interfering, impeding, preventing or disrupting the Braya Entities' development of potential customers through tortious interference or other means, which includes by means of harassment, threats, intimidation, and/or communicating false statements to potential customers that any of the Braya Entities or its principals are subject to the Court's preliminary injunction (ECF No. 147) as a basis for falsely stating that the Braya Entities cannot legally conduct business, enter into new contracts, or perform on existing contracts, irrespective of the county in which such business or potential business may be conducted.

The motion is necessitated by Plaintiffs/Counterclaim Defendants' deliberate perversion of this Court's June 6, 2025 Memorandum Decision and Order (ECF No. 147) (the "June 6 Decision"), reading into statements that are not there and ignoring statements that are, all to thwart and impede the Braya Entities business operations, which the Order expressly permits. Armed with the June 6 Decision, Plaintiffs/Counterclaim Defendants have taken the marketplace to threaten, intimidate, and harass the Braya Entities' actual customers in an attempt to choke out their business as a means of achieving success in litigation without having to litigate the merits (of which their claims have none).

Pointedly, Plaintiffs/Counterclaim Defendants failed to meet the requisite threshold and consequently were denied the sought relief of enjoining and restraining Braya and its principals from competing with Tecspec. But in the June 6 Decision, this Court expressly acknowledged the Braya Entities' ability to compete. Notwithstanding Plaintiffs/Counterclaim Defendants' denied relief sought, they nevertheless are holding themselves out as having obtained relief from the Court through nonsensical interpretations of the Court's language and tortured legal analysis bearing no resemblance to a cogent theory – all to threaten and intimidate Braya customers and despite the Court's clear language authorizing the Braya Entities to continue doing business.

As this Court is well aware, the June 6 Decision only enjoined M. Donnolo from conducting business in competition with Tecspec. This Court expressly rejected and denied that part of Plaintiffs/Counterclaim Defendants' motion that sought to also enjoin the other Defendants/Counterclaim Plaintiffs.

As demonstrated below and in the accompanying papers, M. Donnolo has, in accordance with the June 6 Decision, divested himself of all ownership interests in the Braya Entities and has refrained "from directly or indirectly engaging in, carrying on, or being connected with or interested in any business activities concerning the manufacturing of HVAC units for any projects located in any county in which Tecspec LLC is doing business, including but not limited to New York County . . .", there is no basis whatsoever for the overt threats.

Nonetheless, Plaintiffs/Counterclaim Defendants have embarked on a vicious campaign based upon deliberately false representations to destroy the Braya Entities' business under the guise of purporting to enforce an injunction that does not exist. In the absence of temporary and preliminary injunctive relief, Plaintiffs/Counterclaim Defendants will only be emboldened and

continue in their efforts to unlawfully interfere with the Braya Entities' business operations and sabotage their business relations and opportunities.

For all of the reasons stated herein, it is respectfully requested that this Court issue an order enjoining Plaintiffs/Counterclaim Defendants from contacting, directly or indirectly through counsel or other agents, any customer, business, entity, or person, with whom Plaintiffs/Counterclaim Defendants know or think is engaged in business or negotiations with the Braya Entities, J. Donnolo and/or Long so as to avoid irreparable harm to the Braya Entities, which will occur absent the requested relief.

## STATEMENT OF FACTS

We assume that the Court is well versed in the underlying facts of this matter, as outlined in the June 6 Decision (ECF No. 147), in the respective pleadings filed with this Court (ECF Nos. 1, 58, and 110), and all prior filings herein. For the sake of brevity, we respectfully refer the Court to those filings.

By way of further background, on June 6, 2025, this Court issued the June 6 Decision, which  determined, *inter alia*, as follows:

> For the reasons stated above, the Court concludes that Plaintiffs are entitled to a preliminary injunction barring Michael Donnolo from conducting business in competition with Tecspec in counties where Tecspec is doing or has done business. The preliminary injunction is thus GRANTED IN PART. Pending resolution of this case, it is hereby ORDERED that Michael Donnolo is enjoined from directly or indirectly engaging in, carrying on, or being connected with or interested in any business activities concerning the manufacturing of HVAC units for any projects located in any county in which Tecspec LLC is doing business, including but not limited to New York County, pursuant to Section 25.1 of the October 6, 2017 Operating Agreement of Tecspec LLC, as amended on January 1, 2018, and in accordance with his fiduciary duty of loyalty owed to Tecspec LLC. All other requested preliminary relief is DENIED.

