**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, and RALPH SCHLENKER, | Case No. 1:24-cv-08077 |
| Plaintiffs, | |
| v. | |
| MICHAEL DONNOLO, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, ABC CORPORATIONS 1-10, | |
| Defendants. | |
| BRAYA CONCEPTS LLC, BRAYA MACHINE COMPANY LLC, BRAYA SYSTEMS LLC, BRAYA VENTURES LLC, JOHN MICHAEL LONG, JOSHUA DONNOLO, and MICHAEL DONNOLO, individually and derivatively on behalf of Tecspec LLC, | **SECOND AMENDED ANSWER WITH AFFIRMATIVE DEFENSES AND VERIFIED** <u>**COUNTERCLAIMS**</u> |
| Counterclaim Plaintiffs, | |
| v. | |
| RALPH SCHLENKER, ROBERT SENIA, RICHARD ROSE, CHRISTINA SENIA, NUMA PRODUCTS, LLC, SRS ENTERPRISES INC., SRS ENTERPRISES INC, SRS ENTERPRISES NJ LLC, HVAC SERVICE ASSOCIATES, and SRS RESEARCH LLC, | |
| Counterclaim Defendants. | |
| -against- | |
| TECSPEC LLC | |
| Nominal Counterclaim Defendant | |

Defendants/Counterclaim Plaintiffs Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, Braya Ventures LLC, Michael Donnolo, John Michael Long, and Joshua Donnolo (collectively referred to in this Amended Answer with Affirmative Defenses and Verified Counterclaims, "Defendants"), by and through their attorneys, Barnes & Thornburg LLP, answer Plaintiffs' Complaint (ECF No. 1) as follows:

**INTRODUCTION**

1.      As and for Plaintiffs' Complaint, Paragraph 1, Defendants deny each and every allegation as drafted.

2.      As and for Plaintiffs' Complaint, Paragraph 2, Defendants deny each and every allegation as drafted.

3.      As and for Plaintiffs' Complaint, Paragraph 3, Defendants deny each and every allegation as drafted.

4.      As and for Plaintiffs' Complaint, Paragraph 4, Defendants deny each and every allegation as drafted.

5.      As and for Plaintiffs' Complaint, Paragraph 5, Defendants deny each and every allegation as drafted.

6.      As and for Plaintiffs' Complaint, Paragraph 6, Defendants deny each and every allegation as drafted.

7.      As and for Plaintiffs' Complaint, Paragraph 7, Defendants deny each and every allegation as drafted.

8.      As and for Plaintiffs' Complaint, Paragraph 8, Defendants deny each and every allegation as drafted.

9.      As and for Plaintiffs' Complaint, Paragraph 9, Defendants deny each and every allegation as drafted.

10.      As and for Plaintiffs' Complaint, Paragraph 10, Defendants deny each and every allegation as drafted.

11.      As and for Plaintiffs' Complaint, Paragraph 11, Defendants deny each and every allegation as drafted.

12.      As and for Plaintiffs' Complaint, Paragraph 12, Defendants deny each and every allegation as drafted.

13.    As and for Plaintiffs' Complaint, Paragraph 13, Defendants deny each and every allegation as drafted.

14.    As and for Plaintiffs' Complaint, Paragraph 14, Defendants deny each and every allegation as drafted.

15.    As and for Plaintiffs' Complaint, Paragraph 15, Defendants deny each and every allegation as drafted.

16.    As and for Plaintiffs' Complaint, Paragraph 16, Defendants deny each and every allegation as drafted.

17.    As and for Plaintiffs' Complaint, Paragraph 17, Defendants deny each and every allegation as drafted.

18.    As and for Plaintiffs' Complaint, Paragraph 18, Defendants deny each and every allegation as drafted.

**THE PARTIES**

19.    As and for Plaintiffs' Complaint, Paragraph 19, Defendants admit the allegations contained therein.

20.    As and for Plaintiffs' Complaint, Paragraph 20, Defendants admit the allegations contained therein.

21.    As and for Plaintiffs' Complaint, Paragraph 21, Defendants admit the allegations contained therein.

22.    As and for Plaintiffs' Complaint, Paragraph 22, Defendants admit the allegations contained therein.

23.    As and for Plaintiffs' Complaint, Paragraph 23, Defendants admit the allegations contained therein.

24.    As and for Plaintiffs' Complaint, Paragraph 24, Defendants admit the allegations contained therein.

25.    As and for Plaintiffs' Complaint, Paragraph 25, Defendants admit the allegations contained therein.

26.    As and for Plaintiffs' Complaint, Paragraph 26, Defendants admit the allegations contained therein.

27.    As and for Plaintiffs' Complaint, Paragraph 27, Defendants admit the allegations contained therein.

28.    As and for Plaintiffs' Complaint, Paragraph 28, Defendants deny each and every allegation contained therein except admit that Joshua Donnolo was an employee of Tecspec.

29.    As and for Plaintiffs' Complaint, Paragraph 29, Defendants deny each and every allegation contained therein except admit that John Michael Long was an employee of Tecspec.

## JURISDICTION AND VENUE

30.    As and for Plaintiffs' Complaint, Paragraph 30, Defendants lack sufficient information to admit or deny the allegations as written.

31.    As and for Plaintiffs' Complaint, Paragraph 31, Defendants admit the allegations contained therein.

32.    As and for Plaintiffs; Complaint, Paragraph 32, Defendants admit the allegations contained therein.

33.    As and for Plaintiffs' Complaint, Paragraph 33, Defendants admit the allegations contained therein.

## FACTUAL ALLEGATIONS

34.    As and for Plaintiffs' Complaint, Paragraph 34, Defendants deny each and every allegation as drafted.

35.    As and for Plaintiffs' Complaint, Paragraph 35, Defendants deny each and every allegation as drafted.

36.     As and for Plaintiffs' Complaint, Paragraph 36, Defendants deny each and every allegation as drafted.

37.     As and for Plaintiffs' Complaint, Paragraph 37, Defendants deny each and every allegation as drafted.

38.     As and for Plaintiffs' Complaint, Paragraph 38, Defendants deny each and every allegation as drafted.

39.     As and for Plaintiffs' Complaint, Paragraph 39, Defendants deny each and every allegation as drafted.

40.     As and for Plaintiffs' Complaint, Paragraph 40, Defendants deny each and every allegation as drafted.

41.     As and for Plaintiffs' Complaint, Paragraph 41, Defendants lack sufficient information to admit or deny the allegations as written.

42.     As and for Plaintiffs' Complaint, Paragraph 42, Defendants deny each and every allegation as drafted.

43.     As and for Plaintiffs' Complaint, Paragraph 43, Defendants deny each and every allegation as drafted.

44.     As and for Plaintiffs' Complaint, Paragraph 44, Defendants deny each and every allegation as drafted.

45.     As and for Plaintiffs' Complaint, Paragraph 45, Defendants deny each and every allegation as drafted.

46.     As and for Plaintiffs' Complaint, Paragraph 46, Defendants deny each and every allegation as drafted.

47.     As and for Plaintiffs' Complaint, Paragraph 47, Defendants deny each and every allegation as drafted.

48.    As and for Plaintiffs' Complaint, Paragraph 48, Defendants deny each and every allegation as drafted.

49.    As and for Plaintiffs' Complaint, Paragraph 49, Defendants deny each and every allegation as drafted.

50.    As and for Plaintiffs' Complaint, Paragraph 50, Defendants lack sufficient information to admit or deny the allegations as written.

51.    As and for Plaintiffs' Complaint, Paragraph 51, Defendants deny each and every allegation as drafted.

52.    As and for Plaintiffs' Complaint, Paragraph 52, Defendants deny each and every allegation as drafted.

53.    As and for Plaintiffs' Complaint, Paragraph 53, Defendants lack sufficient information to admit or deny the allegations as written.

54.    As and for Plaintiffs' Complaint, Paragraph 54, Defendants deny each and every allegation as drafted.

55.    As and for Plaintiffs' Complaint, Paragraph 55, Defendants deny each and every allegation as drafted.

56.    As and for Plaintiffs' Complaint, Paragraph 56, Defendants deny each and every allegation contained therein except admit that Joshua Donnolo and John Michael Long were employees of Tecspec.

57.    As and for Plaintiffs' Complaint, Paragraph 57, Defendants deny each and every allegation as drafted.

58.    As and for Plaintiffs' Complaint, Paragraph 58, Defendants deny each and every allegation as drafted.

59.    As and for Plaintiffs' Complaint, Paragraph 59, Defendants deny each and every allegation as drafted.

60.    As and for Plaintiffs' Complaint, Paragraph 60, Defendants lack sufficient information to admit or deny the allegations as written.

