UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
TECSPEC LLC, et al.,

          Plaintiffs,

     -v-

MICHAEL DONNOLO, et al.,

          Defendants.
```

24-cv-8077 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Defendants/Counterclaim Plaintiffs Michael Donnolo, Joshua Donnolo, John Michael Long, Braya Systems LC, Braya Machine Company LLC, Braya Concepts LLC, and Braya Ventures LLC ("Counterclaim Plaintiffs") move for entry of a preliminary injunction against Plaintiffs/Counterclaim Defendants Ralph Schlenker, Robert Senia, Richard Rose, Christina Senia, Numa Products LLC, SRS Enterprises Inc., SRS Enterprises NJ LLC, HVAC Service Associates, and SRS Research LLC ("Counterclaim Defendants"). See ECF No. 120.

Prior to the assignment of this case to the undersigned Judge, Judge Rearden denied a motion by the Counterclaim Plaintiffs seeking a temporary restraining order against Counterclaim Defendants. See ECF No. 126. After transfer, however, there still remained the request for a preliminary injunction. The Court heard argument on that request on January 27 and 28, 2026, and permitted the parties to file additional post-hearing motions thereafter.

1

Upon full consideration of the parties' submissions and arguments, the Court hereby denies the motion for a preliminary injunction.

I.    Background

According to Counterclaim Plaintiffs, in 2017, Michael Donnolo, an engineer with decades of HVAC industry experience, developed new thermal and fluid-management technologies. ECF No. 209 ¶¶ 221-22. Robert Senia, recognizing the commercial potential of the technology but lacking technical expertise, proposed forming a company to commercialize Michael Donnolo's work. Id. ¶ 223. Michael Donnolo agreed, and the two created Tecspec, LLC in February 2017. Id. ¶¶ 223-24. Senia arranged for his daughter, Christine Senia, to hold 75 percent of Tecspec as a surrogate owner, with Michael Donnolo owning the remaining 25 percent. Id. ¶ 224.

Tecspec is governed by an Operating Agreement. Id. ¶ 225. Sections 8.5 and 19 of that Agreement permit managers and members to engage in other business ventures. Id. ¶¶ 226-27. But Section 25.1 functions as a non-compete, prohibiting members from engaging in "a business which competes, in whole or in part, with [Tecspec], which is located in any county in which the Company is doing or has done business." Id. ¶ 228.

In 2018, Christine Senia assigned her 75 percent interest in Tecspec to Robert Senia, Richard Rose, and Ralph Schlenker (the "Individual Counterclaim Defendants"), who each received an equal

one-third share and were appointed as Tecspec managers. Id. ¶ 229. At the same time that the Individual Counterclaim Defendants managed Tecspec, they also collectively owned and operated entities under the name "SRS," a manufacturer's representative that sold HVAC products on behalf of various manufacturers. Id. ¶ 235. According to the Counterclaim Plaintiffs, the Individual Counterclaim Defendants, or SRS owners, promised that SRS would market and sell Tecspec's products and, consistent with the non-compete, would not sell HVAC products from other manufacturers if Tecspec sold the same or similar products. Id. ¶ 236.

In 2023, Donnolo created Braya, which designs, manufactures, and sells HVAC induction units. Id. ¶¶ 254-56. The Counterclaim Plaintiffs allege that Braya's competitive advantage derives from its own trade secrets. Id. ¶¶ 256-59. They further allege that Robert Senia threatened Counterclaim Plaintiffs, id. ¶ 260, and that in October 2024, Senia and Rose broke into Braya's facility, refused to leave when asked, and misappropriated Braya's trade secrets. Id. ¶¶ 261-77.

The Counterclaim Defendants filed this action in late 2024, alleging that Michael Donnolo violated the non-compete through Braya. They sought a preliminary injunction against Michael Donnolo, Braya, and certain Braya employees. Judge Rearden granted that preliminary injunction on June 6, 2025. ECF No. 147. The Counterclaim Plaintiffs sought in turn a temporary restraining

3

order, ECF No. 120, which, as noted, Judge Rearden denied, ECF No. 126. They also sought a preliminary injunction against the Counterclaim Defendants, ECF No. 120, which is the subject of this Memorandum Order.

## II. Legal Standard

A party seeking a preliminary injunction must show "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of tis claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." QBE Americas, Inc. v. Allen, 2022 WL 889838, at *7 (S.D.N.Y. Mar. 25, 2022). The "sufficiently serious questions" standard permits a district court to grant a preliminary injunction "where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." Citigroup Glob. Markets, Inc. v. VCG Special Opps. Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010).

