1:24-cv-08077-JSR

25-1676-cv
*Tecspec LLC v. Donnolo*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 15 2026

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-six.

PRESENT:
> JOSÉ A. CABRANES,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

TECSPEC LLC, RICHARD ROSE, ROBERT SENIA, RALPH SCHLENKER,

> *Plaintiffs-Third-Party Defendants-Counter-Defendants-Appellees*,

> v.                                                                25-1676-cv

MICHAEL DONNOLO, ABC CORPORATIONS 1-10, JOSHUA DONNOLO, JOHN MICHAEL LONG, BRAYA SYSTEMS LLC, BRAYA MACHINE COMPANY LLC, BRAYA CONCEPTS LLC, BRAYA VENTURES LLC,

> *Defendants-Third-Party-Plaintiffs-Counter-Claimants-Appellants,*

SRS ENTERPRISES INC., SRS ENTERPRISES NJ LLC, HVAC SERVICE ASSOCIATES INC., SRS RESEARCH LLC*,*

CERTIFIED COPY ISSUED ON 05/15/2026

*Defendants-Third-Party-Defendants-Counter-Defendants.*

FOR DEFENDANTS-THIRD-PARTY PLAINTIFFS-COUNTER-CLAIMANTS-APPELLANTS:

JOSEPH A. MATTEO (Irving M. Geslewitz, Much Shelist, P.C., Chicago, Illinois, *on the brief*), Barnes & Thornburg LLP, New York, New York.

FOR PLAINTFFS-THIRD-PARTY DEFENDANTS-COUNTER-DEFENDANTS-APPELLES:

JASON R. MELZER (Arielle Wasserman, *on the brief*), Cole Schotz P.C., Hackensack, New Jersey, and New York, New York.

Appeal from an order of the United States District Court for the Southern District of New York (Jennifer H. Rearden, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court, entered on June 6, 2025, is **AFFIRMED** and the case is **REMANDED** with the instruction that the district court consider the security-bond requirement under Federal Rule of Civil Procedure 65(c), and for other proceedings consistent with this summary order.

Defendants-Appellees Michael Donnolo, Joshua Donnolo, John Michael Long and Braya Systems LLC, Braya Machine Company LLC, Braya Concepts LLC, and Braya Ventures LLC (all Braya entities collectively, "Braya," and all Defendants-Appellees collectively, "Defendants") appeal from the district court's order, granting in part and denying in part a motion for preliminary injunction in favor of Plaintiffs-Appellees Tecspec LLC ("Tecspec"), Richard Rose, Robert Senia, and Ralph Schlenker (collectively, "Plaintiffs"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

2

**BACKGROUND**

Tecspec, a limited liability company that manufactures HVAC units, was founded in 2017, and is equally owned by Plaintiffs Robert Senia, Richard Rose, and Ralph Schlenker and Defendant Michael Donnolo. Tecspec's operating agreement allows its members to "engage in other business ventures of every nature, including, without limitation by specification, the ownership of another business similar to that operated by [Tecspec]" subject to limitations set forth in a "Covenant Not to Compete" that prohibits Tecspec members from "carry[ing] on or be[ing] engaged in, or connected with or interested in any business which competes, in whole or in part, with [Tecspec], which is located in any county in which [Tecspec] is doing or has done business" (hereinafter, the "non-compete covenant"). App'x at 184, 186.

In 2023, Michael Donnolo formed Braya, which, like Tecspec, manufactures HVAC units. Braya is headquartered in Richmond County (*i.e.*, Staten Island), a county in which Tecspec has not done business. On October 24, 2024, Plaintiffs filed the instant lawsuit against Defendants, alleging, *inter alia*, misappropriation of trade secrets, breach of contract and fiduciary duties, corporate waste and mismanagement, unjust enrichment, conversion, tortious interference, and unlawful competition under New York law. More specifically, Plaintiffs alleged that Braya bid for two projects in New York County (*i.e.*, Manhattan), including one in which Tecspec already had a contract to do work, and that such actions constituted violations by Michael Donnolo of his fiduciary duties to Tecspec and the non-compete covenant in Tecspec's operating agreement because New York County is a county in which Tecspec has done and was doing business. Plaintiffs moved for injunctive relief against Defendants, seeking restraints against Defendants' ability to compete with Tecspec and their possession and use of Tecspec's trade secrets, as well as

3

requiring Defendants to provide "information . . . need[ed] to make Tecspec operational" and the "return . . . [of] items belonging to Tecspec." App'x at 457.