RE\24801\0001\6012184v6

Shortly after the Court issued the June 6 Decision, M. Donnolo, transferred his membership interest in the Braya Entities to Joshua Donnolo and John Michael Long. *See* Declaration of John Michael Long, dated June 17, 2025 ("Long Dec."), ¶ 7; Exhibit A, whereto true and accurate copies of the Braya Entities' Amended Operating Agreements are annexed reflecting the transfer of ownership.

Since divesting his ownership interest in the Braya Entities, M. Donnolo has had no involvement with the Braya Entities. *See* Long Dec., ¶ 18. He is not entitled to any distributions related to the Braya Entities and he has not directly or indirectly engaged in, carried on, or is in any way connected with or interested in the Braya Entities or the business activities of the Braya Entities. *See* Long Dec., ¶¶ 9-11.

Long currently owns 49% of the Braya Entities, and J. Donnolo owns the remaining 51%. *See* Long Dec., ¶ 8.

With their combined extensive experience in the HVAC industry, J. Donnolo and Long are more than capable of managing the Braya Entities without input from M. Donnolo. *See* Long Dec., ¶ 12. Long earned a B.A. in Physics from Wittenberg University and B.S. in Mechanical Engineering from Columbia University and has been a product designer of heating ventilation and air conditioning ("HVAC") units and accessories since 2019. *See* Long Dec., ¶¶ 2-3.

J. Donnolo earned a B.S. in Electrical Engineering at Manhattan College. He is an electrical engineer and has extensive experience with the development of HVAC units and accessories and is an electrical engineer. *See* Long Dec., ¶¶ 4-5.

- 5 -

Prior to the issuance of the June 6 Decision, the Braya Entities entered into an agreement with a certain client-company (the "Client-Company")[1] to produce HVAC units for a project located in New York County. *See* Long Dec., ¶ 14. The agreement represents an extremely lucrative business opportunity, particularly given that the Braya Entities are relatively new companies. *See* Long Dec., ¶ 15.

On June 17, 2025, counsel of record for the Plaintiffs/Counterclaim Defendants sent a letter threatening Braya's Client-Company the "Threat Letter") in which counsel stated, *inter alia*:

> As you are aware, this firm represents Plaintiffs Tecspec LLC, Robert Senia, Richard Rose, and Ralph Schlenker ("Plaintiffs") in the above-referenced matter. On June 6, 2025, Judge Rearden issued an order enjoining Michael Donnolo "from directly or indirectly engaging in, carrying on, or being connected with or interested in any business activities concerning the manufacturing of HVAC units for any projects located in … New York County[.]" A true and correct copy of the June 6, 2025 order is enclosed hereto.
>
> It has come to our attention that [Client-Company ] has or is planning to contract with Michael Donnolo, via Braya Systems LLC, Braya Machine Company LLC, Braya Concepts LLC, and/or Braya Ventures LLC, for the manufacturing of HVAC units for a project located in New York County. Should [Client-Company] proceed with contracting with Michael Donnolo, in clear contravention of the Court's June 6, 2025 order, Plaintiffs will have no choice but to seek court intervention, including but not limited to seeking an order of contempt, sanctions, and/or injunction against [Client-Company] to enjoin them from same.
>
> Please be guided accordingly.
>
> Should you have any questions, I am available to discuss this matter further.
>
> Plaintiffs reserve all rights.

---

[1]     Given the sensitive and confidential nature of this litigation, and Plaintiffs/Counterclaim Defendants penchant for threats and unpredictable behavior, we have elected not to share the name of the Client-Company in these papers, but of course, would share the relevant information *in camera* with the Court.