61.    As and for Plaintiffs' Complaint, Paragraph 61, Defendants deny each and every allegation as drafted.

62.    As and for Plaintiffs' Complaint, Paragraph 62, Defendants deny each and every allegation as drafted.

63.    As and for Plaintiffs' Complaint, Paragraph 63, Defendants deny each and every allegation as drafted.

64.    As and for Plaintiffs' Complaint, Paragraph 64, Defendants deny each and every allegation as drafted.

65.    As and for Plaintiffs' Complaint, Paragraph 65, Defendants deny each and every allegation as drafted.

66.    As and for Plaintiffs' Complaint, Paragraph 66, Defendants deny each and every allegation as drafted.

67.    As and for Plaintiffs' Complaint, Paragraph 67, Defendants deny each and every allegation as drafted.

68.    As and for Plaintiffs' Complaint, Paragraph 68, Defendants deny each and every allegation as drafted.

69.    As and for Plaintiffs' Complaint, Paragraph 69, Defendants deny each and every allegation as drafted.

70.    As and for Plaintiffs' Complaint, Paragraph 70, Defendants deny each and every allegation as drafted.

71.    As and for Plaintiffs' Complaint, Paragraph 71, Defendants deny each and every allegation as drafted.

72.     As and for Plaintiffs' Complaint, Paragraph 72, Defendants deny each and every allegation as drafted.

73.     As and for Plaintiffs' Complaint, Paragraph 73, Defendants deny each and every allegation as drafted.

74.     As and for Plaintiffs' Complaint, Paragraph 74, Defendants deny each and every allegation as drafted.

75.     As and for Plaintiffs' Complaint, Paragraph 75, Defendants deny each and every allegation as drafted.

76.     As and for Plaintiffs' Complaint, Paragraph 76, Defendants deny each and every allegation as drafted.

77.     As and for Plaintiffs' Complaint, Paragraph 77, Defendants deny each and every allegation as drafted.

78.     As and for Plaintiffs' Complaint, Paragraph 78, Defendants deny each and every allegation as drafted.

79.     As and for Plaintiffs' Complaint, Paragraph 79, Defendants deny each and every allegation as drafted.

80.     As and for Plaintiffs' Complaint, Paragraph 80, Defendants deny each and every allegation as drafted.

81.     As and for Plaintiffs' Complaint, Paragraph 81, Defendants deny each and every allegation as drafted.

82.     As and for Plaintiffs' Complaint, Paragraph 82, Defendants lack sufficient information to admit or deny the allegations as written.

83.     As and for Plaintiffs' Complaint, Paragraph 83, Defendants deny each and every allegation as drafted.

84.    As and for Plaintiffs' Complaint, Paragraph 84, Defendants deny each and every allegation as drafted.

85.    As and for Plaintiffs' Complaint, Paragraph 85, Defendants deny each and every allegation as drafted.

86.    As and for Plaintiffs' Complaint, Paragraph 86, Defendants deny each and every allegation as drafted.

87.    As and for Plaintiffs' Complaint, Paragraph 87, Defendants deny each and every allegation as drafted.

88.    As and for Plaintiffs' Complaint, Paragraph 88, Defendants deny each and every allegation as drafted.

89.    As and for Plaintiffs' Complaint, Paragraph 89, Defendants deny each and every allegation as drafted.

90.    As and for Plaintiffs' Complaint, Paragraph 90, Defendants deny each and every allegation as drafted.

91.    As and for Plaintiffs' Complaint, Paragraph 91, Defendants deny each and every allegation as drafted.

92.    As and for Plaintiffs' Complaint, Paragraph 92, Defendants deny each and every allegation as drafted.

## COUNT I

93.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

94.    As and for Plaintiffs' Complaint, Paragraph 94, Defendants deny each and every allegation as drafted.

95.    As and for Plaintiffs' Complaint, Paragraph 95, Defendants deny each and every allegation as drafted.

96.     As and for Plaintiffs' Complaint, Paragraph 96, Defendants deny each and every allegation as drafted.

## COUNT II

97.     Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

98.     As and for Plaintiffs' Complaint, Paragraph 98, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

99.     As and for Plaintiffs' Complaint, Paragraph 99, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

100.     As and for Plaintiffs' Complaint, Paragraph 100, Defendants deny each and every allegation as drafted.

101.     As and for Plaintiffs' Complaint, Paragraph 101, Defendants deny each and every allegation as drafted.

102.     As and for Plaintiffs' Complaint, Paragraph 102, Defendants deny each and every allegation as drafted.

103.     As and for Plaintiffs' Complaint, Paragraph 103, Defendants deny each and every allegation as drafted.

104.     As and for Plaintiffs' Complaint, Paragraph 104, Defendants deny each and every allegation as drafted.

## COUNT III

105.     Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

106.    As and for Plaintiffs' Complaint, Paragraph 106, Defendants deny each and every allegation as drafted.

107.    As and for Plaintiffs' Complaint, Paragraph 107, Defendants deny each and every allegation as drafted.

108.    As and for Plaintiffs' Complaint, Paragraph 108, Defendants deny each and every allegation as drafted.

109.    As and for Plaintiffs' Complaint, Paragraph 109, Defendants deny each and every allegation as drafted.

110.    As and for Plaintiffs' Complaint, Paragraph 110, Defendants deny each and every allegation as drafted.

111.    As and for Plaintiffs' Complaint, Paragraph 111, Defendants deny each and every allegation as drafted.

112.    As and for Plaintiffs' Complaint, Paragraph 112, Defendants deny each and every allegation as drafted.

113.    As and for Plaintiffs' Complaint, Paragraph 113, Defendants deny each and every allegation as drafted.

114.    As and for Plaintiffs' Complaint, Paragraph 114, Defendants deny each and every allegation as drafted.

115.    As and for Plaintiffs' Complaint, Paragraph 115, Defendants deny each and every allegation as drafted.

116.    As and for Plaintiffs' Complaint, Paragraph 116, Defendants deny each and every allegation as drafted.

117.    As and for Plaintiffs' Complaint, Paragraph 117, Defendants deny each and every allegation as drafted.

## COUNT IV

118.   Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

119.   As and for Plaintiffs' Complaint, Paragraph 119, Defendants deny each and every allegation as drafted.

120.   As and for Plaintiffs' Complaint, Paragraph 120, Defendants deny each and every allegation as drafted.

121.   As and for Plaintiffs' Complaint, Paragraph 121, Defendants deny each and every allegation as drafted.

122.   As and for Plaintiffs' Complaint, Paragraph 122, Defendants deny each and every allegation as drafted.

123.   As and for Plaintiffs' Complaint, Paragraph 123, Defendants deny each and every allegation as drafted.

124.   As and for Plaintiffs' Complaint, Paragraph 124, Defendants deny each and every allegation as drafted.

125.   As and for Plaintiffs' Complaint, Paragraph 125, Defendants deny each and every allegation as drafted.

126.   As and for Plaintiffs' Complaint, Paragraph 126, Defendants deny each and every allegation as drafted.

127.   As and for Plaintiffs' Complaint, Paragraph 127, Defendants deny each and every allegation as drafted.

## COUNT V

128.   Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

129.    As and for Plaintiffs' Complaint, Paragraph 129, Defendants deny each and every allegation as drafted.

130.    As and for Plaintiffs' Complaint, Paragraph 130, Defendants deny each and every allegation as drafted.

131.    As and for Plaintiffs' Complaint, Paragraph 131, Defendants deny each and every allegation as drafted.

132.    As and for Plaintiffs' Complaint, Paragraph 132, Defendants deny each and every allegation as drafted.

133.    As and for Plaintiffs' Complaint, Paragraph 133, Defendants deny each and every allegation as drafted.

## <u>COUNT VI</u>

134.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

135.    As and for Plaintiffs' Complaint, Paragraph 135, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

136.    As and for Plaintiffs' Complaint, Paragraph 136, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

137.    As and for Plaintiffs' Complaint, Paragraph 137, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

138.    As and for Plaintiffs' Complaint, Paragraph 138, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

139.    As and for Plaintiffs' Complaint, Paragraph 139, Defendants deny each and every allegation as drafted.

140.    As and for Plaintiffs' Complaint, Paragraph 140, Defendants deny each and every allegation as drafted.

141.    As and for Plaintiffs' Complaint, Paragraph 141, Defendants deny each and every allegation as drafted.

142.    As and for Plaintiffs' Complaint, Paragraph 142, Defendants deny each and every allegation as drafted.

143.    As and for Plaintiffs' Complaint, Paragraph 143, Defendants deny each and every allegation as drafted.

144.    As and for Plaintiffs' Complaint, Paragraph 144, Defendants deny each and every allegation as drafted.

145.    As and for Plaintiffs' Complaint, Paragraph 145, Defendants deny each and every allegation as drafted.

146.    As and for Plaintiffs' Complaint, Paragraph 146, Defendants deny each and every allegation as drafted.

147.    As and for Plaintiffs' Complaint, Paragraph 147, Defendants deny each and every allegation as drafted.

## **COUNT VII**

148.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

149.    As and for Plaintiffs' Complaint, Paragraph 149, Defendants lack sufficient information to admit or deny the allegations as written.