## III. Discussion

The Counterclaim Plaintiffs, in seeking a preliminary injunction against the Counterclaim Defendants, argue that Tecspec's Operating Agreement includes a non-compete clause that expressly prohibits Tecspec's members from engaging in competing

4

business located in a county where Tecspec has operated or is currently operating. The Counterclaim Plaintiffs allege that the "SRS Owners" -- Richard Rose, Robert Senia, and Ralph Schlenker -- are members of Tecspec and are thus bound by this non-compete clause. The Counterclaim Plaintiffs allege that despite this restriction, the SRS owners formed the SRS Entities, which directly competes with Tecspec in counties where Tecspec conducts business and causes Tecspec irreparable harm that warrants immediate relief.

The Counterclaim Plaintiffs further allege that without an injunction, the SRS Owners will soon drive Tecspec into bankruptcy because the SRS Owners hold a controlling interest in Tecspec and own the SRS Entities and, for years, the SRS owners have arranged for Tecspec to "sell" products to the SRS Entities at a fraction of their true value, to then be resold by SRS Entities at full price. The Counterclaim Plaintiffs also assert that the Counterclaim Defendants have engaged in further misconduct by breaking into the Braya Entities' facility to obtain proprietary trade secrets, interfered with the Braya Entities' prospective business, and falsified business records to secure loans against Tecspec's profits.

Counterclaim Plaintiffs' Amended Counterclaims advance eleven counts, but the preliminary injunction motion rests primarily on five: (1) breach of the noncompetition provision of the Operating

5

Agreement by the Individual Counterclaim Defendants; (2) breach of fiduciary duty; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment of SRS; and (5) misappropriation of Braya's trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. ECF No. 120 at 3. The Court finds, however, that the Counterclaim Plaintiffs have not shown that they are likely to succeed on the merits or likely to suffer irreparable injury. Accordingly, the request for a preliminary injunction is denied.

A. Likelihood of Success on the Merits

1. Breach of the Noncompetition Provision

Section 25.1 of the Operating Agreement prohibits each member of Tecspec from, "directly or indirectly . . . in any . . . manner whatsoever, carry[ing] on or be[ing] engaged in, or connected with or interested in any business which competes, in whole or in part, with [Tecspec], which is located in any county in which [Tecspec] is doing or has done business." DX 1 § 25.1. The threshold question is whether SRS "competes" with Tecspec within the meaning of this provision.

Under Judge Rearden's earlier construction of the Section 25.1, the provision prohibits "business dealings or transactions which compete with Tecspec and are located in a county in which Tecspec is doing or has done business." See ECF No. 147 at 10. Under Counterclaim Plaintiffs' preferred reading of the same

clause, it reaches any transactions with a competing *entity* physically located in such a county. The Court concludes, at this stage, that SRS does not compete with Tecspec under either reading. ECF No. 217 at 16.

Under Judge Rearden's reading of the non-compete clause, the evidentiary record on the competition question cuts against the Counterclaim Plaintiffs. Counterclaim Plaintiffs identify three categories of products that SRS allegedly sold in competition with Tecspec: freeze protection units, pump skids, and fan coils. But the testimony established that Donnolo ceased manufacturing freeze protection units and abandoned the pump skid project midstream, leaving SRS with no choice but to source those products elsewhere. Tr. 2, 97:3-5; 97:18-24. As for fan coils, Senia testified that the custom fan coils Tecspec manufactures, which "integrate the millwork, the piping, and the controls into a package system," are not comparable to the standard fan coils sold by other manufacturers that SRS represents. Tr. 2, 98:5-11. Tecspec has sold custom fan coils on precisely one job. Tr. 2, 39:15.

Under the Counterclaim Plaintiffs' preferred reading of the non-compete clause, the question is whether SRS constitutes a competing *business* located in a county where Tecspec does business. To be sure, SRS's offices are in Kings County and Tecspec has done business there. But this theory founders on a more fundamental problem. SRS is a manufacturer's representative, not a

manufacturer. Tecspec and SRS occupy distinct and, in principle, complementary roles in the HVAC supply chain. And the absence of any express reference to SRS in the Operating Agreement weighs against Counterclaim Plaintiffs' interpretation that the clause was always understood to prohibit SRS's core line of business.

As detailed above, the evidence of competition is sparse. Accordingly, even assuming that SRS had business dealings in counties in which Tecspec is doing or has done business, Counterclaim Plaintiffs have not adequately demonstrated that SRS violated the non-competition agreement.