On June 6, 2025, the district court granted in part, and denied in part, the preliminary injunction motion. *See Tecspec LLC v. Donnolo*, No. 24 CIV. 8077 (JHR), 2025 WL 1604333 (S.D.N.Y. June 6, 2025). More specifically, the district court determined that Plaintiffs were entitled to a preliminary injunction against Michael Donnolo because (1) there was a substantial likelihood they would be successful on their claim for breach of the non-compete covenant; (2) irreparable harm had been shown through the loss of client relationships; and (3) the balance of the equities and the public interest favored an injunction as, *inter alia*, it "would merely bar [Michael Donnolo] from violating his non-compete agreement." *Id*. at *3–6 (internal quotation marks and citation omitted). The district court denied Plaintiffs' other requests for injunctive relief.[1] *Id*. at *7–9.

On appeal, Defendants challenge the imposition of the preliminary injunction against Michael Donnolo, arguing that (1) the district court improperly interpreted the scope of the non-compete covenant, (2) there was inadequate evidence by which the district court could find that Plaintiffs would suffer irreparable harm, and (3) the district court's determination regarding the balancing of the equities and the public interest was in error. Defendants further contend that the district court erred in failing to address the requirement that Plaintiffs post a security-bond under Federal Rule of Civil Procedure 65(c).

---

[1] Because Plaintiffs did not cross-appeal the district court's denial of their other requests for injunctive relief, we need not address those portions of the district court's decision. *See Giambalvo v. Suffolk Cnty., N.Y.*, 155 F.4th 163, 174 n.2 (2d Cir. 2025).

## DISCUSSION

"This Court reviews a grant or denial of a preliminary injunction for abuse of discretion." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  "A district court abuses or exceeds the discretion accorded to it when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions."  *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (internal quotation marks and citation omitted).  However, "[w]here allegations of error in a preliminary injunction involve questions of law, our review is *de novo*."  *Id.*  (internal quotation marks and citation omitted).

In general, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (internal quotation marks omitted).  As set forth below, we affirm the grant of the preliminary injunction against Michael Donnolo, but instruct the district court on remand to address the security-bond requirement under Rule 65(c).

## I.     Likelihood of Success on the Merits

We first address the district court's determination that Plaintiffs are likely to succeed on the merits of their claim that Michael Donnolo breached the non-compete covenant in Tecspec's operating agreement—a question which turns on the interpretation of the language in the covenant. Under New York law, "a contract must be interpreted to give effect to the intent of the parties." *Werbungs Und Commerz Union Austalt v. Collector's Guild Ltd.*, 930 F.2d 1021, 1025 (2d Cir. 1991).  Where a contract is unambiguous, the parties' intent is discerned from the plain language

5

of the contract.[2]  *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467–68 (2d Cir. 2010).  In construing contractual language, "a court should accord that language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish."  *Cable Sci. Corp. v. Rochdale Vill., Inc.*, 920 F.2d 147, 151 (2d Cir. 1990) (internal quotation marks and citation omitted).  Moreover, courts must look at "the entire integrated agreement" in order to "safeguard against adopting an interpretation that would render any individual provision superfluous."  *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001) (internal quotation marks and citation omitted).

> We start, as we must, with the plain language of the non-compete covenant:

> [W]hile he is a Member of the Company, and for a four (4) year period after the Member transfers his entire Interest in the Company, he will not directly or indirectly, individually or in conjunction with any person or persons, firm, partnership, corporation, limited liability company, association or syndicate, . . . or in any other manner whatsoever, carry on or be engaged in, or connected with or interested in any business which competes, in whole or in part, with [Tecspec], which is located in any county in which [Tecspec] is doing or has done business.

App'x at 186 (Op. Agmt. § 25.1).  As the district court noted, the parties' dispute is centered around the meaning of the phrase to "carry on or be engaged in . . . business."

Defendants argue that "the scope of the restrictive covenant is limited to engaging in any 'business which competes,' i.e. a *competing business entity*, which is *'located in'* any county in which Tecspec is doing or had done business."  Appellants' Br. at 14.  In other words, Defendants assert that the non-compete covenant prohibits Michael Donnolo only from working with a business entity, such as Braya, that is headquartered in any county where Tecspec is doing or had done business.  Thus, according to Defendants, because Braya is headquartered in Richmond

---

[2] As the district court noted, neither party has asserted that the non-compete covenant is ambiguous and sought to have the court consider extrinsic evidence to discern its interpretation.