*See* Declaration of Matthew S. Blum, dated June 20, 2025 ("Blum Dec."), ¶ 3; Exhibit A, whereto a true and accurate copy of the Threat Letter is annexed.

Defendants/Counterclaim Plaintiffs have learned that Plaintiffs/Counterclaim Defendants' counsel sent similar correspondence to additional Braya Entity customers in an obvious attempt to disrupt as many customer relationships as possible with the hope that the damage they do cannot be undone. *Id.,* ¶¶ 6-7.

Plaintiff/Counterclaim Defendants' threats are placing the Braya Entities' business with the Client-Company and all of the other business that have been contacted and misled at grave risk. *See* Long Dec., ¶ 20. Plaintiffs/Counterclaim Defendants' conduct is completely unjustified and threatens the very existence of the Braya Entities. *See* Long Dec., ¶ 21. Simply put, it will be impossible for the Braya Entities to conduct business if Plaintiffs/Counterclaim Defendants are permitted to baselessly threaten the Braya Entities' customers. *See* Long Dec., ¶ 21.

## LEGAL ARGUMENT

I.    **DEFENDANTS/COUNTERCLAIM PLAINTIFFS ARE ENTITLED TO TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Under Second Circuit precedent, a party seeking a prohibitory injunction, which simply bars a party from taking action that disturbs the status quo, has alternative standards it can elect to satisfy.  Namely, the party can show, *either*, (1) irreparable harm; (2) serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest, *or*, it can demonstrate (1) irreparable harm; (2) a likelihood of success on the merits; and (3) that a preliminary injunction is in the public interest. *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018).

This Court annunciated that same standard in the June 6 Decision, wherein it stated that in order for a prohibitory injunction to be granted, "[i]t requires a party seeking a prohibitory injunction to show (1) irreparable harm; (2) *either* a likelihood of success on the merits *or* both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.'" *See* June 6 Decision, Point II, p. 4 (emphasis added) (citing *TomGal LLC v. Castano,* 2022 WL 17822717, at *3 (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,* 883 F.3d 32, 37 (2d Cir. 2018)).[2]

A.    **Defendants/Counterclaim Plaintiffs Have Suffered and Will Continue to Suffer Irreparable Harm Via Loss of Business Without Immediate Injunctive Relief**

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *See* June 6 Decision, Point III (1) (B), p. 12 (quoting *Faiveley Transp.*

---

[2]    As explained in the June 6 Decision, a second standard applies to mandatory injunctions, which "alter the status quo by commanding some positive act,' as well as to injunctions that '(1) would provide the plaintiff with all the relief that is sought and (2) could not be undone by a judgment favorable to defendants on the merits at trial.'" *Id.* For a mandatory injunction, the movant must show, "'in addition to demonstrating irreparable harm,' . . . that it has 'a clear or substantial likelihood of success on the merits.'" *Id.* Defendants/Counterclaim Plaintiffs are not seeking a mandatory injunction in this motion. *See* June 6 Decision, Point II, p. 4.

*Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009). To make such a showing, Plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id.* (citing *TomGal LLC,* 2022 WL 17822717, at *3 (quoting *Faiveley,* 559 F.3d at 118)).

As this Court has noted in this case, "[i]t is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm." *See* June 6 Decision, Point III (1) (B), p. 13 (quoting *Mercer Health & Benefits LLC v. DiGregorio,* 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) (citing *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.,* 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004)). "As the Court of Appeals for the Second Circuit has recognized, it is 'very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" *Id.* (quoting *Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 69 (2d Cir. 1999)).

Moreover, it is well-settled that "an act that threatens an ongoing business with destruction causes that business irreparable injury." *Newport Tire & Rubber Co. v. Tire & Battery Corp.*, 504 F. Supp. 143, 149 (E.D.N.Y. 1980) (citing *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 588 F.2d 24 (2d Cir. 1978)); *Semmes Motor, Inc. v. Ford Motor Co*., 429 F.2d 1197 (2d Cir. 1970)); *Janmort Leasing, Inc. v. Econo-Car International Inc.*, 475 F.Supp. 1282 (E.D.N.Y.1979).