150.    As and for Plaintiffs' Complaint, Paragraph 150, Defendants lack sufficient information to admit or deny the allegations as written.

151.    As and for Plaintiffs' Complaint, Paragraph 151, Defendants deny each and every allegation contained therein except refer all matters of law to this Honorable Court and/or documents which language speaks for itself.

152.    As and for Plaintiffs' Complaint, Paragraph 152, Defendants deny each and every allegation as drafted.

153.    As and for Plaintiffs' Complaint, Paragraph 153, Defendants deny each and every allegation as drafted.

## COUNT VIII

154.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

155.    As and for Plaintiffs' Complaint, Paragraph 155, Defendants deny each and every allegation as drafted.

156.    As and for Plaintiffs' Complaint, Paragraph 156, Defendants admit the allegations contained therein.

157.    As and for Plaintiffs' Complaint, Paragraph 157, Defendants deny each and every allegation as drafted.

158.    As and for Plaintiffs' Complaint, Paragraph 158, Defendants deny each and every allegation as drafted.

159.    As and for Plaintiffs' Complaint, Paragraph 159, Defendants deny each and every allegation as drafted.

## COUNT IX

160.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

161.    As and for Plaintiffs' Complaint, Paragraph 161, Defendants deny each and every allegation as drafted.

162.    As and for Plaintiffs' Complaint, Paragraph 162, Defendants deny each and every allegation as drafted.

163.    As and for Plaintiffs' Complaint, Paragraph 163, Defendants deny each and every allegation as drafted.

## <u>COUNT X</u>

164.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

165.    As and for Plaintiffs' Complaint, Paragraph 165, Defendants deny each and every allegation as drafted.

166.    As and for Plaintiffs' Complaint, Paragraph 166, Defendants deny each and every allegation as drafted.

167.    As and for Plaintiffs' Complaint, Paragraph 167, Defendants deny each and every allegation as drafted.

168.    As and for Plaintiffs' Complaint, Paragraph 168, Defendants deny each and every allegation as drafted.

169.    As and for Plaintiffs' Complaint, Paragraph 169, Defendants deny each and every allegation as drafted.

170.    As and for Plaintiffs' Complaint, Paragraph 170, Defendants deny each and every allegation as drafted.

## <u>COUNT XI</u>

171.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

172.    As and for Plaintiffs' Complaint, Paragraph 172, Defendants deny each and every allegation as drafted.

173.    As and for Plaintiffs' Complaint, Paragraph 173, Defendants deny each and every allegation as drafted.

174.    As and for Plaintiffs' Complaint, Paragraph 174, Defendants deny each and every allegation as drafted.

175.    As and for Plaintiffs' Complaint, Paragraph 175, Defendants deny each and every allegation as drafted.

176.    As and for Plaintiffs' Complaint, Paragraph 176, Defendants deny each and every allegation as drafted.

177.    As and for Plaintiffs' Complaint, Paragraph 177, Defendants deny each and every allegation as drafted.

## COUNT XII

178.    Defendants repeat and reallege the foregoing responses as if set forth more fully hereunder.

179.    As and for Plaintiffs' Complaint, Paragraph 179, Defendants deny each and every allegation as drafted.

180.    As and for Plaintiffs' Complaint, Paragraph 180, Defendants deny each and every allegation as drafted.

181.    As and for Plaintiffs' Complaint, Paragraph 181, Defendants deny each and every allegation as drafted.

182.    As and for Plaintiffs' Complaint, Paragraph 182, Defendants deny each and every allegation as drafted.

## PRAYER FOR RELIEF

183.    Defendants deny that Plaintiffs are entitled to any enumerated prayer for relief.

**AFFIRMATIVE DEFENSES**

184.    As and for a First Affirmative Defense, Plaintiffs fail to state a claim upon which relief may be granted.

185.    As and for a Second Affirmative Defense, Plaintiffs failed to mitigate their damages.

186.    As and for a Third Affirmative Defense, Plaintiffs are at fault for any damages arising from Plaintiffs' alleged claims.

187.    As and for a Fourth Affirmative Defense, Plaintiffs have unclean hands.

188.    As and for a Fifth Affirmative Defense, Plaintiffs' claims are barred by the doctrines of waiver, estoppel, and consent.

189.    As and for a Sixth Affirmative Defense, Plaintiffs' claims are barred by the statute of limitations.

190.    As and for a Seventh Affirmative Defense, Plaintiffs' claims are barred by the doctrine of laches.

191.    As and for an Eighth Affirmative Defense, Plaintiffs' claims are barred as a result of Defendants exercising reasonable care.

192.    As and for a Ninth Affirmative Defense, Plaintiffs' damages are speculative.

193.    As and for a Tenth Affirmative Defense, Plaintiffs have no damages or injury.

194.    As and for a Eleventh Affirmative Defense, Plaintiffs ratified Defendants' conduct.

195.    As and for a Twelfth Affirmative Defense, Defendants' actions were justified under the circumstances.

196.    As and for a Thirteenth Affirmative Defense, Plaintiffs' allegations against Defendants lack causation to their damages.

197.    As and for a Fourteenth Affirmative Defense, Plaintiffs materially breached their obligations of good faith and fair dealing.

198.    As and for a Fifteenth Affirmative Defense, Defendants are indemnified and held harmless for any and all claims alleged.

199.    As and for a Sixteenth Affirmative Defense, Plaintiffs would be unjustly enriched by recovery.

## COUNTERCLAIMS

200.    Counterclaim Plaintiffs Braya Concepts LLC, Braya Machine Company LLC, Braya Systems LLC, Braya Ventures LLC, Michael Donnolo, John Michael Long and Joshua Donnolo (collectively, the "Counterclaim Plaintiffs"), both individually and, in the case of Michael Donnolo, derivatively on behalf of Tecspec LLC ("Tecspec"), by and through their undersigned attorneys, for their counterclaims against Counterclaim Defendants Ralph Schlenker, Robert Senia and Richard Rose (the "Individual Counterclaim Defendants"), SRS Enterprises Inc., SRS Enterprises NJ LLC, HVAC Service Associates Inc., SRS Research LLC, Numa Products, LLC, and Christina Senia (collectively, the "Additional Counterclaim Defendants" and, together with the "Individual Counterclaim Defendants," the "Counterclaim Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## PARTIES

201.    Counterclaim Plaintiff Braya Concepts LLC ("Braya Concepts") is a limited liability company organized under the laws of New York and located in Richmond County, New York.

202.    Counterclaim Plaintiff Braya Machine Company LLC ("Braya Machine") is a limited liability company organized under the laws of New York and located in Richmond County, New York.

203.    Counterclaim Plaintiff Braya Systems LLC ("Braya Systems") is a limited liability company organized under the laws of New York and located in Richmond County, New York.

204.     Counterclaim Plaintiff Braya Ventures LLC ("Braya Ventures" and, together with Braya Concepts, Braya Machine and Braya Systems, "Braya") is a limited liability company organized under the laws of New York and located in Richmond County New York.

205.     Counterclaim Plaintiff Michael Donnolo is an individual residing in New York, New York. Michael Donnolo formed Braya and was, until in or about June 2025, their sole owner.

206.     Counterclaim Plaintiff John Michael Long is an individual residing in New York, New York. Long was an employee of Tecspec until October 17, 2024. Since in or about June 2025, he has been a 49 percent owner of Braya.

207.     Counterclaim Plaintiff Joshua Donnolo is an individual residing in New York, New York. Joshua Donnolo was an employee of Tecspec until October 17, 2024. Since in or about June 2025, he has been a 51 percent owner of Braya.

208.     Upon information and belief, Counterclaim Defendant Ralph Schlenker ("Schlenker") is a resident of New York.

209.     Upon information and belief, Counterclaim Defendant Robert Senia ("Senia") is a resident of New Jersey.

210.     Upon information and belief, Counterclaim Defendant Richard Rose ("Rose") is a resident of New Jersey.

211.     Upon information and belief, SRS Enterprises Inc. ("SRS NY") is a New York corporation owned and operated by the Individual Counterclaim Defendants, and which has its principal place of business is located in Brooklyn, New York.

212.     Upon information and belief, SRS Enterprises NJ LLC ("SRS NJ") is a New Jersey corporation owned and operated by the Individual Counterclaim Defendants, with offices in Brooklyn, New York and Middletown, New Jersey.

213.    Upon information and belief, HVAC Service Associates, Inc. ("HVAC Service") is a New Jersey corporation owned and operated by the Individual Counterclaim Defendants, and located in Middletown, New Jersey.