2. <u>Breach of Fiduciary Duty and Implied Covenant</u>

Counterclaim Plaintiffs' claims for breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing are largely derivative of their noncompetition theory. The claims allege that the Individual Counterclaim Defendants steered business away from Tecspec and caused Tecspec to sell at below-cost prices to SRS. But the underlying evidentiary record on these points is deficient. When Donnolo was asked whether he had any documentary evidence that SRS lowered Tecspec's prices, Donnolo answered: "No." Tr. 1, 52:20-25. Asked whether his own spreadsheet -- the only exhibit submitted in support of the alleged 30% below-cost pricing -- reflected the alleged reduction, Donnolo conceded: "Correct, this is what Tecspec billed SRS, not what SRS billed the customer." Tr. 1, 60:1-22. And asked whether he knew if SRS had

actually *profited* from selling Tecspec's products, Donnolo only said: "I don't know if it was a profit or not." Tr. 1, 15-17. This evidence is insufficient to establish the Counterclaim Plaintiffs' claims.

The fiduciary duty claim additionally suffers from the absence of reliable evidence that the pricing decisions at issue -- many of which Donnolo himself made or approved, see Tr. 1, 57:24; 58:9-12 -- were in fact harmful to Tecspec.

### 3. Unjust Enrichment

SRS's alleged unjust enrichment depends on the premise that SRS bought Tecspec products at below-cost prices and resold them at a profit. As discussed, Donnolo has not established that SRS made any profit on these transactions, much less a profit that came at Tecspec's expense. The unjust enrichment claim is thus insufficiently supported on the current record.

### 4. Misappropriation of Trade Secrets

Counterclaim Plaintiffs allege that Senia and Rose, in entering Braya's facility on October 17, 2024 and photographing equipment within, misappropriated Braya's proprietary Manufacturing Methods in violation of the DTSA.

The acquisition prong of a DTSA misappropriation claim requires the plaintiff to show that the defendant acquired a trade secret through "improper means" -- defined to include "theft, bribery, misrepresentation, breach or inducement of a breach of a

9

duty to maintain secrecy, or espionage." 18 U.S.C. § 1839(6). The conduct alleged here -- entering Braya's facility without authorization and photographing equipment -- could, in principle, constitute misappropriation by improper means. But the record on what exactly was photographed, and whether those photographs captured protectable trade secrets, is contested and underdeveloped.

Senia's testimony was that he took pictures of "equipment that were half assembled," Tr. 2, 79:18, and that his purpose was to document what he believed to be Tecspec's own stolen materials and equipment. The photographs themselves, admitted as Plaintiffs' Exhibit 10, depict assembled and partially assembled units. Counterclaim Plaintiffs rely on the testimony of Long, who reviewed selected photographs and concluded that they revealed the manufacturing methods. Tr. 1, 85:13-87:14. But Long declined to explain this conclusion in any detail to avoid disclosing the trade secrets themselves. The Court is thus left without a meaningful factual basis to evaluate whether the photographs capture protectable manufacturing methods as opposed to publicly observable equipment or techniques.

This evidentiary gap is significant. Trade secret protection requires not only that the information have economic value from its secrecy, but that it actually be secret. See 18 U.S.C. § 1839(3). Braya has taken security measures, but the record does

not allow the Court to assess whether the specific information visible in the photographs was meaningfully nonpublic. Accordingly, the Court cannot find, on this record, either a likelihood of success or serious questions going to the merits of the DTSA claim.

B. Irreparable Harm

Even if Counterclaim Plaintiffs had raised serious questions on the merits, their showing of irreparable harm is insufficient.

Counterclaim Plaintiffs argue that Tecspec's very viability is threatened absent an injunction. ECF No. 217 at 23. But this assertion rests almost entirely on Donnolo's testimony, which this Court has found largely unsubstantiated. More critically, to the extent that Tecspec has suffered financial harm, Donnolo himself is the proximate cause of at least some of that harm. The record establishes that Donnolo received between $200,000 and $400,000 in annual salary from Tecspec while simultaneously building and operating Braya -- a directly competing business -- for nearly two years. See Tr. 1, 64:23-25; 65:1-2; 71:10-17.

Furthermore, the six-month delay between Counterclaim Plaintiffs' counsel's representation in November 2024 that a TRO would be sought, and the actual filing of the motion in this Court, "severely undermine[s]" the claim of irreparable harm. In re AutoHop Litig., 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013). Where, as here, a party waits six months to seek preliminary

11

relief, courts in this Circuit routinely deny injunctions for this reason alone. See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc., 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006). Counterclaim Plaintiffs offer no satisfactory explanation for this delay.

Finally, to the extent Tecspec has lost revenue due to pricing decisions or diverted sales, "an adequate remedy at law" exists for such losses. Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005). Money damages would compensate for lost sales revenue, and therefore the alleged injury does not constitute the kind of irreparable harm that justifies the extraordinary remedy of a preliminary injunction.

IV.  Conclusion

For the foregoing reasons, the Court hereby denies Counterclaim Plaintiffs' motion for a preliminary injunction. The Clerk's Office is respectfully directed to close ECF No. 120.

SO ORDERED.

New York, NY
March 23 , 2026

_____
JED S. RAKOFF, U.S.D.J.

12