County and Tecspec has never done business there, there was no breach of the non-compete covenant based on Michael Donnolo's business activities outside of Richmond County. Plaintiffs, on the other hand, assert that "business" refers to the "action of doing business" and therefore "regardless of where the competing business entity is located, [Michael] Donnolo cannot 'carry on business', i.e., perform any jobs or work on any projects in counties where Tecspec is 'doing or has done business,' i.e., performing any jobs or working on any projects, full stop." Appellees' Br. at 18–19. As the district court aptly summarized, the differing interpretations lead to two possible conclusions: "either [Michael Donnolo] is barred from conducting business in *all* counties in which Tecspec has done business . . . [or] he is only barred from working with a business entity that is headquartered in *one* of those counties." *Tecspec LLC*, 2025 WL 1604333, at \*4. The district court ultimately adopted Plaintiffs' reading of the non-compete covenant. *Id*. at \*5.

On *de novo* review, we agree with the district court's interpretation of the non-compete covenant. The district court focused first on the plain meaning of the word "business" by looking to accepted dictionary definitions. *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011) (explaining that under New York law it is "common practice . . . to refer to the dictionary to determine the plain and ordinary meaning of words to a contract") (internal quotation marks omitted). Noting that the term "business" could carry both meanings attributed to it by the parties, the district court turned to the relevant context in which the word was used. The district court then correctly determined that, within the context of the non-compete covenant, the word "business" is referred to as something that is "carr[ied] on" or "engaged in," and in contrast, the clause also described various types of *entities* through which such business could be carried on—*i.e.*, a "firm, partnership, corporation, limited liability company, association

7

or syndicate." *Tecspec LLC*, 2025 WL 1604333, at *4 (alterations omitted) (internal citation omitted). Accordingly, reading the clause in the proper context, the district court concluded that the word "business" was imbued with a "transaction-based connotation," and the non-compete covenant thereby barred Tecspec members, including Michael Donnolo, from "carry[ing] on or be[ing] engaged in or connected with or interested in any business dealings or transactions which compete with Tecspec and are located in a county in which Tecspec is doing or has done business." *Id*. at *5 (alterations adopted) (internal quotation marks and citation omitted).

Although Defendants raise several arguments in support of its alternative interpretation of the non-compete covenant, we find those arguments unavailing. First, Defendants contend that the district court failed to harmonize Section 19 of the Tecspec operating agreement, which also uses the term "business," with the language of the non-compete covenant. As we have emphasized, "[i]t is a well-established rule of construction . . . that words can take on different meanings in different contexts." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 93 (2d Cir. 2013) (internal quotation marks omitted). Here, the use of the word "business" and the accompanying phrasing in Section 19 is entirely different from the non-compete covenant. In particular, Section 19 states that "[e]xcept as otherwise provided in Section 25 hereof [*i.e.*, the non-compete covenant], any Member *may engage in other business ventures* of every nature, including, without limitation by specification, the ownership of another business similar to that operated by this Company." App'x at 184 (emphasis added). In contrast, under the non-compete covenant, Tecspec members are prohibited from "*carry[ing] on* or be[ing] engaged in, or connected with *any business* which competes, in whole or in part, with [Tecspec], which is located in any county in which [Tecspec] is doing or *has done business*." *Id*. at 186 (emphasis added). In short, the term "business ventures" is used in a different context in Section 19, as compared to the term "business" in the non-compete covenant,

8

and we discern no internal inconsistency in the provisions of the operating agreement that results from adopting the district court's interpretation of the non-compete covenant.  Indeed, the district court emphasized that "the Operating Agreement [under Section 19] expressly permits Michael Donnolo to participate, and the Court does not enjoin him from participating, in a business entity that competes with Tecspec as long as he can do so without conducting business in any county where Tecspec is doing or has done business."  *Tecspec LLC*, 2025 WL 1604333, at \*5.

Applying this interpretation, the district court also correctly concluded that Plaintiffs had made a sufficient showing they would succeed on the merits of their claim that Michael Donnolo had breached the non-compete covenant.  The uncontroverted evidence demonstrated that "Tecspec ha[d] conducted business in New York County" and "Braya ha[d] sold HVAC units to customers in New York County, including potential Tecspec customers."  *Id*. at \*5.  Thus, based on this evidence, Plaintiffs are likely to succeed on their claim that Michael Donnolo, through his operation of Braya, breached the non-compete covenant by conducting business activities in New York County.