Here, on June 17, 2025, counsel of record for the Plaintiffs/Counterclaim Defendants sent the Threat Letter to the Client-Company (and other customers) (Long Dec., ¶ 16; Blum Dec. ¶¶ 6-7), which contained several misrepresentations. *See* Blum Dec., ¶ 3; Exhibit A. In particular,

despite the absence of any proof that M. Donnolo was negotiating, working, or contracting with the Client-Company, the Threat Letter indicated that Plaintiffs/Counterclaim Defendants had learned that the Client-Company was or was planning to contract with Michael Donnolo, via the Braya Entities for the manufacturing of HVAC units for a project in New York County. The Threat Letter went on to make serious misrepresentations regarding the Court's June 6 Decision and the potential legal ramifications that the Client-Company might experience if it did not immediately cease pursuing business relations with Braya. Specifically, the Threat Letter stated that the Client-Company's conduct was "in clear contravention of the Court's June 6, 2025 order" and that "Plaintiffs will have no choice but to seek court intervention, including but not limited to seeking an order of contempt, sanctions, and/or injunction against [Client-Company] to enjoin them" from continuing to engage in the same lawful behavior.

Is it clear that the Threat Letter was intended to mislead the Client-Company. Plaintiffs initially sought "a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) against Defendants Michael Donnolo, Joshua Donnolo, and John Michael Long, along with Braya Systems LLC, Braya Machine Company LLC, Braya Concepts LLC, and Braya Ventures LLC (collectively, "Braya")." *See* June 6 Decision, p. 1. This Court however, only "granted in part and denied in part", the motion (*Id.*), and explicitly held that only M. Donnolo was subject to the injunction issued, as it expressly concluded that "Plaintiffs are entitled to a preliminary injunction barring Michael Donnolo from conducting business in competition with Tecspec in counties where Tecspec is doing or has done business." *See* June 6 Decision, p. 20. The Court expanded upon that and further held:

> Pending resolution of this case, it is hereby ORDERED that Michael Donnolo is enjoined from directly or indirectly engaging in, carrying on, or being connected with or interested in any business activities concerning the manufacturing of HVAC units for any projects

located in any county in which Tecspec LLC is doing business,
including but not limited to New York County, pursuant to Section
25.1 of the October 6, 2017 Operating Agreement of Tecspec LLC,
as amended on January 1, 2018, and in accordance with his fiduciary
duty of loyalty owed to Tecspec LLC. All other requested
preliminary relief is DENIED.

*Id.,* pp. 20-21.

The Court carved out and did not expand the injunction to the Braya Entities, and expressly

stated that, ***"Braya need not be enjoined from 'bidding on any contracts concerning the***

***manufacturing of HVAC units for any projects located in any county where Tecspec LLC is***

***doing business, including but not limited to, New York County.'"*** *Id.,* p. 11 (emphasis added).

The Court went on to explain that, while Donnolo is "connected with or interested in" any business

that Braya conducts and the injunction against M. Donnolo may limit Braya's ability to compete

(*Id.,* Point 1 (A), p. 11)), ***"Braya 'exists independently of its owners, as a separate legal entity.'***

***Accordingly, Braya is not bound by Michael Donnolo's Noncompete Agreement or fiduciary***

***duties to Tecspec. As for Braya's liability alone, Plaintiffs have not argued that they are likely***

***to succeed on the merits of any claim that would justify an injunction restraining Braya's ability***

***to compete."*** *Id.* (emphasis added).[3] Thus, it is clear that Braya is permitted to compete in the

HVAC market place.

It is also clear that the Threat Letter was designed to and did have the affect of scaring the

Client-Company into refusing to do business with the Braya Entities. In fact, on June 17, 2025,

after the Client-Company received the Threat Letter, he sent it to counsel of record for

Defendants/Counterclaim Plaintiffs, Matthew S. Blum. *See* Blum Dec., ¶ 3. Thereafter, Mr. Blum

subsequently spoke to the Client-Company's counsel. *Id.,* ¶. During that conversation, the Client-

---

[3]    Similarly, neither J. Donnolo nor John Michael Long were enjoined, as the Court also clearly stated "Thus,
Plaintiffs fail to show any irreparable harm arising from Joshua Donnolo or Long's alleged actions, and the
requested preliminary injunction against these Defendants is denied." *Id.,* Point 1 (C) (2), p. 14.