214.    Upon information and belief, SRS Research LLC ("SRS Research") is a New York corporation owned and operated by the Individual Counterclaim Defendants, and which is located in Middletown, New Jersey. The Counterclaim Plaintiffs refer to SRS NY, SRS NJ, HVAC Service and SRS Research collectively as "SRS."

215.    Upon information and belief, Additional Counterclaim Defendant Christina Senia is a resident of New York.

216.    Upon information and belief, Additional Counterclaim Defendant Numa Products, LLC ("Numa") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York, New York. Upon further information and belief, the Individual Counterclaim Defendants maintain an indirect ownership interest in Numa.

217.    Tecspec is a limited liability company organized under the laws of the State of New York, with its place of business in Newark, New Jersey. Tecspec is doing or has done business in the following counties in New York: New York County, Kings County, Queens County and the Bronx. In addition, Tecspec is doing or has done business in Hudson County and Cape May County, New Jersey.

## JURISDICTION AND VENUE

218.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises in part under federal law, specifically the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.).

219.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the state law claims that are part of the same case or controversy as the federal claims.

220.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Counterclaim Defendants reside in or conduct business within this jurisdiction.

**STATEMENT OF FACTS**

**A.**     **The Formation of Tecspec**

221.     Michael Donnolo is an engineer with decades of experience, including in the heating, cooling and ventilation ("HVAC") industry. The Individual Counterclaim Defendants, by contrast, have no such experience or expertise.

222.     In or about 2017, Michael Donnolo conceptualized and executed the technical blueprints for a range of thermal and fluid-management technologies, including freeze protection systems, pump skids, and induction units. Furthermore, he developed end-to-end manufacturing protocols specifically tailored for freeze protection systems, optimizing the transition from initial design to industrial application. This foundational work proved pivotal, effectively laying the groundwork for Tecspec to fully develop a wide-ranging portfolio of subsequent products.

223.     Senia recognized the commercial possibilities of the prototype that Michael Donnolo had created. Senia also recognized, however, that he lacked the technical background or ability to design, manufacture, and sell that product without Michael Donnolo's expertise. Senia proposed that Michael Donnolo and he create a company to commercialize the technology that Michael Donnolo had developed. Michael Donnolo agreed.

224.     In or about February 24, 2017, Senia and Michael Donnolo created Tecspec, a limited liability company formed under the laws of the State of New York. While Senia and Michael Donnolo had originally conceived Tecspec, Senia arranged for his daughter, Christina Senia, to be a surrogate owner of 75 percent of Tecspec. Senia did so to qualify as a Women-Owned Business Enterprise, which would give Tecspec an advantage when bidding on certain projects. Michael Donnolo owned the other 25 percent of Tecspec.

**B.    Tecspec's Operating Agreement**

225.    Tecspec is governed by the Operating Agreement of Tecspec, LLC, dated as of October 6, 2017 (the "Operating Agreement"). Attorneys at Cole Schotz, P.C., which represented Senia, drafted the Operating Agreement at Senia's request. The Operating Agreement reflected that Michael Donnolo and Christina Senia were Tecspec's only two members and managers, with Christina Senia holding a 75 percent interest in the company and Michael Donnolo owning the remaining 25 percent.

226.    Section 8.5 of the Operating Agreement provides that Tecspec's managers "may have other businesses" and "may engage in other activities in addition to those related to" Tecspec:

> The Managers Have No Exclusive Duty to the Company. The Managers shall not be required to manage the Company as their sole and exclusive function and they may have other business interests and, subject to the provisions of Section 25 hereof (to the extent a Manager is also a Member) may engage in other activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Agreement, to share or participate in such other investments or activities of the Managers or to the income or proceeds derived therefrom.

227.    Section 19 of the Operating Agreement allows Tecspec's members to "engage in other business ventures of every nature," including "the ownership of another business similar to that operated by" Tecspec:

> Except as otherwise provided in Section 25 hereof, any Member may engage in other business ventures of every nature, including, without limitation by specification, the ownership of another business similar to that operated by this Company. Neither the Company nor any of the other Members shall have any right or interest in any such independent ventures or to the income and profits derived therefrom.

228.    Both Sections 8.5 and 19, however, are subject to Section 25.1 of the Operating Agreement (the "Noncompetition Provision"), which precludes members from engaging in a "business which competes" with Tecspec if that competing business "is located in any county in which [Tecspec] is doing or has done business":

Except as otherwise provided herein, each Member covenants and agrees that while he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation, limited liability company, association or syndicate, as a principal, agent, member, partner, shareholder, employee, independent contractor, or in any other manner whatsoever, carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with the Company, which is located in any county in which the Company is doing or has done business. In addition, for a period of four (4) years after a Member is no longer either a Member or employee of the Company, he shall not solicit business, accept business from, or deal with in any matter whatsoever, any customer or account of the Company.

**C.** **Christina Senia Assigns Her Interest in Tecspec to Robert Senia, Richard Rose and Ralph Schlenker, Who Become Members and Managers of Tecspec**

229.    At some point not long after Tecspec's formation, Christina Senia assigned her 75 percent interest in Tecspec to the Individual Counterclaim Defendants, with each receiving an equal 25 percent share, while Michael Donnolo retained his 25 percent interest. In addition, the Individual Counterclaim Defendants were each appointed as managers of Tecspec along with Michael Donnolo. To memorialize these events, the Individual Counterclaim Defendants and Michael Donnolo executed the First Amendment to Operating Agreement, dated as of January 1, 2018 (the "First Amendment").

230.    As set forth in the First Amendment, the Individual Counterclaim Defendants agreed to be bound by, ratified and confirmed the Operating Agreement, as amended by the First Amendment. None of the amendments set forth in the First Amendment altered the terms of Sections 8.5, 19 or 25.1 of the Operating Agreement.

**D.** **Michael Donnolo Designs Multiple Commercially Viable Products for Tecspec**

231.    As Robert Senia and Michael Donnolo had intended, Tecspec's business centered on research, development, and manufacturing for HVAC-related technology. The First Amendment provided that Tecspec's managers—*i.e.*, the Individual Counterclaim Defendants and

Michael Donnolo—would manage the day-to-day operations of Tecspec as a group, with a major-ity vote of the managers required to take action. In practice, however, the Individual Counterclaim Defendants lacked the expertise, ability, or desire to research, develop or manufacture HVAC-related technology. Those tasks accordingly fell to Michael Donnolo, who was the only engineer among the group with the requisite expertise and ability.

232.    Under Michael Donnolo's guidance, Tecspec developed a variety of HVAC prod-ucts, including:

      i.     HVAC induction units, which are devices used in commercial spaces to dis-tribute air efficiently;

      ii.     Machined-metal grilles, which cover HVAC components, units and equip-ment;

      iii.     Heating and cooling pump skids, which are trailer-sized packaged equip-ment which combine specialty heating and cooling components and appur-tenances;

      iv.     Personal air diffusers, which are ceiling versions of an HVAC air vent;

      v.     Packaged pump systems, which are smaller versions of heating and cooling pump skids;

      vi.     Fan coils, which is a different type of HVAC system;

      vii.     Freeze protection systems, which are devices that prevent HVAC coils from freezing; and

      viii.     Hot water heaters, which heat domestic water.

233.    Michael Donnolo was assisted in these efforts by his brother, Joshua Donnolo, and John Michael Long, both of whom are engineers. Joshua Donnolo and Long were employed by SRS prior to employment by Tecspec.

**E.    The Individual Counterclaim Defendants Fail to Support Tecspec, and Then Com-pete Against It Through SRS**

234.    The Individual Counterclaim Defendants did not play any meaningful role in de-veloping any of Tecspec's products. Indeed, they rarely, if ever, even set foot in Tecspec's offices.

Where the Individual Counterclaim Defendants were supposed to add value, however, was in selling Tecspec's products.

235.    At the time that the Individual Counterclaim Defendants became members and managers of Tecspec, they also owned and operated SRS, which purported to be a so-called "manufacturer's representative," selling the products for various HVAC manufacturers.

236.    The Individual Counterclaim Defendants promised that SRS would market and sell Tecspec's HVAC products. SRS and Tecspec never entered into a written agreement regarding the relationship, and Tecspec never agreed that SRS could sell HVAC products from other manufacturers. In fact, consistent with the terms of the Noncompetition Provision, Michael Donnolo understood that SRS would not sell HVAC products from other manufacturers if Tecspec also had sold that same type of HVAC product, or other products that were similar or competitive. The Individual Counterclaim Defendants confirmed this understanding through their conduct. Specifically, when Tecspec developed an HVAC induction unit for sale, SRS immediately ceased selling induction units from other HVAC manufacturers.