## II.     Irreparable Harm

We next turn to whether the district court abused its discretion in finding that Plaintiffs would suffer irreparable harm absent the grant of a preliminary injunction.  "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted).  "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60,

9

66 (2d Cir. 2007) (internal quotation marks and citation omitted).  The loss of customer relationships and goodwill that results from a breach of a covenant not to compete are generally sufficient to demonstrate irreparable harm.  *See, e.g.*, *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 444–45 (2d Cir. 1977); *see also Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (emphasizing that it is "difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come").  However, we have rejected the proposition "that irreparable harm must inevitably be assumed in breach of covenant cases."  *Baker's Aid, Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987).  Therefore, "[t]hough courts often issue preliminary injunctions when it appears likely that the plaintiff will prevail in covenant-not-to-compete cases, this is not an automatic process, but instead depends upon the factual particulars in each case."  *Id*.

In the instant case, the district court determined that "Plaintiffs ha[d] established irreparable harm with respect to lost client relationships" as "Defendants did business with at least two actual or potential Tecspec customers located in New York County."  *Tecspec LLC*, 2025 WL 1604333, at *6.  Defendants contend the district court did not have an adequate record for that finding because (1) there was no evidence that Tecspec had long- or fixed-term relationships with the customers as to whom Michael Donnolo, through Braya, allegedly interfered; (2) the district court relied too heavily on a declaration submitted by Plaintiffs from a consulting design engineer, while not taking into account Michael Donnolo's declaration; and (3) Plaintiffs did not demonstrate that money damages were inadequate.  We are unpersuaded by Defendants' arguments and find no abuse of discretion in the district court's determination of irreparable harm.

In reaching that determination, the district court credited the declaration of John Anthes, a

10

Consulting Design Engineer who assesses and recommends manufacturers for large HVAC projects in New York City.  Anthes stated that Braya units had been installed at two locations where Tecspec had previously done business or at which Tecspec were in discussions to do business.  According to Anthes, at one of those locations, although Anthes had recommended Tecspec for the project, the operating engineer subsequently "informed [him] that Michael Donnolo had returned to the project but with a new company name," "Braya."  App'x at 299 (internal quotation marks omitted).  Defendants principally argue that the evidence regarding Michael Donnolo's business activities with these Tecspec customers was insufficient to establish irreparable harm because there was no showing that the customer relationships in question were long-term or fixed.  But there was nothing speculative or short-term about the nature of the client relationships at issue here.  Instead, the record showed that Michael Donnolo, through Braya, actively competed with Tecspec on existing Tecspec projects and, in connection with one of the projects that was actively being solicited by Donnolo, Tecspec not only had been "selected as a manufacturer to provide replacement HVAC units," as noted above, but had already "provided many HVAC units to the building."  *Id*. at 300.  Thus, there was more than sufficient evidence to demonstrate a "threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages."[3]  *Jacobson & Co.*, 548 F.2d at 445.  Accordingly,

---

[3]  We are also unpersuaded by Defendants' arguments challenging the district court's reliance on the Anthes declaration to support its finding.  The Supreme Court has recognized that a decision to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Thus, it was well within the district court's discretion to rely on the Anthes declaration even though a portion of the declaration contained hearsay.  *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010).  Moreover, although the district court did not specifically address the declaration submitted by Michael Donnolo, his statements regarding the purported lack of a long-term relationship between Tecspec and the customers at issue failed to undermine the evidence in the record supporting the district court's reasonable determination that Donnolo's alleged breach caused a loss of customer relations to Tecspec and that there was an actual and imminent injury that would be suffered by Plaintiffs in the absence of the injunction.

the district court's determination that Plaintiffs had satisfied the requirement of irreparable harm was not an abuse of discretion.

## III.    Balance of the Equities and Public Interest

Defendants also challenge the district court's finding that "both the balance of [the] equities and the public interest weigh in favor of an injunction." *Tecspec LLC*, 2025 WL 1604333, at *6. In support of this finding, the district court explained that (1) the injunction would merely enforce the contractually agreed upon non-compete covenant and impose no new legal duty on Michael Donnolo; (2) Plaintiffs were likely to suffer substantial hardship if Michael Donnolo's breach were to continue; and (3) the public interest would be advanced by encouraging adherence to contractual commitments. *Id.*

As an initial matter, to the extent Defendants argue that the district court's determination regarding the equities and public interest is flawed because it is based on an incorrect interpretation of the non-compete covenant, that argument fails for the reasons discussed *supra*.