RE\24801\0001\6012184v6

Company's attorney indicated that the Client-Company viewed the Threat Letter as extremely concerning. *Id.*

This unhinged and improper conduct - - making threats and misrepresenting the June 6 Decision - - have had an irreparably harmful effect on the Braya Entities and will continue to harm their relationships with other customers, if this Court does not immediately temporarily and preliminarily enjoin the Plaintiffs/Counterclaim Defendants.

      **B.**      <u>**This Matter Concerns Serious Questions on the Merits**</u>

The "serious questions" standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *Citigroup Glob. Markets, Inc. v VCG Special Opportunities Master Fund Ltd.,* 598 F3d 30, 35 (2d Cir 2010). This standard accommodates the needs of the district courts in confronting motions for preliminary injunctions in factual situations that vary widely in difficulty and complexity. *Id.,* at 38.

In the present case, the entirety of this litigation is about whether the Braya Entities can survive and compete against Tecspec, where Plaintiffs/Counterclaim Defendants are making false statements and deliberate mischaracterizations in an effort to essentially kill the Braya Entities' business on the pretext that the Braya Entities cannot compete — a decision which the Court has yet to resolve, but did address preliminarily in favor of the Braya Entities.

Plaintiffs/Counterclaim Defendants are rendering the purpose of the Court's adjudication meaningless if, as a practical matter, the Braya Entities are forced out of business by the time the

Court decides the ultimate issue in this case. The purpose of a preliminary injunction is to preserve the status quo until final adjudication of the action.[4]

In light of the forgoing, it is apparent that there are serious questions in this dispute and indeed presented in this application, that warrant this Court granting injunctive relief without having to delve into and determine with certainty which party is more likely than not to prevail on the merits of their claims.

### C.     The Balance of the Equities and the Public Interest Overwhelmingly Favor Enjoining Plaintiffs/Counterclaim Defendants

At the present time, Plaintiffs/Counterclaim Defendants are free to do anything they please, with no restraints whatsoever. Rather than going into the market to engage in negotiations for new business and to support their existing businesses (again there is an unavoidable conflict as they own and operate both Tecspec and the SRS Entities concurrently), they have instead chosen to pay their attorneys to harass, intimidate, and threaten Braya's customers into ceasing all business relations with Braya by inventing restraints and legal consequences that do not exist.

For example, it has long been recognized that "no court can make a decree which will bind any one but a party 'because a court's jurisdiction is limited to those over whom it gets personal services and who therefore can have their day in court.'" *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832-33 (2d Cir. 1930). A court cannot "punish [] the conduct of persons who act independently and whose rights have not been adjudged" in the earlier proceeding. *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 13 (1945).  In order to hold a nonparty in contempt of a court order, that party must be in active concert with the enjoined party under an aiding and abetting theory. Under an aiding-and-abetting theory, a court first must conclude that 'the party subject to the court's mandate [i.e.,

---

[4]     It bears noting that, while business defamation is not a part of the counterclaim pleading, it is part of the amended pleading and it is certainly contemplated by the merits of this action.

RE\24801\0001\6012184v6

M. Donnolo]  committed contempt.  *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir. 2002). A court must next conclude  that "the challenged action" of the nonparty was taken for the benefit of, or to assist, a party subject to the decree in  violating the injunction.  *Telecom Bus. Sol., LLC v. Terra Towers Corp.,* 2025 WL 1194375, at *15 (S.D.N.Y. Apr.  22, 2025). The enjoined party must, in essence, be the principal or the intended beneficiary of the nonparty's conduct. *Id.*

In the present case, M. Donnolo is completely divested of the Braya Entities and he is not involved with their business operations in any way that would violate the June 6 Decision. There is no evidence whatsoever to the contrary.  Further, there is no evidence whatsoever that the Client-Company is assisting or aiding and abetting M. Donnolo is purported violation of this Court's order. Accordingly, the assertions in the Threat Letter that the Client-Company will be held in contempt are utterly false and completely improper.