237.    But the Individual Counterclaim Defendants' fidelity to the Noncompetition Provision did not last. As Michael Donnolo later learned, SRS sold competing manufacturers' products, including to projects where Tecspec originally had provided the same products. For example, Tecspec sold freeze protection systems for the first phase of a residential real estate development project at Hallets Point in Queens County. Tecspec sold those products to the customer through SRS. Michael Donnolo subsequently discovered, however, that SRS had sold a different, competing manufacturer's freeze protection units to the customer for the second phase of that same project. Nor did the Individual Counterclaim Defendants tell Michael Donnolo (their partner in Tecspec) that SRS had done so. Instead, Michael Donnolo learned that SRS was selling a competing manufacturer's products to the same customer from a former colleague who was working on the second phase of the project.

238.    Nor was this the only time that SRS sold products from competing manufacturers when Tecspec manufactured the same product. Indeed, after Tecspec designed, engineered and manufactured heating and cooling pump skids for projects at City Point in Brooklyn and 675 Third Avenue in Manhattan, Michael Donnolo learned that SRS was working with other manufacturers to manufacture pump skids for other projects. Upon information and belief, Senia provided Tecspec's designs to these competitors to manufacture these products. Since that time, SRS has not sold a single pump skid for Tecspec.

239.    SRS likewise sells other products for Tecspec's competitors that Tecspec also has designed, engineered and manufactured. For example, SRS's line card, which lists the manufacturers that it represents, provides that SRS sells fan coils from Williams and Unilux, grilles from Metalaire, hot water heaters from Airtherm, and pump skids from Glacier. Tecspec has made and sold all of those products for various projects in Manhattan, Brooklyn, Queens and/or the Bronx, as well as parts of New Jersey.

240.    There is more. SRS also has acted as an independent subcontractor for HVAC projects at Geffen Hall at Lincoln Center and at the Parker Hotel in New York County. As Robert Senia has admitted under oath in litigation pending in the Supreme Court of the State of New York, SRS was not the agent of an HVAC manufacturer in those projects, but instead independently contracted with the mechanical subcontractor to provide fan coils, which it then independently purchased from a manufacturer called MDL Solutions. Tecspec also manufactures fan coils, and could have provided the fan coils for both projects.

241.    Furthermore, SRS's work on those projects went far beyond merely providing the HVAC equipment. With respect to the Lincoln Center project, for example, Senia stated, under oath, that "SRS reengineered and redesigned the Project's HVAC installation" and "developed an entirely new set of drawings." This, however, is precisely what Tecspec does. Indeed, the drawing that Senia attached to his affirmation as an example was created by Tecspec, which Robert Senia

falsely stated was "wholly owned by SRS" and "function[ing] as SRS' HVAC design branch." In addition, Senia admits that SRS "played a direct and active role in Project execution with respect to the scope of work relating to the HVAC system." Among other things, "SRS coordinated HVAC-related work" with the manufacturer and subcontractor, "verified equipment performance," "ensured proper retrofitting" of the manufacturer's "supplied units," and "separately supplied thermostats and related tools for the Project."

242.    Senia also admitted that SRS provided similar work at the Parker Hotel project, where SRS "submitted its proposal for the HVAC work directly to" the mechanical subcontractor, JDP and then "worked directly with JDP and the Project engineer on the design, style and mechanics of the HVAC system to be installed at the Project." As with the project at Lincoln Center, SRS "also played a direct role in executing the HVAC-related work."

243.    These were not isolated incidents. In fact, while Senia contended that SRS did not act as the agent of the HVAC manufacturer in either the Lincoln Center project or the Parker Hotel project, SRS has confirmed to this Court that it performs the same "technical, redesign and engineering services" whenever it serves as a "manufacturer's representative." ECF No. 177 at 3. As SRS has explained, "if Manufacturer A hires SRS to serve as its manufacturer's representative, the scope of SRS's work for Manufacturer A includes those technical, redesign, and engineering components." *Id.*

244.    Each of the examples set out above constitutes a breach of the Noncompetition Provision by the Individual Counterclaim Defendants. Each of the Individual Counterclaim Defendants is a member and manager of Tecspec. As such, under the Noncompetition Provision, they cannot "carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with" Tecspec if that competing business "is located in any county in which [Tecspec] is doing or has done business." Here, the Individual Counterclaim Defendants own and operate SRS, which is located in Kings County, New York—its principal place of business. As set

forth above, moreover, SRS competes—"in whole or in part"—with Tecspec. By carrying on, engaging in, being connected with and interested in SRS, the Individual Counterclaim Defendants therefore are breaching the Noncompetition Provision.

**F.    The Individual Counterclaim Defendants Manufacture and Sell a Competing Product Through Numa**

245.    SRS was not the only entity through which the Individual Counterclaim Defendants competed with Tecspec. At Senia's direction, Tecspec spent approximately 750 hours developing personal air diffusers. However, when the personal air diffusers were ready to be commercialized, Senia handed a copy of the product designs to Numa, a company he created to manufacture, sell, and distribute the product.

246.    Numa competes with Tecspec by selling personal air diffusers using the very designs that Tecspec developed.

247.    Numa is located in New York County, New York because that its principal office is at 80 Pine Street, 12th Floor, New York, New York. Tecspec has done or is doing business in New York County.

248.    SRS Research owns on third of Numa. The Individual Counterclaim Defendants each own one-third of SRS Research. Senia, Rose, and Schlenker therefore are each indirect owners of Numa.

249.    Because the Individual Counterclaim Defendants are carrying on, connected with and interested in Numa, which is a competing manufacturing company that is located in a county in which Tecspec has done business, they are in breach of the Noncompetition Provision.

**G.    The Individual Counterclaim Defendants Force Tecspec to Sell Products at a Loss**

250.    Even when SRS did successfully sell Tescpec products, the Individual Counterclaim Defendants used their majority control of Tecspec to force Tecspec to sell those products to SRS at a loss, only for SRS to then turn around and mark up the price of those products to the end-

user, thereby locking in a profit for SRS—and by extension, the Individual Counterclaim Defendants. This profit, of course, came at the expense of Tecspec and Michael Donnolo, who was the only member of Tecspec that did not also have an ownership interest in SRS.

251. The Individual Counterclaim Defendants forced Tecspec to sell its products to SRS at a loss in at least the following instances:

| DATE | CUSTOMER | SRS PO# | DESCRIPTION | AMOUNT | | |
|---|---|---|---|---|---|---|
| 11/22/2022 | SRS | 2208-0061-1-C | INDUCTION UNITS | $7,200.00 | | |
| 11/22/2022 | SRS | 1705-0349-3-A | 217 GRILLES | $12,355.00 | | |
| 09/16/2020 | SRS | 1705-0349-2-A | 217 GRILLES | $106,886.13 | | |
| 9/27/2018 | SRS | 1705-0349-1-B | 217 GRILLES | $4,675.00 | | |
| 09/27/2018 | SRS | 1705-0349-1-B-3 | 217 GRILLES | $16,950.68 | | |
| 05/18/2022 | SRS | 1904-0262-9-B | 660 ENCLOSURE | $9,924.00 | | |
| 04/26/2022 | SRS | 1904-0262-9-A | 660 VALVES | $1,191.00 | | |
| 06/14/2022 | SRS | 2206-0222-1-A | COIL | $467.50 | | |
| 04/08/2022 | SRS | 2109-0092-2-A | 1633 INDUCTION UNITS | $4,700.00 | | |
| 01/12/2022 | SRS | 2003-0012-4-B | GEFFEN HALL CONTROLS | $92,059.30 | | |
| 11/4/21 | SRS | 2006-0411-1-T | PIQCV Valves ... | $18,282.60 | | Childrens Zone K-4 Charter Sendero Verde |
| 1/13/22 | SRS | 2108-0065-1-B | 46 belimo valves | $9,037.80 | | Lever House - Project 200272-01 |
| 2020 | SRS | 1807-00291A04 | 825 INDUCTION UNITS | $3,208,333.33 | | |
| 2020 | SRS | 1807-00291B05 | 825 GRILLES | $575,000.00 | | |
| 2019 | SRS | 1705-0349-1 | 217 GRILLES | $1,000,000.00 | ESTIMATED | |
| 10/01/2020 | SRS | 1904-0262-1 | 660 GRILLES | $2,300,000.00 | ESTIMATED | |
| 2018 | SRS | | 675 INDUCTION UNITS | $500,000.00 | ESTIMATED | |
| 2019 | SRS | | 733 INDUCTION UNITS | $500,000.00 | ESTIMATED | |
| 2018 | SRS | | 675 GRILLES | $300,000.00 | ESTIMATED | |
| 2019 | SRS | | 733 GRILLES | $300,000.00 | ESTIMATED | |
| 08/20/2021 | | 2106-0295-1-A | 2 PENN PLAZA | $5,970,149.25 | | |
| | | | | $14,937,211.59 | TOTAL | |

252. In each of these cases, the Individual Counterclaim Defendants controlled the price at which Tecspec sold the products to SRS—a flagrant conflict of interest. Indeed, even where one or more of the Individual Counterclaim Defendants discussed the price with Michael Donnolo beforehand, they then unilaterally undercut that price later one. For example, for the project at 2 Penn Plaza in New York County, the Individual Counterclaim Defendants and Michael Donnolo discussed and agreed to propose a sale price of $6.8 million dollars. But when the time came to make a proposal, Rose unilaterally dropped the price to $6.5 million without Michael Donnolo's prior knowledge or input.