Defendants further argue that the district court erred in failing to consider their argument that Plaintiffs acted with "unclean hands" and therefore were ineligible for equitable relief.  In particular, Defendants claim that Plaintiffs have "divert[ed] business opportunities away from Tecspec . . . to their own competing enterprise, SRS, while also causing Tecspec to operate unprofitably by causing it to sell its units to SRS below cost." Appellants' Br. at 50–51.  Plaintiffs counter that "SRS is a manufacturer's representative, not a manufacturer" and "SRS markets and sells various products on behalf of several different companies, including Tecspec."  Appellees' Br. at 32–33.  Therefore, Plaintiffs assert that, because "SRS does not manufacturer HVAC units," it "does not compete with Tecspec." *Id*. at 33.

12

We find no abuse of discretion in the district court's determination notwithstanding Defendants' argument regarding Plaintiffs' purported unclean hands with respect to their own conduct under the non-compete covenant. "The doctrine of unclean hands is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) (internal quotation marks and citation omitted). We have emphasized, however, that the doctrine "is not an automatic or absolute bar to relief"; rather, "it is only one of the factors the court must consider when deciding whether to exercise its discretion and grant an injunction." *Id.* (internal quotation marks and citation omitted); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) (explaining that the court has discretion to determine whether the unclean hands doctrine bars relief).

Here, the district court acted within its discretion in determining that the overall balancing of the equities favored issuing the injunction notwithstanding the alleged misconduct by Plaintiffs, and that it would address any alleged violation by Plaintiffs of the non-compete covenant in connection with Defendants' separate motion for a preliminary injunction on its counterclaims. In any event, in recently denying Defendants' preliminary injunction motion, the district court (Jed S. Rakoff, *Judge*)[4] did address Defendants' evidence about Tecspec's alleged misconduct and found that Defendants had failed to demonstrate that SRS had violated the non-compete covenant:

> SRS is a manufacturer's representative, not a manufacturer. Tecspec and SRS occupy distinct and, in principle, complementary roles in the HVAC supply chain. And the absence of any express reference to SRS in the Operating Agreement weighs against [Defendants'] interpretation that the clause was always understood to prohibit SRS's core line of business.
>
> [T]he evidence of competition is sparse. Accordingly, even assuming that SRS had business dealings in counties in which Tecspec is doing or has done business,

---

[4] This case was reassigned to Judge Rakoff on January 13, 2026.

[Defendants] have not adequately demonstrated that SRS violated the non-competition agreement.

*Tecspec LLC v. Donnolo*, No. 24 CIV. 8077 (JSR), 2026 WL 810305, at *3 (S.D.N.Y. Mar. 23, 2026).  In short, Plaintiffs' alleged misconduct under the non-covenant agreement provides no basis to disturb the district court's balancing of the equities on this record.

## IV.     Bond

Finally, Defendants contend that the district court erred in "[f]ailing to [d]etermine [w]hether Plaintiffs [w]ere [r]equired to [p]ost a [b]ond" as the district court's order was "silent with respect to [their] request."  Appellants' Br. at 53–54.  Plaintiffs counter that "there was no reason to address whether a bond [was] necessary" as "Donnolo failed to offer any evidence that he would be harmed in the absence of a bond."  Appellees' Br. at 35.

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."  Fed. R. Civ. P. 65(c).  Although "the entry of . . . orders without requiring a bond [is] within the discretion of the [d]istrict [c]ourt," and no such bond may be required under certain circumstances, *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961), "the district court [is] required to make this determination before it enter[s] the preliminary injunction," *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).

Here, Defendants specifically requested that "if any injunctive relief is awarded to Plaintiffs that a bond be issued in an appropriate amount."  App'x at 137.  The district court issued the preliminary injunction against Michael Donnolo without addressing this request, and the failure to do so was error.  *See Corning*, 365 F. 3d at 158; *see also Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976) (distinguishing situations where parties have failed to request bond);

14

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 143 (2d Cir. 2023) (same). However, this error does not warrant vacatur of the injunction where all of the other requirements for the issuance of the injunction have been satisfied. *See Inverness Corp. v. Whitehall Labs.*, 819 F.2d 48, 51 (2d Cir. 1987) (leaving an injunction intact while remanding the case to the district court for additional explanation of its decision "as it would be inequitable to punish [plaintiff] for the district court's failure to make specific findings where, on the record developed to date, there are sufficiently serious questions going to the merits to be a fair ground for litigation and a balance of hardships tipping decidedly toward [plaintiff]"). Instead, we remand the case to the district court with the instruction that it consider the security-bond requirement under Rule 65(c).

\*     \*     \*

We have considered Defendants' remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the preliminary injunction and **REMAND** the case with the instruction that the district court consider the security-bond requirement under Rule 65(c), and for other proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

15