Braya is left unprotected in the market. Despite the fact that there is no restraint upon Braya compete and operate in the marketplace, it must dispel the rumors and innuendo falsely created by Plaintiffs/Counterclaim Defendants that it is violating a court order merely by conducting business, as it is permitted to do.  It is abundantly clear that absent immediate injunctive relief, Braya, and its principals, J. Donnolo and Long, would suffer a substantial hardship because the Plaintiffs/Counterclaim Defendants are likely to continue their underhanded tactics to thwart and destroy Braya's business and damage its reputation.  *See generally,* *Rex Med. L.P. v Angiotech Pharm. (US), Inc.,* 754 F Supp. 2d 616, 626 (S.D.N.Y. 2010)  (concluding that the injunctive relief would not disserve the public interest and generally opining on the favorability of parties entering into contracts and being bound by their terms); *Uni-World Cap. L.P. v. Preferred Fragrance, Inc.,* 73 F. Supp. 3d 209, 237 (S.D.N.Y. 2014) (enjoining defendant upon a finding that the balance of hardships was heavily in plaintiffs' favor because the injunction would merely make defendant

- 14 -

abide by its legal obligations but in the absence of an injunction, the defendant would like continue to engage in unlawful behavior).

Moreover, public interest would be served by the issuance of the requested injunctive relief because it would encourage fair competition in the market and put an end to the dirty games that the Plaintiffs/Counterclaim Defendants are playing. *Id.*

### D.    The Threat Letter and Related Evidence Satisfies the Concerns the Court Articulated at the Hearing on Defendants/Counterclaim Plaintiffs' Prior Motion for a Temporary Restraining Order

Defendants/Counterclaim Plaintiffs previously moved for temporary injunctive relief to restrain Plaintiffs/Counterclaim Defendants, upon claims that Plaintiffs/Counterclaim Defendants were improperly interfering with the Braya Entities' business by spreading false information. *See* Blum Dec., Exhibit B.

On April 17, 2025, the Court heard oral argument on that application.  In assessing the merits, the Court sought to confirm that the requested relief was related to Defendants/Counterclaim Plaintiffs' claim for tortious interference. (ECF No. 126; Blum Dec., Exhibit B) (THE COURT: "All right. I want to clarify one point with you before I allow both sides to make their arguments. The requested TRO relates to your client's claim for tortious interference with business relationships; is that correct?"; MR. BLUM: "It certainly lends to that prospect, your Honor. The order to show cause seeks to prevent the interference with these business opportunities, yes."). *Id.,*  3:3-9.

The Court ultimately did conclude that to be the case and indicated that it would "review whether counterclaim plaintiffs are likely to succeed on the tortious interference claim." *Id.,* 22:1-17. Citing the elements of a tortious interference with business relationships, the Court stated that a party must demonstrate that: (i) there is a business relationship between the plaintiff and a third party; (ii) the defendant, knowing of that relationship intentionally interferes with it; (iii) a

- 15 -

defendant acts with the sole purpose of harming the plaintiff or failing that level of malice, uses dishonest, unfair, or improper means; and the relationship is injured." *Id.,* 22:18-25.

The Court ultimately found that, but for one example, counterclaim plaintiffs failed to show the requisite particularity, namely, that the counterclaim defendants "interfered with a specific business relationship." *Id.,* 23:12-14. The Court explained that the contention in the Declaration of Michael Donnolo Plaintiffs/Counterclaim Defendants made "false statements and threats to potential and current Braya customers" was "too broad" of an allegation to state a claim for tortious interference with business relationships." *Id.,* 23:14-19; citing case law precedent that dismissed tortious interference claims on the grounds that the litigants failed to identify a "specific business relationship",  made "generalized allegations about hypothetical business relations", and asserted "barebones allegations" regarding Defendants' sabotage of his relationships with vendors and suppliers.