## H.  Christina Senia Breaches the Noncompetition Provision

253. As an original member and manager of Tecspec, Christina Senia was bound by the Noncompetition Provision both while she held those positions and afterwards. Christina Senia accordingly could not "carry on or be engaged in, or connected with or interested in any business

which competes, in whole or in part, with" Tecspec if that competing business "is located in any county in which [Tecspec] is doing or has done business." As discussed above, SRS is located in Kings County, New York, where Tecspec is doing or has done business. In addition for a period after a Member is no longer either a Member or an employee of the Company, he shall not solicit business, accept business from, or deal with in any manner whatsoever, any customer or account of the Company.  Yet after leaving Tecspec, Christina Senia went to work at SRS. Because SRS competes with Tecpec "in whole or in part," and because SRS is customer and an account of Tecspec she has breached the Noncompetition Provision. Christina Senia worked on at a minimum the Parker Hotel and Lincoln Center projects which SRS manufactured equipment for sale.

## I.    Michael Donnolo Forms Braya and Creates its Trade Secrets

254.    In 2023, Michael Donnolo created Braya, which designs, manufacturers and sells HVAC induction units.

255.    Braya is, and always has been, located in Richmond County, New York. Tecspec has never done business in Richmond County. Michael Donnolo therefore was permitted to own and operate Braya under the terms of Tecspec's Operating Agreement.

256.    Braya designs and manufacturers its induction units using proprietary technology and manufacturing methods that Michael Donnolo developed through his own extensive labor and skill, and a substantial amount of money (the "Trade Secrets"). The Trade Secrets include the customization, modification, re-construction, and programming of industrial machines so that they operate in unique ways. The Trade Secrets also include (i) the system that Braya designed and manufactured to machine components, (ii) Braya's manufacturing method for affixing the discharge tube to the inlet tube, (iii) the manufacturing method for insulating plenums, (iv) the manufacturing method for affixing the inlet tube ring, and (v) the design and assembly of the gasket interface.

257.    The Trade Secrets are extremely valuable to Braya. Braya maintains its competitive advantage through the Trade Secrets because the Trade Secrets enable Braya to design, produce and manufacture induction units in a more precise and efficient method at a fraction of the time and expense of its competitors.

258.    These Trade Secrets are not generally known to the public or to others who can obtain economic value from their use. The Trade Secrets likewise are not readily ascertainable through proper means by others who can obtain economic value from their disclosure or use.

259.    Braya has exercised reasonable efforts to preserve the secrecy of its Trade Secrets by, among other things, (i) locking and monitoring its facility with security system and video camera; (ii) maintaining its designs in a protected cloud environment that requires dual-factor authentication to access; and (iii) limiting access to its facility only to authorized persons.

**J.     Senia and Rose Trespass on Braya's Facility and Misappropriate Braya's Trade Secrets**

260.    On October 14, 2024, Senia, while speaking on the phone at Tecspec, he repeatedly said "they're all dead," including two former SRS employees who worked closely with Tecspec. The Individual Counterclaim Defendants understood this threat to be directed at them. This was not the first time that Senia had made death threats directed at the Individual Counterclaim Defendants. Indeed, two years earlier, Senia threatened to go home and get his gun and return to kill everyone associated at Tecspec—including the Individual Counterclaim Defendants, and then to kill himself. At that time, Senia also pushed Joshua Donnolo and later told Long that he would "bash [Joshua Donnolo's] head in until I see his brain on the cement."

261.    On October 17, 2024, at approximately 12:34 PM, Richard Rose dropped off Robert Senia near the entrance of the Braya facility located at 2589 Richmond Terrace, Staten Island, New York ("Premises") with the apparent intent to "case the property."

262.     Shortly thereafter, at 12:45 PM, Senia and a third individual entered the Premises in a Chevy Colorado (New York license plate number KPU5916).

263.     At the same time, Rose walked onto the Premises, followed by two other individuals.

264.     Once on-site, Senia began taking pictures.

265.     At approximately 12:47 PM, Michael Donnolo encountered Robert Senia, Rose, and the unidentified third person while Michael Donnolo was in his Smart Car.

266.     Michael Donnolo instructed them to leave the Premises, as captured in video footage.

267.     In response, Senia defiantly stated, "I'm not doing that."

268.     Following this confrontation, Michael Donnolo called 911 at around 12:47 PM and waited at the front of the Premises for officers to respond.

269.     Concurrently, at approximately 12:47 PM, Senia, Rose, and the unidentified individual opened a previously closed door at the back of the Braya facility, thereby trespassing.

270.     While inside, Robert Senia and Rose systematically took pictures of equipment, machinery, and other non-public information within the facility, actions documented in video footage. These pictures included the Trade Secrets.

271.     Around the same time, Joshua Donnolo also called 911 to report the ongoing incident.

272.     Despite being told multiple times to leave the facility, Senia and Rose continued to trespass and to take pictures without consent, as reflected in footage from Joshua Donnolo and John Michael Long's respective cell phones.

273.     The first police officers arrived on the scene at 1:03 PM, as referenced in video footage.

274. Senia, Rose, and the unidentified third person left the Premises only after the police officers instructed them to do so.

275. Ultimately, Senia, Rose, and the third person left the property at 1:14 PM, concluding the unauthorized entry and actions within the Braya facility, taking with them photographs of Braya operations and Trade Secrets.

276. Upon information and belief, Senia and Rose have attempted to use, and will continue to attempt to use, the Trade Secrets for their own competitive advantage by using the pictures of the Trade Secrets to try to replicate Braya's unique manufacturing methods.

277. Senia and Rose knew or had reason to know that their misappropriation was improper because they were directed multiple times either to not enter, or to leave, Braya's facility.

**PRESUIT DEMAND AS TO MICHAEL DONNOLO'S DERIVATIVE
CLAIMS ON BEHALF OF TECSPEC WOULD HAVE BEEN FUTILE**

278. Michael Donnolo currently is a member of Tecspec and has continuously been a member of Tecspec since it was formed in February 2017.

279. Michael Donnolo will adequately and fairly represent the interests of Tecspec and its members in enforcing and prosecuting its rights. He has retained competent and experienced counsel.

280. Michael Donnolo did not make a demand on Tecspec's other members/managers to investigate or assert any counterclaims belonging to Tecspec because such a demand would have been futile.

281. Demand is excused because the majority of Tecspec's members were interested in the transactions at issue and in fact committed the wrongdoing and breaches of fiduciary duty that are the subject of Tecspec's claims.

282. Since January 1, 2018, the four members and managers of Tecspec have been Michael Donnolo, Robert Senia, Richard Rose, and Ralph Schlenker. Under Tecspec's Operating

Agreement, the managers act as a group, with a majority vote of the managers required to take action with respect to day-to-day management of the Company and an affirmative vote of 75 percent of the managers necessary to take any "[e]xtraordinary decisions." In either case, the result is the same: the approval of three of Tecspec's four managers are required for Tecspec to take any action.

283.    Senia, Rose, and Schlencker are interested because they each stand on both sides of the transactions at issue and received direct and material personal financial benefits from those transactions that are different from the benefits to all members of Tecspec, including Donnolo. Indeed, as discussed in greater detail above, Senia, Rose and Schlenker have breached their duties on the Noncompetition Provision and their fiduciary duty of loyalty by competing with Tecspec through SRS.  Robert Senia, Rose, and Schlenker also have used their control over Tecspec to force Tecspec to sell products to the SRS Entities at a loss so that the SRS Entities can then sell those products to third-party customers at substantially increased prices, and to divert corporate opportunities from Tecspec to other entities that they owned and or controlled. Robert Senia, Rose, and Schlenker receive direct and material financial benefits from those transactions at the expense Tecspec and its other shareholder—*i.e.*, Donnolo.  Robert Senia, Rose, and Schlenker therefore cannot impartially consider a demand that they cause Tecspec to assert claims against themselves for these transactions.

284.    Senia, Rose, and Schlenker likewise could not impartially consider a demand to sue Christina Senia. Apart from being Senia's daughter, Christina has worked hand in hand with Senia, Rose, and Schlenker to divert business opportunities from Tecspec to SRS, where she is now the chief operating officer. These actions, which directly benefit Senia, Rose, and Schlenker, are in breach of Christina Senia's obligations under the Noncompetition Provision of Tecspec's Operating Agreement—the same provision that Senia, Rose, and Schlenker themselves have violated. Senia, Schlenker and Rose could no more consider a demand to cause Tecspec to sue Christina

Senia than they could impartially consider a demand to cause Tecspec to sue themselves for same related conduct.