In the present case, Plaintiffs/Counterclaim Defendants have apparently been emboldened by both the denial of Defendants/Counterclaim Plaintiffs' prior motion for injunctive relief and by the June 6 Decision. This is reflected by their issuance of the Threat Letter and the characterizations and statements therein. This is not an application predicated upon mere "generalized allegations about hypothetical business relations" or "barebones allegations." The evidence before this Court is a Threat Letter issued by none other than counsel of record for Plaintiffs/Counterclaim Defendants, likely directed and authorized by their client in their continued efforts to stomp the Braya Entities out of the HVAC market, with a tortured interpretation and misrepresentation of this Court's June 6 Decision.[5]

---

[5]     Although a showing of likelihood of success is not necessary, *see* Point I *supra*, it bears noting that in light of the evidence of Threat Letter, Plaintiffs/Counterclaim Defendants' tortious interference claim is bolstered.

RE\24801\0001\6012184v6

This has the requisite particularity that the Court determined was missing at the appearance on April 17, 2025.

### E.    The Court Should Award Defendants/Counterclaim Plaintiffs Attorneys' Fees and Impose Sanctions Upon Plaintiffs/Counterclaim Defendants for Sending the Threat Letter

District courts have the inherent power to impose sanctions for the bad-faith conduct of litigants—and Rule 11 does not displace that power. *Weiss v. Yotta Techs., Inc.,* 2024 WL 4285849, at *4 (S.D.N.Y. Sept. 25, 2024).

28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Jones v. Combs,* 759 F. Supp. 3d 534, 539 (S.D.N.Y. 2024). To succeed under § 1927, a plaintiff must demonstrate "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Id.* Bad faith can be established by inference from completely meritless actions. *Id.* Awards pursuant to § 1927 may be imposed only against the attorney, not the client. *Id.*

"A federal court may [also] 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The standard for imposing sanctions pursuant to the Court's inherent power is the same as that under Section 1927. *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 79 (2d Cir. 2000). Finally, while § 1927 sanctions may only be imposed on an attorney, sanctions under the Court's inherent authority may be imposed on a party as well. *Weiss v. Yotta Techs., Inc.*, 2024 WL 4285849, at *5 (S.D.N.Y. Sept. 25, 2024).

- 17 -

Before punishing actions taken under either § 1927 or the court's inherent authority, the Court must make an explicit finding of bad faith.

Here, the Threat Letter was undoubtedly sent in in bad faith, for oppressive reasons and with a wonton and reckless motive. As explained above the Threat Letter was intended to mislead, scare, and indeed threaten the Client-Company into refusing to do business with the Braya Entities. It was so concerning, that the Client-Company engaged legal counsel, no doubt to obtain advice on whether it could be held legally liable for doing business with the Braya Entities. Further, given the potential liabilities outlined in the Threat Letter, it is more than likely the Client-Company has assessed if it is even worth doing business with the Bray Entities or if it is just too much of a hassle.

In sum, the Threat Letter was entirely out of the bounds of decency and once again reveals that Plaintiffs/Counterclaim Defendants will do anything to enact their vindictive motives. This Court should not further embolden them by denying the injunctive relief sought in this motion and should instead, grant the relief, impose sanctions and award attorneys' fees to ensure that this conduct does not continue or get worse.

RE\24801\0001\6012184v6

## CONCLUSION

For all of the foregoing reasons, Defendants/Counterclaim Plaintiffs respectfully request

that the Court grant the instant motion.

Dated:  New York, New York
         June 20, 2025

                                        **ROSENBERG & ESTIS, P.C.**


                                        _____
                                        Matthew S. Blum, Esq.
                                        Daniel C. Gibbons, Esq.
                                        733 Third Avenue, 14th Floor
                                        New York, New York 10017
                                        MBlum@Rosenbergestis.com
                                        DGibbons@Rosenbergestis.com
                                        *Attorneys for Defendants/*
                                        *Counterclaim Plaintiffs*