285.    Furthermore, demand is also excused because the transactions at issue were so egregious on their face that they could not have been the product of sound business judgment. By competing with Tecspec, diverting corporate opportunities from Tecspec, and causing Tecspec to produce products at a loss and then sell those same products through SRS to third parties at a substantial markup, Robert Senia, Rose, and Schlenker knew that they were acting to the detriment of Tecspec and Donnolo while enriching themselves. These transactions, from which Senia, Rose, and Schlenker directly benefited, could not have been the product of sound business judgment by them as managers of Tecspec.

## COUNTERCLAIMS

### AS AND FOR A FIRST COUNTERCLAIM FOR RELIEF

*Breach of the Noncompetition Provision*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against the Individual Counterclaim Defendants*

286.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

287.    The Operating Agreement is a valid, binding and enforceable contract.

288.    Tecspec has performed all of its obligations under the Operating Agreement.

289.    As applied to the Individual Counterclaim Defendants, the Noncompetition Provision is valid, enforceable, and supported by consideration.

290.    As applied to the Individual Counterclaim Defendants, the Noncompetition Provision is no greater than necessary to protect Tecspec's legitimate business interests, and is not unreasonable harsh or oppressive.

291.    As applied to the Individual Counterclaim Defendants, the restrictions in the Noncompetition Provision are consistent with public policy and industry standards.

- 36 -

292.    As alleged in greater detail above, the Individual Counterclaim Defendants have breached, and continue to breach, the Noncompetition Provision.

293.    Because of the Individual Counterclaim Defendants' breaches of the Noncompetition Provision, Tecspec has suffered and/or will continue to suffer irreparable harm or loss, and has suffered and will continue to suffer financial and economic loss.

294.    The Individual Counterclaim Defendants' breaches of the Noncompetition Provision has proximately caused financial harm to Tecspec in an amount to be proven at trial, but in no event less than $75,000.00.

## AS AND FOR A SECOND COUNTERCLAIM FOR RELIEF

*Breach of the Noncompetition Provision*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against Christina Senia*

295.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

296.    The Operating Agreement is a valid, binding and enforceable contract.

297.    Tecspec has performed all of its obligations under the Operating Agreement.

298.    As applied to Christina Senia, the Noncompetition Provision is valid, enforceable, and supported by consideration.

299.    As applied to Christina Senia, the Noncompetition Provision is no greater than necessary to protect Tecspec's legitimate business interests, and is not unreasonable harsh or oppressive.

300.    As applied to Christina Senia, the restrictions in the Noncompetition Provision are consistent with public policy and industry standards.

301.    As alleged in greater detail above, Christina Senia has breached, and continues to breach, the Noncompetition Provision.

302.    Because of Christina Senia's breaches of the Noncompetition Provision, Tecspec has suffered and/or will continue to suffer irreparable harm or loss, and has suffered and will continue to suffer financial and economic loss.

303.    Christina Senia's breaches of the Noncompetition Provision has aproximately caused financial harm to Tecspec in an amount to be proven at trial, but in no event less than $75,000.00.

## AS AND FOR A THIRD COUNTERCLAIM FOR RELIEF

*Breach of Fiduciary Duty*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against the Individual Counterclaim Defendants*

304.    Counterclaim Plaintiffs reincorporate by reference all preceding allegations as if fully set forth herein.

305.    The Individual Counterclaim Defendants are members and managers of Tecspec and therefore owe fiduciary duties of loyalty and care to Tecspec and its other members, including Michael Donnolo. These duties require the Counterclaim Defendants to avoid self-dealing and conflicts of interest.

306.    As detailed above, the Individual Counterclaim Defendants breached their fiduciary duties by, *inter alia*, competing with Tecspec in a manner that violated the Operating Agreement and byforcing Tecspec to sell products at a loss for the benefit of SRS and its owners, the Individual Counterclaim Defendants, who then marked up the price of those goods and kept the profits for themselves at the expense of Tecspec and Donnolo, who was the sole member of Tecspec who did not have an ownership interest in SRS.

307.    As a result of these breaches, Tecspec has suffered damages, including but not limited to the loss of revenue and business opportunities that were wrongfully diverted to SRS, in an amount to be proven at trial, but in no event less than $75,000.00.

## AS AND FOR A FOURTH COUNTERCLAIM FOR RELIEF

*Breach of Good Faith and Fair Dealing*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against the Individual Counterclaim Defendants*

308.    Counterclaim Plaintiffs reincorporate by reference all preceding allegations as if fully set forth herein.

309.    The Operating Agreement is a valid and enforceable contract.

310.    As members and managers of Tecspec, the Individual Counterclaim Defendants had a duty of good faith and fair dealing and to act honestly, transparently, and with integrity, prioritizing Tecspec's best interests over personal gain. This obligation, implied in the Operating Agreement and recognized by state law, mandated that they as members and managers avoid acting in ways that harmed the company or unfairly oppressed other members by preventing them from benefiting from the fruits of their investments.

311.    As detailed above, the Individual Counterclaim Defendants breached that implied covenant of good faith and fair dealing by, *inter alia*, competing with Tecspec in a manner that violated the Operating Agreement and by forcing Tecspec to sell products at a loss for the benefit of SRS and its owners, the Individual Counterclaim Defendants, who then marked up the price of those goods and kept the profits for themselves at the expense of Tecspec and Michael Donnolo, who was the sole member of Tecspec who did not have an ownership interest in SRS. By doing so, the Individual Counterclaim Defendants placed their own interests above those of Tecspec and Michael Donnolo.

312.    As a result of these breaches, Tecspec has suffered damages, including but not limited to the loss of revenue and business opportunities that were wrongfully diverted to SRS, in an amount to be proven at trial, but in no event less than $75,000.00.

## AS AND FOR A FIFTH COUNTERCLAIM FOR RELIEF

*Corporate Waste, Mismanagement and Self-Dealing*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against the Individual Counterclaim Defendants*

313.    Counterclaim Plaintiffs reincorporate by reference all preceding allegations as if fully set forth herein.

314.    As alleged in greater detail above, the Individual Counterclaim Defendants, as controlling members of Tecspec, had a duty not to engage in or direct transactions that lack rationality and amounted to corporate waste, mismanagement or self-dealing.

315.    The Individual Counterclaim Defendants breached this duty by diverting Tecspec's corporate assets for improper or unnecessary purposes. First, the Individual Counterclaim Defendants, through SRS, directed sales to other HVAC manufacturers or directly subcontracted projects to other manufacturers, when Tecspec was willing, ready and able to complete those projects itself. Second, the Individual Counterclaim Defendants took designs that Tecspec created for personal air diffusers, which Tecspec created at great expense, and gave them to Numa to manufacture and sell. The Individual Counterclaim Defendants all also possessed indirect ownership interests in Numa, whereas Michael Donnolo did not. Third, the Individual Counterclaim Defendants forced Tecspec to sell products to SRS at a loss so that SRS could profit by reselling those products to third parties at marked up prices that SRS did not share with Tecspec.

316.    The Individual Counterclaim Defendants' actions were so opposed to Tecspec's corporate interest that no reasonable manager of ordinary, sound judgment acting in good faith could have approved them, and they amounted to waste, mismanagement and self-dealing.

317.    The Individual Counterclaim Defendants' actions proximately caused Tecspec to suffer actual harm in an amount to be proven at trial, but in no event less than $75,000.00.

## AS AND FOR A SIXTH COUNTERCLAIM FOR RELIEF

*Unjust Enrichment*
*By Michael Donnolo Derivatively on behalf of Tecspec*
*Against SRS and Numa*

318.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

319.    SRS and Numa have unjustly benefited at Tecspec's expense by receiving and using valuable information and technology developed by Tecspec and provided by the Individual Counterclaim Plaintiffs to directly compete with Tecspec .

320.    There is no enforceable contract between SRS and Tecspec.

321.    There is no enforceable contract between Numa and Tecspec.

322.    SRS and Numa have derived profits and otherwise benefited from directly competing with Tecspec by using valuable information and technology developed by Tecspec at Tecspec's expense.

323.    It is against equity and good conscience to allow SRS and Numa to retain the benefit that they received at Tecspec's expense.

324.    SRS and Numa therefore have been unjustly enriched at Tecspec's expense without compensating Tecspec, requiring restitution to Tecspec

## AS AND FOR AN SEVENTH COUNTERCLAIM FOR RELIEF

*Violation of 18 U.S.C. § 1836 (Defend Trade Secrets Act)*
*By Braya Against Robert Senia and Richard Rose*

325.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

326.    Braya owns the Trade Secrets, which are confidential, proprietary, and secret information that constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).

327.    Braya developed the Trade Secrets through an extensive investment of labor, skill, money and/or knowledge gained from experience in its markets.

328.    Braya has taken reasonable measures to keep the Trade Secrets secret.

329.    Braya derives independent economic value from the Trade Secrets not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from the acquisition, disclosure, or use of the information.

330.    In violation of Braya's rights, Senia and Rose misappropriated the Trade Secrets, thereby injuring Braya.

331.    Senia and Rose misappropriated the Trade Secrets through improper means—*i.e.*, by trespassing in Braya's facility and employing other illegal tactics to take pictures of the Trade Secrets and visually observe Braya's operation. Senia and Rose did so even after they were instructed not to enter the facility and then later were instructed to leave the facility.

332.    Furthermore, upon information and belief, Senia and Rose have attempted to use, and will continue to attempt to use, the Trade Secrets for their own personal competitive advantage by using the pictures of the Trade Secrets and what they visually observed while trespassing and refusing to leave to replicate Braya's unique manufacturing methods and gain a competitive advantage.

333.    As a direct and proximate result of Senia and Rose's conduct, Braya has suffered, and will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial but in no event less than less than $5 million.

### AS AND FOR AN EIGHTH COUNTERCLAIM FOR RELIEF

*Misappropriation of Trade Secrets Under New York Law*
*By Braya Against Robert Senia and Richard Rose*

334.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

335.    Braya owns the Trade Secrets, which are confidential, proprietary, and secret information that constitute trade secrets.

336.    Braya has taken reasonable measures to keep the Trade Secrets secret.

337.    Braya derives independent economic value from the Trade Secrets not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from, the acquisition, disclosure, or use of the information.

338.    In violation of Braya's rights, Senia and Rose misappropriated the Trade Secrets, thereby injuring Braya.

339.    Senia and Rose misappropriated the Trade Secrets through improper means—*i.e.*, by trespassing in Braya's facility and employing other illegal tactics to take pictures of the Trade Secrets and visually observe Braya's operation. Senia and Rose did so even after they were instructed not to enter the facility and then later were instructed to leave the facility.

340.    Furthermore, upon information and belief, Robert Senia and Rose have attempted to use, and will continue to attempt to use, the Trade Secrets for their own personal competitive advantage by using the picture of the Trade Secrets and what they visually observed while trespassing and refusing to leave to replicate Braya's unique manufacturing methods and gain an competitive advantage.

341.    As a direct and proximate result of Senia and Rose's conduct, Braya has suffered, and will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial but in no event less than less than $5 million.

### AS AND FOR A NINTH COUNTERCLAIM FOR RELIEF

*Unjust Enrichment*
*By Braya Against the Individual Counterclaim Defendants*

342.    Counterclaim Plaintiffs repeat and reallege all of the pleadings set forth above as if set forth fully hereunder.

343.    There is no enforceable contract between the Individual Counterclaim Defendants and Braya.

344.    The Individual Counterclaim Defendants have derived profits from Braya by mis-appropriating Braya's Trade Secrets in the manner described above.

345.    It is against equity and good conscience to allow the Individual Counterclaim Defendants to profit at Braya's expense.

346.    The Individual Counterclaim Defendants therefore have been unjustly enriched at Braya's expense without compensating Braya, thereby requiring restitution of its unjust enrichment.

## AS AND FOR A TENTH COUNTERCLAIM FOR RELIEF

*Trespass*
*By Braya against Robert Senia and Richard Rose*

347.    Counterclaim Plaintiffs reincorporate by reference all preceding allegations as if fully set forth herein.

348.    Braya's facility, located at 2589 Richmond Terrace, Staten Island, New York, is a secured premises accessible only to authorized employees, agents, or vendors.

349.    Braya lawfully possesses its facility.

350.    The facility is gated, with locking doors and security cameras, ensuring that no unauthorized individual from the public is permitted to enter without authorization.

351.    On October 17, 2024, Senia, Rose, and an unknown third person unlawfully entered the Braya facility without consent, and remained on the premises without authorization, intending to misappropriate proprietary technology and information.

352.    Their entry was intentional, as Senia and Rose were fully aware they had no right to access the premises. In fact, Senia and Rose were directed not to enter, and then to immediately leave the premises. When Senia and Rose refused to leave, the police were called.

353.    During their unauthorized entry, Senia and Rose systematically took pictures of equipment, machinery, and other non-public information within the facility, and observed Braya's operation, actions documented in video footage.

354.    Braya is entitled to actual damages based on the value of the proprietary information that Senia and Rose misappropriated, as well as punitive damages because Senia and Rose's conduct, as alleged above, was intentional and evinced actual malice involving intentional wrongdoing, and amounted to a wanton, willful, and reckless disregard of Braya's right of possession.

### AS AND FOR AN ELEVENTH COUNTERCLAIM FOR RELIEF

*Assault*
*By the Individual Counterclaim Plaintiffs Against Defendants Robert Senia*

355.    Counterclaim Plaintiffs reincorporate by reference all preceding allegations as if fully set forth herein.

356.    Counterclaim Defendants Senia made specific verbal threats against the personal safety of the Individual Counterclaim Plaintiffs.

357.    Specifically, or about October 14, 2024, Senia was recorded on video making threats to kill "everybody," in addition to other threats.

358.    These threats created a reasonable apprehension of imminent harmful or offensive contact, resulting in psychological distress and fear for the safety of the Individual Counterclaim Plaintiffs.

359.    Senia's conduct constitutes assault, as it involved intentional acts leading to harmful and offensive contact, whether perceived or actual.

360.    By the foregoing, Senia is liable to the Individual Counterclaim Plaintiffs in an amount to be determined at trial.

## INJUNCTION

361.    Counterclaim Plaintiffs allege on-going breaches of the Noncompetition Provision by the Individual Counterclaim Defendants, as well as their common law duties.

362.    Specifically, as detailed above, the Individual Counterclaim Defendants have breached, and continue to breach, the Noncompetition Provision and to divert Tecspec's corporate opportunities for the benefit of SRS and themselves in violation of the implied covenant of good faith and fair dealing and the Individual Counterclaim Defendants' fiduciary duties to Tecspec and Michael Donnolo.

363.    Tecspec lacks an adequate remedy at law for these breaches because they have caused, and continue to cause, Tecspec to suffer irreparable harm.

364.    In addition, Senia and Rose have misappropriated Braya's Trade Secrets and continue to hold them in violation of the Defend Trade Secrets Act and New York law.

365.    Braya lacks and adequate remedy at law for these violations because they have caused, and continue to cause, Tecspec to suffer irreparable harm.

366.    Tecspec and Braya are entitled to preliminary and permanent injunctive relief against the Individual Counterclaim Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully request that this Court enter judgment in their favor and against Counterclaim Defendants Defendant as follows:

    a.    An order preliminarily and permanently enjoining the Individual Counterclaim Defendants and Christina Senia from competing with Tecspec in violation of the Noncompetition Provision;

    b.    An order preliminarily and permanently enjoining the Counterclaim Defendants from possessing, using or disclosing Braya's proprietary information and trade secrets;

    c.    An order preliminarily and permanently enjoining the Counterclaim Defendants from unlawfully competing with Braya using wrongfully obtained information;

d.  An order preliminarily and permanently enjoining the Individual Counter-claim Defendants from violating their duties of loyalty and implied cove-nant of good faith and fair dealing;

e.  An order preliminarily and permanently enjoining SRS and Numa from continuing to unfairly compete with Tecspec and from being unjustly en-riched at Tecspec's expense;

f.  An award of actual damages for lost profits, lost opportunities, and psycho-logical distress;

g.  An award of punitive damages due to the willful and malicious nature of the Counterclaim Defendants' conduct;

h.  A declaration from this Court establishing the proprietary nature of the mis-appropriated information as belonging to Braya and Tecspec, along with an order directing SRS to cease any further use or profit from such information;

i.  An order requiring Counterclaim Defendants to return all proprietary mate-rials and documents belonging to Counterclaim Plaintiffs;

j.  An award of Counterclaim Plaintiffs' attorney's fees, costs, and expenses incurred in connection with this action; and

k.  Such other and further relief in favor of the Counterclaim Plaintiffs as this Court may deem just and proper.

Dated: New York, New York
      February 4, 2026

By:     */s/ Joseph A. Matteo*
        Joseph A. Matteo

BARNES & THORNBURG LLP
390 Madison Avenue, 12th Floor
New York, New York 10017
Telephone: (646) 746-2000
Facsimile: (646) 746-2001
Joseph.Matteo@btlaw.com

*Attorneys for Defendants and Counterclaim
Plaintiffs*

## VERIFICATION

I, Michael Donnolo, declare as follows:

I am a member of Tecspec LLC and have personal knowledge of the facts set out in the foregoing Verified Counterclaims. If called to testify, I would competently testify as to the matters stated therein.

I verify under penalty of perjury that the factual statements in the foregoing Verified Counterclaims are true and correct.

Executed on February 4, 2026.

Michael Donnolo